UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FEDERAL ENERGY REGULATORY )
COMMISSION, )
 )
        Petitioner, )
 )
    v. )     1:16-cv-00205-JAW
 )
RICHARD SILKMAN, et al., )
 )
        Respondents. )

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

An energy consulting company and its employee and managing member challenge FERC's assessment of civil penalties against them for violating FERC's anti-manipulation rule, alleging that the action brought in this Court by FERC is time-barred under the general statute of limitations, 28 U.S.C. § 2462. FERC maintains in a countervailing motion for summary judgment that its civil action was timely filed.

First, the Court concludes that the Respondents did not waive their statute of limitations argument. Next, the Court concludes that FERC's disgorgement order is not subject to a separate accrual date for purposes of the statute of limitations. Finally, the Court rejects the Respondents' argument that *Gabelli v. SEC*, 568 U.S. 442 (2013) and *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) eclipsed *United States v. Meyer*, 808 F.2d 912 (1st Cir. 1987). Based on *Meyer*, which the Court views as binding, the Court concludes that the FERC enforcement action is not time-barred.

# I. BACKGROUND

## A. Procedural History

### 1. Proceedings in the District of Massachusetts

On December 2, 2013, the Federal Energy Regulatory Commission (FERC, the Commission) filed a petition in the District of Massachusetts for an order affirming its assessment orders. *Pet. for Order Affirming FERC's Aug. 29, 2013 Orders Assessing Civil Penalties Against Richard Silkman and Competitive Energy Services, LLC* (ECF No. 1) (*FERC Pet.*). On December 19, 2013, the Respondents filed a motion to dismiss, *Resp'ts' Mot. to Dismiss* (ECF No. 8), and a motion to transfer to the District of Maine. *Resp'ts' Mot. to Transfer* (ECF No. 9). On January 9, 2014, FERC filed oppositions to the motion to dismiss, *FERC's Opp'n to Resp'ts' Mot. to Dismiss* (ECF No. 18), and the motion to transfer. *FERC's Opp'n to Resp'ts' Mot. to Transfer* (ECF No. 19). On July 18, 2014, Judge Woodlock heard arguments on the motion to dismiss and supplemental briefs on procedure, as well as additional arguments regarding transfer to the District of Maine. *Elec. Clerk's Notes* (ECF No. 43); *Tr. of Mot. Hr'g* (ECF No. 44).

The case was effectively stayed pending resolution of related issues in the United States Supreme Court[1] and the United States Bankruptcy Court for the

---

[1] On June 4, 2014, the Respondents moved for judgment on the pleadings, arguing that FERC did not have jurisdiction over demand response programs such as the one at issue in this case. *Resp'ts' Mot. for J. on the Pleadings* at 1–2 (ECF No. 35) (citing *Elec. Power Supply Ass'n v. FERC*, 753 F.3d 216 (D.C. Cir. 2014)). However, in *FERC v. Electric Power Supply Ass'n*, 136 S. Ct. 760 (2016), the Supreme Court held that FERC does have jurisdiction over demand response programs. Accordingly, the Respondents withdrew their motion for judgment on the pleadings. *Resp'ts' Suppl. Br.* (ECF No. 60).

District of Maine.[2]  By April 5, 2016, both matters were resolved, and the proceedings continued.  On April 11, 2016, Judge Woodlock denied the Respondents' motion to dismiss, *FERC v. Silkman*, No. 13-13054-DPW, 2016 U.S. Dist. LEXIS 48409 (D. Mass. April 11, 2016) (ECF No. 65) (*Order on Mot. to Dismiss*), and transferred the cases to the District of Maine.  *FERC v. Silkman*, 177 F. Supp. 3d 683 (D. Mass. 2016) (ECF No. 66) (*Silkman I*).

## 2.     Proceedings in the District of Maine

On April 21, 2016, following transfer to the District of Maine, the Respondents answered FERC's petition.  *Resp'ts' Answer* (ECF No. 72).  That same day, the Respondents filed a motion requesting a scheduling conference and an order assigning the case to the complex track.  *Defs.' Mot. for Scheduling Order and Conf.* (ECF No. 73).

On June 3, 2016, the Court held a scheduling conference.  *Minute Entry* (ECF No. 84); *Tr. of Proceedings* (ECF No. 85).  At the scheduling conference, the parties presented arguments concerning the procedures that should govern the Court's de novo review of the Commission's assessment orders.  *Tr. of Proceedings* at 2:24–49:18. The Court ordered additional briefing from both parties.  *Id.* at 46:6–48:7. On January 26, 2017, the Court issued an order regarding the procedures applicable to FERC's petition and assigned the case to the complex track.  *Order Regarding Procedures*

---

[2]      Another FERC petition was also pending before Judge Woodlock in a related case, *FERC v. Lincoln Paper and Tissue, LLC*, No. 1:13-cv-13056-DPW.  On September 28, 2015, Lincoln Paper filed for bankruptcy.  As a result, Judge Woodlock stayed the proceedings in both *Lincoln* and *Silkman*.  On April 5, 2016, the District of Maine Bankruptcy Court ruled that the automatic bankruptcy stay did not apply to FERC's district court litigation against Lincoln Paper.  *In re Lincoln Paper & Tissue, LLC*, No. 15:10715, 2016 Bankr. LEXIS 3501 (U.S. Bankr. D. Me. Apr. 5, 2016).  Accordingly, Judge Woodlock allowed the proceedings in both cases to continue.  *Silkman I*, 177 F. Supp. 3d at 701.

*Applicable to Pet. for Order Affirming Assessment of Civil Penalties* (ECF No. 95).

On February 15, 2017, the parties appeared telephonically for a conference of counsel before this Judge, and the Court issued an order staying the case pending a settlement conference. A settlement conference was held before Magistrate Judge Rich on March 31, 2017, but settlement was not achieved. *Min. Entry* (ECF No. 104).

On February 28, 2018, the Respondents filed a Motion for Summary Judgment (ECF No. 133) (*Resp'ts' Mot.*) along with an accompanying Statement of Fact (ECF No. 136) (DSMF). FERC responded in opposition on March 30, 2018, *FERC's Resp. in Opp. to Mot. for Summ. J.* (ECF No. 140) (*Pl.'s Opp'n*), and filed a response to the Respondents' statement of fact with a statement of additional facts that same day. *FERC's Resp. to Statement of Fact with Statement of Additional Facts* (ECF No. 141) (PRDSMF; PSAMF). On April 20, 2018, the Respondents replied to FERC's additional statement of fact and responded to FERC's requests to strike made in response to the Respondents' statement of fact. *Defs.' Reply to Resp. to Mot. for Summ. J.* (ECF No. 143) (*Resp'ts' Reply*); *Defs.' Reply Statement of Material Fact* (ECF No. 144) (DRPSAMF).

Meanwhile, on February 28, 2018, FERC filed a cross-motion for partial summary judgment on the issue of the statute of limitations. *Mot. for Partial Summ. J. regarding Statute of Limitations* (ECF No. 134) (*Pl.'s Mot.*). The Respondents responded in opposition on March 30, 2018. *Defs.' Resp. in Opp'n to Mot. for Partial Summ. J.* (ECF No. 138) (*Resp'ts' Opp'n*). FERC replied on April 20, 2018. *Reply to Resp. to Mot. for Partial Summ. J.* (ECF No. 145) (*Pl.'s Reply*).

On September 25, 2018, FERC filed an unopposed motion for leave to file supplemental authority. *Mot. for Leave to File Notice of Supple. Information* (ECF No. 152). The Court granted the motion on November 7, 2018. *Order Granting Mot. for Leave to File Notice of Supple. Information* (ECF No. 153). On November 8, 2018, FERC filed as supplemental authority a copy of the Fourth Circuit Court of Appeals' order granting interlocutory appeal in *Federal Energy Regulatory Commission v. Powhatan Energy Fund., LLC*, 286 F. Supp. 3d 751, 754 (E.D. Va. 2017).

**B.    The Parties and Relevant Entities**

FERC is an administrative agency of the United States, organized and existing pursuant to the Federal Power Act (FPA), 16 U.S.C. §§ 791a *et seq. FERC Pet.* ¶ 13. FERC's Office of Enforcement (Enforcement) "initiates and executes investigations of possible violations of the Commission's rules, orders, and regulations relating to energy market structures, activities, and participants. *Office of Enforcement (OE)*, FERC, https://www.ferc.gov/about/offices/oe.asp (last visited December 18, 2017). Based on its investigations, Enforcement may submit reports to the Commission recommending that the Commission institute administrative proceedings. *FERC's Opp'n to Resp'ts' Br. Concerning Disc.* (ECF No. 88) (*FERC's Disc. Resp.*) at 4. Once the Commission authorizes an administrative proceeding, Enforcement's role shifts from investigator to litigator, and a "wall" goes up between the Commission and its Enforcement arm to prevent ex parte communication. *Id.*

ISO-New England (ISO-NE) is an independent, non-profit organization that works to ensure the day-to-day reliable operation of New England's bulk electric

energy generation and transmission system by overseeing the fair administration of the region's wholesale energy markets. *FERC Pet.* ¶ 2. FERC regulates the markets that ISO-NE administers. *Id.*

Respondent Competitive Energy Services (CES) is a limited liability company organized under the laws of Maine with its principal place of business in Portland, Maine. *Id.* ¶ 15. It provides energy consulting and other services to clients throughout North America. *Id.* ¶ 35. Respondent Richard Silkman resides in Maine and is an employee and managing member of CES. *Id.* ¶ 14.

## II. STATEMENT OF FACTS[3]

### A. Statement of Facts: Respondents' Motion for Summary Judgment

FERC alleges that the Respondents' wrongdoing occurred "from July 2007 until February 2008." DSMF ¶ 1; PRDSMF ¶ 1. On December 2, 2013, FERC filed a Petition for an Order Affirming the Federal Energy Regulatory Commission's August 29, 2013 Orders Assessing Civil Penalties Against Richard Silkman and Competitive

---

[3]     Where, as here, the parties file cross-motions for summary judgment, the Court must evaluate each motion independently and "determine 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Matusevich v. Middlesex Mut. Assurance Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (quoting *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)). For cross-motions for summary judgment, the standard of review is applied to each motion separately. *Libertarian Party of N.H. v. Gardner*, 759 F. Supp. 2d 215, 212 (D.N.H. 2010), *aff'd*, 638 F.3d 6 (1st Cir. 2011). Thus, in accordance with "the conventional summary judgment praxis," with regard to the Respondents' motion for summary judgment and its supporting facts, the Court recounts the facts in the light most hospitable to the Respondents' case theories consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). In compliance with obligation, the Court recites supported facts as true even if FERC disputes them. *Id.* Likewise, with the Petitioner's cross-motion for partial summary judgment and supporting facts, the Court recounts the facts in the light most hospitable to FERC's case theories consistent with record support and recites supported facts as true even if the Respondents dispute them. *Id.*

Energy Services, LLC.[4]  DSMF ¶ 2; PRDSMF ¶ 2.  The petition was filed at least five

years, ten months, and two days after the wrongdoing ceased.[5]  DSMF ¶ 3; PRDSMF

¶ 3.

Enforcement began an inquiry in February 2008 following a telephone call

from the ISO-NE market monitoring unit regarding certain market participants'

conduct relating to their participation in the ISO-NE Day Ahead Load Response

Program (DALRP).  In March 2008, after receiving a written referral from ISO-NE,

Enforcement commenced a non-public investigation pursuant to Part 1b of the

Commission's regulations (18 C.F.R. Part 1b) to determine whether certain market

participants had engaged in fraudulent conduct in their participation in the DALRP.

In November 2009, Enforcement commenced an investigation of Dr. Silkman

---

[4]     The Respondents' paragraph 2 states "FERC filed its complaint in federal court in this matter on December 2, 2013."  DSMF ¶ 2.  The Petitioner interposes a qualified response, stating that FERC filed a petition, not a complaint.  PRDSMF ¶ 2.  The Court adjusted the Petitioner's statement to reflect the Petitioner's qualification.

[5]     The Respondents' paragraph 3 states "The Court may take judicial notice that the federal court complaint was filed at least five years, 10 months, and 2 days, after the allegedly wrongdoing ceased." DSMF ¶ 3.  The Petitioner interposes a qualified response, arguing that the Respondents' paragraph 3 should be stricken because this fact is not material or relevant to the issue on summary judgment. PRDSMF ¶ 3 (citing *United States v. Meyer*, 808 F.2d 912 (1st Cir. 1987); *Silkman I*, 177 F. Supp. 3d at 68; *United States v. Worldwide Indus. Enters., Inc.*, 220 F. Supp. 3d 335 (E.D.N.Y. 2016)).  FERC puts forth the same request to strike in response to seventy-four of the ninety-three statements of fact of the Respondents without attempting to explain why the specific statement of fact is irrelevant or immaterial.  *Resp'ts' Reply to Additional Statement of Fact and FERC's Reqs. to Strike (*ECF No. 143) (*Resp'ts' Reply*).  *See* PRDSMF.  Requests to strike are disfavored in summary judgment motions.  D. ME. LOC. R. 56(e) ("Motions to strike statements of material fact are not allowed.  If a party contends that an individual statement of fact should not be considered by the court, the party may include as part of the response that the statement of fact 'should be stricken' with a brief statement of the reason(s) and the authority or record citation in support"); *Randall v. Potter*, 366 F. Supp. 2d 120, 121 (D. Me. 2005) ("Although the motion to strike remains available for the extraordinary case, this is one weapon in the strategic arsenal that is more effective when used sparingly").  The Court is decidedly unenthusiastic about repetitive, pro forma requests to strike filed in motions for summary judgment and will not address each request individually.

        The Petitioner further argues that without prejudice to the determination of its request to strike, FERC denies that it filed a complaint, but admits that it filed a petition, and admits to the date stated by the Respondents.  PRDSMF ¶ 3.  The Court adjusts the Respondents' paragraph 3 to reflect the date the Petitioner cited.

individually, pursuant to Part 1b of the Commission's regulations for Dr. Silkman's conduct related to the DALRP, as memorialized in a November 4, 2009 letter sent to Dr. Silkman's counsel.[6]  DSMF ¶ 4; PRDSMF ¶ 4.

## 1.    Roles of FERC Enforcement and the Commission

Enforcement staff, in their role as the Commission staff tasked with investigating potential violations of the FPA and the Commission's regulations, communicated with the Commission and certain members of its advisory staff during the investigation of the Respondents.  The Commission initiated adversarial adjudicatory proceedings on July 17, 2012 when it issued Orders to Show Cause and Notice of Proposed Penalty ("Proposed Penalty Orders") to each Respondent.  Under FERC's Separation of Functions Rule (18 C.F.R. § 385.2202), a "wall" went up between agency decisional staff — the Commissioners and the staff that may advise them — and the Enforcement staff serving a prosecutorial role in the proceedings.  In accordance with the Commission's rule regarding ex parte communications (18 C.F.R. § 385.2202), a prohibition on ex parte communications between decisional staff and Enforcement prosecutorial staff also went into effect at that time.  Pursuant to the Commission's Separation of Functions Rule and ex parte rule, following issuance of the Proposed Penalty Orders, the Commission issued a notice in each proceeding on

---

[6]       The Respondents' paragraph 4 states, "FERC's Office of Enforcement . . . began its investigation of Defendants in February 2008."  *See Compl.* ¶ 52 (ECF No. 1).  The Petitioner denies the Respondents' paragraph 4, offering a more detailed timeline of the inquiry, non-public investigation, and subsequent public information.  PRDSMF ¶ 4.  Though the Court does not view the Petitioner's paragraph 4 as directly contradicting the Respondents' paragraph 4, the Court includes the Petitioner's paragraph 4 as it provides detail and context.

July 26, 2012 identifying decisional and non-decisional staff.[7] DSMF ¶ 5; PRDSMF ¶ 5.

Over the course of the investigation of the Respondents, Enforcement communicated in writing and orally with the FERC Commissioners and their staff concerning the investigation outside the presence of the Respondents and their counsel.[8] DSMF ¶ 6; PRDSMF ¶ 6. During the investigation, Enforcement considered FERC and the FERC Commissioners to be their client. DSMF ¶ 7; PRDSMF ¶ 7. Enforcement's communications with the FERC Commissioners and their staff concerning the investigation of the Respondents have not been disclosed to the Respondents.[9] DSMF ¶ 8; PRDSMF ¶ 8.

[7]    The Respondents' paragraph 5 states "FERC Enforcement did not set up any form of a 'Chinese wall' with any other entity within FERC, including the FERC Commissioners and their staff, after it began its investigation." DSMF, Attach. 1., *FERC Dep.* (ECF No. 136-1) at 79-80 (*FERC Dep.*). The Petitioner clarifies the Respondents' paragraph 5 in a series of qualifications and denials regarding the communication procedure at various stages of the FERC investigation and adjudication process. PRDSMF ¶ 5. The Court included the Petitioner's clarifications but declines to include the Respondents' denials as to the various implications of the Respondents' statements.

[8]    The Petitioner denies the Respondents' paragraph 6. PRDSMF ¶ 6. The Court does not view these implications as facts but as argument and declines to include them.

[9]    The Petitioner denies the Respondents' paragraph 8, stating that "communications between Enforcement staff and the Commission during an investigation under Part 1b of the Commission's regulations are properly characterized as "ex parte" because "[t]here are no parties, as that term is used in adjudicative proceedings, in an investigation." *See* PSMF (ECF No. 135); *Decl. of Att'y Demetra Anas* (ECF No. 137) (*Anas Decl.*), and 18 C.F.R. § 1b.11 (2008)). The Court agrees with the Petitioner that the term "ex parte" could be misleading in this context, and the Court removed the phrase from the Respondents' paragraph 8.

    The Petitioner objects to the inclusion of the Brann Declaration as inadmissible under Federal Rules of Civil Procedure 56(c)(2) and (c)(4), arguing first that the Declaration is an "impermissible attempt to offer in the guise of 'fact' an opinion as to the ultimate issue presented to the court." *See* PRDSMF ¶ 9 (citing DSMF (ECF No. 136), Attach. 3, *Brann Decl.* (ECF No. 136-3) (*Brann Decl.*)). The Petitioner cites *Lamarche v. Metropolitan Life Insurance Company* in support of its contention. 236 F. Supp. 2d 34, 42 n.9 (D. Me. 2002). The Court is aware of the distinction between fact and argument, and, as FERC has pointed out, an attorney representing a party may not present an argument as fact with the intention of forcing the Court to accept a contested legal argument as a proffered fact. The Court will enforce the distinction.

    Second, the Petitioner argues that the Brann Declaration should be excluded because Attorney Brann did not disclose himself as a fact witness. PRDSMF ¶ 9. The Court views the Brann Declaration

## 2. Notice and Disclosure to the Respondents

In this litigation, FERC disclosed the identities of people with "relevant knowledge" who had been interviewed as part of the investigation, and who had not been disclosed to the Respondents prior to the time FERC issued the Orders Assessing Penalties.[10]  DSMF ¶ 87; PRDSMF ¶ 87.  FERC also disclosed documents that it claims were part of the administrative record which had not been disclosed to the Respondents prior to the time FERC issued the Orders Assessing Penalties.[11]

---

as a vehicle for presenting uncontested facts to the Court for the purposes of the motion. His statement in paragraph 4, for example, that he was never permitted to conduct any discovery on behalf of the Respondents, is presumably a statement of uncontested fact, which involves the conduct of the litigation based on Attorney Brann's role as counsel for the Respondents, not as a witness to the facts underlying the dispute.  Either Attorney Brann was or was not allowed to engage in discovery on behalf of his clients.  If the Petitioner contends that Attorney Brann's assertion is erroneous, Respondent would have an undoubted right to contest those asserted facts.  But it appears that the Petitioner is contending not that the Attorney Brann statement is false, only that he may not make it.

The alternative would be for Attorney Brann to file a request for admission, which-if true-Petitioner would have to admit.  If Attorney Brann had moved to be allowed to file a request for admission, the Court would likely have granted it.  *See* FED. R. CIV. P. 56(d).  In this sense, Attorney Brann's sworn declaration is simply another way of placing uncontested facts before the Court for purposes of the motion.  Indeed, as Respondents point out, when Petitioner thought it advantageous to place facts underlying the process before the Court, it supported its facts with an attorney affidavit, an irony Respondents did not hesitate to point out.  PSAFM ¶ 2; DRSAMF ¶ 2 ("Proving that irony is no stranger to the law, FERC's sole support for this allegation is a declaration from counsel, Demetra Anas, as to the procedure employed in the investigation").  The Court overrules the Petitioner's objection and denies Petitioner's request to be allowed to depose Attorney Brann.

Third, the Petitioner argues that the Brann Declaration attempts to offer "facts" for summary judgment not found in the Respondent's Statement of Material Facts.  The Court will not consider a statement in the Brann Declaration but not in the Respondents' Statement of Material Facts.

[10]    The Respondents' paragraph 87 states: "In this litigation, FERC disclosed the identities of people with 'relevant knowledge' who had been interviewed as part of the investigation, and who had not been disclosed to the Respondents prior to the time FERC issued the Orders Assessing Penalties." DSMF ¶ 87.  The Petitioner denies the statement as unsupported by the cited record, because the only cited support for the statement is paragraph 37 of the Brann Declaration, which refers only to the fact that FERC had interviewed individuals from Constellation and ISO-NE who were unfamiliar with Attorney Brann.  *Brann Decl.* ¶ 37.  The Court finds that cited record supports the Respondents' paragraph 87.

The Petitioner also denies the Respondents' paragraph 87 based on the argument that the Respondents interacted with the individuals FERC interviewed, and therefore the Respondents were aware of their identities.  The Court views this denial as non-responsive to the Respondent's statement and overrules the denial.

[11]    The Petitioner denies the Respondents' paragraph 88 as "mischaracterizing the Notice of Filing of the Administrative Record" because the Notice of Filing contained not only the contents of

DSMF ¶ 88; PRDSMF ¶ 88.  FERC disclosed additional documents that appear to have been obtained as part of the investigation which had not been disclosed to the Respondents prior to the time FERC issued the Orders Assessing Penalties and which were not included in what FERC claims were part of the administrative record.[12] DSMF ¶ 89; PRDSMF ¶ 89.

### a.      Depositions

Under FERC's regulations, the Respondents were not notified in advance of depositions conducted by Enforcement during its investigation, other than the deposition of Dr. Silkman.[13]  DSMF ¶ 9; PRDSMF ¶ 9.  Other than the deposition of Dr. Silkman, the Respondents and their counsel were also not allowed to attend the depositions conducted by Enforcement during its investigation, pursuant to FERC's regulations.  The Commission's regulations require the sequestration of witnesses during testimony taken in an investigation, and all information and documents received during an investigation, as well as the existence of an investigation, is treated as confidential, non-public information.  Disclosure of information during an investigation is permitted only at the Commission's direction or authorization, or as is otherwise required to be disclosed.[14]  DSMF ¶ 10; PRDSMF ¶ 10.

---

the administrative record, but also additional materials "for the convenience of the Court and the Parties."  PRDSMF ¶ 88 (citing *Notice of Submission of Administrative R.* (ECF No. 26) (*Notice of Administrative R*).   The Court views the Petitioner's denial as not directly responsive to the Respondents' statement and overrules it.

[12]      The Petitioner admits the Respondents' paragraph 89, but "denies the suggestion . . . that such documents were improperly not included in the administrative record."  PRDSMF ¶ 89.  The Court overrules the denial because a denial of an inference is not a fact.   *See infra* note 57.

[13]      The Court finds the Respondents' paragraph 9 adequately supported by the record citation and overrules the Petitioner's denial.

[14]      The Petitioner offers the following qualification to the Respondents' paragraph 10:

The Respondents and their counsel were not given copies of the depositions conducted by Enforcement (other than the deposition of Dr. Silkman) until after their depositions had been taken—sometimes over a year later—and then only after Respondents' counsel pressed Enforcement to provide such copies.[15]   DSMF ¶ 11; PRDSMF ¶ 11.   Under FERC's regulations, deponents and their counsel in the investigation were instructed by Enforcement not to give copies of their deposition transcripts to the Respondents or their counsel; deponents and their counsel were instructed regarding the testimony of witnesses in accordance with the requirements of section 1b.16 of the Commission's regulations, requiring sequestration of witnesses.[16]   DSMF ¶ 12; PRDSMF ¶ 12.

In this litigation concerning events that occurred in 2007 and 2008, fact witnesses repeatedly testified in their 2017 depositions that they did not remember or did not recall in response to over forty questions asked during their depositions,

Under the Commission's regulations, Respondents were not entitled to attend the taking of testimony from third party witnesses. The Commission's regulations require the sequestration of witnesses during testimony taken in an investigation, and all information and documents received during an investigation, as well as the existence of an investigation, is treated as confidential, non-public information. Disclosure of information during an investigation is permitted only at the Commission's direction or authorization, or as is otherwise required to be disclosed.

PRDSMF ¶ 10.  The Court included the Petitioner's qualification as it provides detail and context to the Respondents' statement.

[15]     The Petitioner admits the Respondents' paragraph 11 in part, but also interposes the same qualification to the Respondents' paragraph 11 as it put forth in response to paragraph 10.  As the Court has already included the qualification with regard to paragraph 10, it declines to repeat it in paragraph 11.

[16]     The Petitioner interposes, in part, the same qualified response to the Respondents' paragraph 12 as it put forth in its qualification to paragraph 10 and paragraph 11.  As the Court already included the qualification in paragraph 10, it declines to repeat it in paragraph 12.  The Petitioner further states in its qualified response: "Deponents and their counsel in the investigation were instructed regarding the testimony of witnesses in accordance with the requirements of section 1b.16 of the Commission's regulations, requiring sequestration of witnesses."   PRDSMF ¶ 12.  The Court has included the Petitioner's qualification because it adds relevant context to Respondents' paragraph 12.

and for several witnesses, for over eighty questions asked during their depositions, although some witnesses' lack of memory was resolved by follow-up questions or the use of exhibits to refresh their recollections.[17]  DSMF ¶ 90; PRDSMF ¶ 90.

Enforcement requested Dr. Silkman to come to Washington, D.C. for his two-day deposition in February 2009.[18]  DSMF ¶ 13; PRDSMF ¶ 13.  At the conclusion of Dr. Silkman's deposition on February 27, 2009, Enforcement instructed Dr. Silkman not to share a copy of his deposition transcript with anyone else, including Mark Isaacson, who was a member and managing partner of CES during the relevant period; Enforcement also instructed Dr. Silkman that if he felt the need to share the transcript with anyone else, to contact Enforcement and they would discuss it.[19]

---

[17]     The Petitioner admits "that the witnesses identified in the Peters Declaration claimed to not recall answers to some of the questions asked during their depositions" but "denies the suggestion . . . that the number of times witnesses claimed a lack of recall accurately reflects an equal number of unresolved answers or that each claimed lack of memory was due solely to the passage of time." PRDSMF ¶ 90.  The Petitioner then demonstrates testimony surrounding each example of a witness failing to remember offered by the Respondents, which shows that in each case, refreshing the witness's recollection resulted in the witness's ability to recall the answer to the question.  *Id.*

    The Court finds that the Respondents' paragraph 90 may be misleading in the light of the surrounding testimony, which provides additional context, and the Court amends the Respondents' paragraph 90 accordingly.

[18]     The Petitioner argues that the Respondents' paragraph 13 is improper as it cites the Brann Declaration.  The Court concludes that the Brann Declaration is proper record evidence for the assertion in paragraph 13.  *See supra* n.9.

    The Petitioner also denies the statement, arguing that the FERC Enforcement staff did not issue a subpoena, but merely "requested" Dr. Silkman's appearance.  PRDSMF ¶ 13.  The Petitioner also maintains that Dr. Silkman never asked FERC to pay his travel expenses.  *Id.* (citing PDSMF ¶ 2; *Aff. of Att'y Demetra Anas* ¶ 13 (ECF No. 142) (*Anas Resp. Aff.*).  The dispute is factual, and as the Court is required to view the facts in the light most favorable to the non-movant, the Court accepts the Petitioner's denial as a qualification and amends the statement.

[19]     The Petitioner interposes a two-part qualification to the Respondents' paragraph 14, first noting that the FERC regulations require the sequestration of witnesses and second, stating that FERC Enforcement told Dr. Silkman that the transcript was not to be shared, but if Dr. Silkman felt the need to share it, he should contact FERC Enforcement to discuss it.  PRDSMF ¶ 14.  The Court included the Petitioner's initial qualification with regard to paragraph 12 and declines to include it here.  The Court also finds that the Respondents' statement may be misleading without including the second part of the Petitioner's qualification and has amended the Respondents' paragraph 14 accordingly.

DSMF ¶ 14; PRDSMF ¶ 14.  Dr. Silkman was instructed by Enforcement not to share the questions or answers that were given during the deposition with anyone else; Enforcement issued these instructions to Dr. Silkman in accordance with applicable regulations, 18 C.F.R. § 1b.12, 1b.16.[20]  DSMF ¶ 15; PRDSMF ¶ 15.  In accordance with applicable regulations, Enforcement also instructed him not to disclose questions or answers that were given in the course of the deposition to anyone from Rumford Paper Company (Rumford).[21]  DSMF ¶ 16; PRDSMF ¶ 16.

### b.    Document Requests

Enforcement does not have to obtain approval from a FERC administrative law judge or any other independent entity or decisionmaker concerning the scope of data requests or its investigation.    DSMF ¶ 21; PRDSMF ¶ 21.    Despite numerous requests, in accordance with the confidentiality provisions in the Commission's regulations, Enforcement did not provide the Respondents all the information it obtained during its investigation from Rumford, Constellation NewEnergy, Inc. (Constellation), and ISO-NE.  DSMF ¶ 22; PRDSMF ¶ 22.  However, during the investigation, Enforcement staff provided the Respondents with copies of all materials Enforcement staff cited in the preliminary findings letters to CES and Dr.

---

[20]    The Petitioner interposes a qualified response, arguing again that Dr. Silkman was instructed according to the FERC regulations regarding the sequestration of witnesses.  PRDSMF ¶ 15.  The Court amended paragraph 15 to reflect that this qualification applies as well to paragraph 15.

[21]    The Petitioner denies the Respondents' paragraph 16, arguing that the cited record does not support the statement, but instead states that Silkman "was instructed by FERC Enforcement not to communicate with anyone from Rumford, or to provide them with any information" and that he was told that the regulations "require you not to disclose the questions or answers that were given during the course of this deposition."  PRDSMF ¶ 16 (citing *Anas Resp. Aff.,* Attach. 4, *Ex. Dep. Test. Tr. Of Richard Silkman* (ECF No. 136-4) at 430:2-10.  The Court accepts the Petitioner's qualification and amends the Respondents' paragraph 16 to reflect the cited record.  The Court also added the Petitioner's qualification that Enforcement's instructions to Dr. Silkman were pursuant to regulation.

Silkman except publicly-available information already in the Respondents' possession. *Id.* During the investigation, Enforcement staff provided the Respondents with all potentially exculpatory information regarding the Respondents in its investigative files. *Id.* On July 17, 2012, the date of issuance of the Commission's Proposed Penalty Orders, Enforcement provided CES and Dr. Silkman copies of all documents cited in the Enforcement Staff Reports attached to the Proposed Penalty Orders except those documents already in Respondents' possession or publicly available.[22] *Id.*

Pursuant to FERC regulations, Enforcement did not give the Respondents advance or contemporaneous notice of any document requests or interrogatories ("data requests") that Enforcement served upon third parties during the investigation.[23] DSMF ¶ 17; PRDSMF ¶ 17. However, Dr. Silkman and CES entered into a joint defense agreement with Rumford Paper Company (Rumford) and drafted responses for Rumford to Enforcement data requests. *Id.* The Respondents were not

---

[22] The Petitioner admits the Respondents' paragraph 22 but then appears to interpose qualifications. The Court treats the Petitioner's response as a qualification and amends Respondents' paragraph 22 to include the detail and context the Petitioner offered. The Petitioner otherwise denies the Respondents' paragraph 22 as unsupported by the cited record, presumably because of its earlier argument that the Brann Declaration is inadmissible. The Court overrules the denial. *See supra* note 9.

[23] The Petitioner interposes a qualified response to the Respondents' paragraph 17, noting that the lack of advance or contemporaneous notice given to the Respondents of document requests or interrogatories served by FERC Enforcement on third parties was pursuant to FERC regulations because the Respondents were the subjects of the investigation. PRDSMF ¶ 17. The Court amended the Respondents' paragraph 17 accordingly.

The Petitioner also states that "CES entered into a joint defense agreement with Rumford Paper Company effective March 19, 2018, and Silkman and CES drafted responses for Rumford to data requests served by Enforcement staff on Rumford during the investigation." *Id.* Viewing the facts in the light most favorable to the Petitioner, the Court included its assertion that the Respondents had access to discovery Enforcement served on Rumford and assisted Rumford in preparing responses.

entitled to object to data requests served by Enforcement upon third parties during the investigation. DSMF ¶ 18; PRDSMF ¶ 18. According to FERC regulations, Enforcement did not give the Respondents contemporaneous notice of third party responses to any data requests served by Enforcement upon third parties during the investigation.[24] DSMF ¶ 19; PRDSMF ¶ 19. However, Dr. Silkman and CES entered into a joint defense agreement with Rumford Paper Company (Rumford) and drafted responses for Rumford to Enforcement data requests. *Id.* Enforcement determined what data requests to submit as part of its investigation, determined when the responses were due in the first instance, which could be in as little as one week, determined whether to grant enlargements of time, and determined whether the responses were adequate.[25] DSMF ¶ 20; PRDSMF ¶ 20.

### c. Preliminary Findings

On November 23, 2009, Enforcement provided CES with a 32-page letter, which included 179 footnotes, titled "Preliminary Findings Letter," and initially gave CES three weeks to respond, which Enforcement later extended to January 8, 2010.[26]

---

[24] The Petitioner interposes a qualified response, putting forth the same arguments as it did in response to the Respondents' paragraph 18. PRDSMF ¶ 19. The Court amended the Respondents' paragraph 19 to reflect the context that the Petitioner acted in accordance with FERC regulations. For the same reason set forth above, the Court amended Respondents' paragraph 19 with regard to a joint defense agreement. *See supra* note 18.

[25] The Petitioner denies the Respondents' paragraph 20 in part, arguing that the statement is unsupported by the record citation in part, but it is unclear which part it denies, since it also admits each clause of Respondents' paragraph 20. The Court finds that the Respondents' paragraph 20 is supported by their record citation, and the denial is overruled. The Petitioner also argues that the Brann Declaration is improper and should be stricken. The Court denies the request to strike. *See supra* note 9. The Court amended Respondents' paragraph 20 to clarify that Petitioner's deadline determinations were done in the first instance and were subject to Enforcement's enlargement.

[26] The Petitioner denies the Respondents' paragraph 23, noting that a letter titled "Preliminary Findings Letter" was dated November 23, 2009, not November 21, 2009. PRDSMF ¶ 23; DSMF, Attach. 8, *FERC Dep. Ex. 19* (ECF No. 136-8). The Court amended Respondents' paragraph 23 to reflect the date of November 23, 2009, as demonstrated by FERC Exhibit 18.

DSMF ¶ 23; PRDSMF ¶ 23. Prior to the time that CES was directed to respond to Enforcement's preliminary findings and analysis, Enforcement did not provide all the materials obtained in its investigation but claimed it had provided the materials that it had relied upon in making its preliminary findings and analysis.[27] DSMF ¶ 24; PRDSMF ¶ 24. Enforcement staff agreed to provide all documents referenced in Enforcement staff's November 23, 2009 Preliminary Findings Letter to CES that were not either (a) publicly available or (b) already within Respondents' possession."[28] DMSF ¶ 25; PRDSMF ¶ 25.

On January 8, 2010, CES provided its response to the preliminary findings and conclusions in a thirty page, single-spaced letter, asserting that Enforcement had not

The Petitioner further denies the Respondents' use of quotation marks around the word "preliminary" to the extent that it suggests that the conclusions of Enforcement staff were not preliminary, which the Petitioner argues is not supported by record evidence. PRDSMF ¶ 23. The Court accepts the denial and removed the quotation marks from "preliminary" in the Respondents' paragraph 23 and in subsequent paragraphs to which the Petitioner has made the same objection.

The Petitioner further states that it admits the remainder of Respondents' paragraph 23, but then puts forth a qualification, stating that "Enforcement staff later provided CES with additional time, until January 8, 2010, for CES to respond to the letter." PRDSMF ¶ 23. To ensure that the Respondents' statement is not misleading, the Court amended the statement to include the Petitioner's qualification.

[27] In response to the Respondents' paragraph 24, the Petitioner "denies the statement that Enforcement staff 'claimed' to have 'provided the materials it "relied upon" in its 'preliminary' findings and analysis because Enforcement staff in fact agreed to provide, and provided, all such materials that it had not provided." PRDSMF ¶ 24. The Court views the Respondents' use of the word "claim" in their statement in a manner consistent with Petitioner's position, namely reflective of the fact that the Petitioner stated that it had provided all materials it relied upon in its preliminary findings and analysis. The Court, therefore, overrules the Petitioner's denial.

The Petitioner further denies the Respondents' statement because of quotation marks around the word "preliminary." The Court removed the punctuation. *See supra* note 26.

[28] The Petitioner admits the Respondents' paragraph 25 in part but denies the statement that "Enforcement agreed to disclose some, but not all of the cited materials, provided that they were not shared with Defendants' co-counsel or anyone at CES other than Dr. Silkman." DSMF ¶ 25, citing *Brann Decl.* ¶¶ 13-14. The Petitioner argues that "Enforcement staff agreed to provide all documents referenced in Enforcement staff's November 23, 2009 Preliminary Findings Letter to CES that were not either (a) publicly available or (b) already within Respondents' possession." PRDSMF ¶ 25. The Court views the dispute as factual and is required to view the facts in the light most favorable to the non-moving party. The Court accepts the Petitioner's denial and amends the statement accordingly.

provided exculpatory evidence in its possession, including copies of depositions that Enforcement had taken outside the presence of the Respondents and counsel, and that Enforcement had seriously misstated the factual record in order to reach its preliminary findings and conclusions.[29]  DSMF ¶ 26; PRDSMF ¶ 26.

On April 19, 2010, Enforcement provided its preliminary findings and analyses concerning Dr. Silkman in a twenty-nine-page letter with 176 footnotes, and initially gave Mr. Silkman two weeks to respond.  DSMF ¶ 27; PRDSMF ¶ 27.  Enforcement staff later extended the response date an additional seventeen days, until May 20, 2010.[30]  *Id.*  Enforcement's preliminary findings and analyses concerning Dr. Silkman were virtually identical to Enforcement's preliminary findings and analyses concerning CES and did not directly respond to any factual or legal argument in the thirty-page response CES previously submitted.[31]  DSMF ¶ 28; PRDSMF ¶ 28.

---

[29]     The Petitioner admits the Respondents' paragraph 26 in part but interposes a qualified response to the Respondents' statement regarding the word-count of the CES letter, stating that it is unaware of the word-count of the document since it was not sent to the Petitioner in its original Word format.  PRDSMF ¶ 26.  Even though the Court wonders about whether the actual number of words in a thirty-page letter is worth quibbling about, the Court is required to view contested facts in the light most favorable to the Petitioner and for purposes of this recitation, it excludes the asserted word-count.
        The Petitioner further denies the Respondents' statement because of quotation marks around the word "preliminary."  The Court removed the punctuation.  *See supra* note 26.

[30]     The Petitioner admits the Respondents' paragraph 27 in part, but interposes a qualification, stating: "The letter was substantively similar to the Petitionary Findings Letter that Enforcement staff sent to CES via its counsel in November 2009, and to which counsel had responded via a 30-page letter.  Enforcement staff later extended the response date by an additional 17 days, until May 20, 2010."  PRDSMF ¶ 27.  The Court views the first sentence of the Petitioner's qualification as not directly related to the Respondents' statement and declines to include it.  The Court amended the Respondents' paragraph 27 to include the second sentence of the Petitioner's qualification to ensure that the statement is not misleading.

[31]     The Petitioner interposes a qualified response to the Respondents' paragraph 28, admitting that its "preliminary findings with respect to Silkman were substantively similar to its preliminary findings with respect to CES, because Silkman was CES's managing member and took the lead on its behalf on planning and perpetuating fraud in the DALRP, thereby resulting in similar facts underlying the respective roles of Silkman and CES in the fraud."  PRDSMF ¶ 28 (citing *Anas Decl*; *Anas Decl.*, Attach. 40, *Order Assessing Civil Penalty Against CES* (ECF No. 137-40) (*Order Assessing Civil*

FERC's corporate designee was not aware of any substantive fact or substantive conclusion that was changed in light of the thirty-page response CES previously submitted.[32] DSMF ¶ 29; PRDSMF ¶ 29.   FERC's corporate designee was not aware of any substantive conclusion of Enforcement's preliminary findings and analyses concerning Dr. Silkman that was changed in light of the thirty-page response CES previously submitted.[33] DSMF ¶ 30; PRDSMF ¶ 30.

On April 26, 2010, Enforcement informed Respondents for the first time that Rumford's "enrolling participant," Constellation, had changed its response to a data request concerning a meeting between Constellation and Respondents.  DSMF ¶ 31; PRDSMF ¶ 31.   Constellation had changed its answer from an answer that had originally been exculpatory for the Respondents to an answer now inculpatory, which attempted to deflect responsibility from Constellation to the Respondents.[34]   DSMF

*Penalty Against CES*); *Anas Decl.*, Attach 41, *Order Assessing Civil Penalty Against Richard Silkman* (ECF No. 137-41) (*Order Assessing Civil Penalty Against Silkman*).  The Court finds that the record citation does not adequately support the Petitioner's conclusion and declines to include the qualification.

The Petitioner further denies the Respondents' statement because of quotation marks around the word "preliminary."  The Court removed the punctuation.  *See supra* note 26.

[32]   The Respondents' paragraph 29 states "FERC's corporate designee was not aware of any factual assertion in FERC Enforcement's "preliminary" findings and analyses concerning Dr. Silkman that was changed in light of the 30-page response previously submitted by CES."  DSMF ¶ 29 (citing *FERC Dep.* 171-72).  The Petitioner offers a qualified response, clarifying what was stated during the FERC 30(b)(6)'s testimony.  The Court finds that the Petitioner's qualification accurately reflects what was stated during the deposition and amends the Respondents' paragraph 29.

The Petitioner further denies the Respondents' statement because of quotation marks around the word "preliminary."  The Court removed the punctuation.  *See supra* note 26.

[33]   The Petitioner denies the Respondents' statement because of quotation marks around the word "preliminary."  The Court removed the punctuation.  *See supra* note 26.

[34]   The Respondents' paragraph 32 states: "In the view of Defendant's counsel, this information should have been disclosed much earlier because Constellation had changed its answer 180 degrees from an answer that originally had been exculpatory for Respondents to an answer that was now inculpatory, which attempted to deflect responsibility from Constellation to Respondents, and that the original Constellation data response eviscerated FERC Enforcement's theory of this case."  DSMF ¶ 32 (citing *Brann Decl.* ¶ 20).

¶ 32; PRDSMF ¶ 32.

On April 29, 2010, Enforcement proposed to disclose what it deemed to be additional relevant depositions, affidavits, and data responses of Constellation to Dr. Silkman and Mark Isaacson of CES, and to Respondents' counsel, provided that they agreed not to disclose the information to anyone else.[35]  DSMF ¶ 33; PRDSMF ¶ 33. On May 20, 2010, Dr. Silkman responded to Enforcement's preliminary findings and analyses concerning Dr. Silkman in a thirty-four-page, single-spaced letter.  DSMF ¶ 34; PRDSMF ¶ 34.

### d.    Settlement Negotiations

In May 2010, pursuant to Commission regulations, Enforcement had a closed meeting with a quorum of the FERC Commissioners outside the presence of the Respondents and their counsel in which Enforcement's investigation of the Respondents was discussed.[36]  DSMF ¶ 35; PRDSMF ¶ 35.  On November 15, 2010,

---

The Petitioner denies the Respondents' paragraph 32, stating that "the statements and assertions of 'fact' in the Brann Declaration and in Respondents' SMF ¶ 32 as unsupported by admissible record evidence."  The Court agrees with the Petitioner that portions of the Respondents' paragraph 32 put forth legal arguments in the guise of statements of fact.  Also, the views of Respondents' counsel about the timing of disclosure are not material to the undisputed facts undergirding the resolution of this motion.  The Court grants the Petitioner's denial and removes the impermissible legal argument from the Respondents' paragraph 32.

[35]    The Petitioner interposes a qualification to the Respondents' paragraph 33, reciting the contents of the April 29, 2010 letter Enforcement staff sent to defense counsel.  PRDSMF ¶ 33.  The Court does not find the majority of the Petitioner's extensive qualification to conform with Local Rule 56(b), which requires that "[e]ach fact asserted in the statement shall be simply and directly stated", nor is it necessary to provide context to the Respondents' paragraph 33.  The Petitioner further states that "Respondents' counsel could have asked that other signatories be added to the letter." PRDSMF ¶ 33.  This statement is not supported by the cited record, and the Court declines to amend the Respondents' paragraph 33 to include it.

[36]    The Petitioner interposes a qualified response to the Respondents' paragraph 35, stating: "The testimony of the FERC 30(b)(6) witness cited as support for Respondents' SMF ¶35 was that: (a) closed meetings occur pursuant to the Commission's regulations and those regulations define what constitutes a closed meeting (see 18 C.F.R. § 375.201); (b) a number of enforcement investigations were discussed during the May 2010 closed meeting, including Enforcement's various DALRP investigations; and (c) the CES and Silkman investigations were among the topics discussed."

Enforcement served additional data requests on CES, initially giving CES two weeks to respond.[37] DSMF ¶ 36; PRDSMF ¶ 36. Other than considering Dr. Silkman's response to the data requests and sending a new data request, FERC's corporate designee was either not aware of or unable to reveal anything else that Enforcement did as part of its investigation between May and November 2010 without violating attorney-client privilege.[38] DSMF ¶ 37; PRDSMF ¶ 37. Whether to do anything during that period, as well as during the entire investigation, was up to Enforcement. DSMF ¶ 38; PRDSMF ¶ 38.

Between November 2010 and March 2013, *i.e.,* both before and after FERC issued its Orders to Show Cause in July 2012, Enforcement communicated with FERC Commissioners and their staff outside the presence of the Respondents or their counsel concerning a possible settlement with Rumford regarding Rumford's participation in the DALRP.[39] DSMF ¶ 39; PRDSMF ¶ 39. In this action, FERC

PRDSMF ¶ 35. The Court amended the Respondents' paragraph 35 to include the portions of the Petitioner's qualifications necessary for context.

[37] The Petitioner interposes a qualified response to the Respondents' paragraph 36, first noting that the date that the second set of data requests was served on CES was November 15, 2010, not November 20, 2010. PRDSMF ¶ 36. The remainder of the qualification is not directly responsive to the Respondents' paragraph 36, and the Court declines to include it.

[38] The Petitioner denies the Respondents' paragraph 37 as unsupported by the cited record, noting that the FERC witness "was instructed by counsel not to answer the question in any way that violates privilege," and noting that the witness stated, in response to the question, "between the time Dr. Silkman responded one thing Enforcement staff was doing was considering the response of Dr. Silkman; and the other thing that I know they did is sent this data request." PRDSMF ¶ 37 (citing *Anas Aff.*, Attach. 1, *Ex. Dep. Test. Tr. of Jeremy Medovoy*, October 18, 2017 (ECF No. 137-1)). The Court amended the Respondents' paragraph 37 accordingly.

[39] The Petitioner admits the Respondents' paragraph 39 but denies the statement with regard to several potential implications. First, the Petitioner denies the implication "that these communications should have been prohibited by a wall or characterized as 'ex parte' because 'there are no parties. . . in an investigation." PRDSMF ¶ 39. The Petitioner also denies the suggestion that "communications between. . . Commissioners or their advisory staff and Enforcement staff regarding investigative matters are inappropriate prior to the commencement or an adjudicatory adversarial proceeding . . . because prior to the commencement of an . . . order to show cause proceeding, Enforcement staff, in its role as Commission staff tasked with investigating potential violations of the FPA and the

withheld the communications between Enforcement and FERC Commissioners and their staff outside the presence of the Respondents or their counsel concerning a possible settlement with Rumford between November 2010 and March 2013 on the grounds of attorney-client privilege, among other reasons. DSMF ¶ 40; PRDSMF ¶ 40. FERC produced to the Respondents a privilege log describing those communications pursuant to Magistrate Judge Nivison's September 8, 2017 Order on Discovery Issues (ECF No. 117).[40] *Id.* The same lawyers from Enforcement who communicated between November 2010 and March 2013 with the FERC Commissioners and their staff outside the presence of the Respondents or their counsel concerning a possible settlement with Rumford were conducting the investigation of the Respondents. DSMF ¶ 41; PRDSMF ¶ 41.

In February 2011, Enforcement made a settlement proposal orally to Respondents' counsel at a meeting in Washington, D.C. DSMF ¶ 42; PRDSMF ¶ 42. On March 11, 2011, the Respondents requested seven categories of material not

---

Commission's regulations, are permitted under the Commission's regulations to communicate with the Commission and certain of its advisory staff during an investigation." *Id.* The Petitioner also "denies the implication that Enforcement staff engaged in prohibited *ex parte* communications with the Commission regarding a potential settlement with Rumford after formal adjudicatory proceedings involving Rumford" began. *Id.*

The Court has not read, and will not read, any of the implications outlined by the Petitioner with regard to the Respondents' paragraph 39. The Petitioner further notes that on September 6, 2012, Enforcement staff . . . obtained a written waiver from Rumford of the protections afforded under the *Separation of Function Rule*. . . and the *ex parte* rule. . . to consult with the Commission . . . for purposes of exploring potential settlement. . ." *Id.* The Court does not view this statement as directly responsive to the Respondents' statement because it concerns Rumford and Rumford's defense counsel, not the Respondents' or Respondents' counsel.

[40]     The Petitioner admits the Respondents' paragraph 40, but then denies certain implications from the facts it admitted. PRDSMF ¶ 40. The Court includes the Petitioner's qualification regarding the production of a privilege log regarding these communications as it provides context to the Respondents' statement. The Petitioner also denies any implication made by the Respondents' regarding ex parte or improper communications, which the Court notes.

previously disclosed in order to respond to Enforcement's settlement proposal, including a deposition of Rumford's expert; all communications with and data provided by Constellation; all communications with and data provided by ISO-NE; all other information considered, evaluated, or relied upon by FERC to assess the claims against the Respondents; and the methodology behind its settlement proposal. DSMF ¶ 43; PRDSMF ¶ 43. On March 31, 2011, Enforcement responded to the Respondents' request, declining to produce such additional information because it "does not believe that further disclosures of non-public investigative information are warranted," DSMF, Attach 1., *FERC Dep. Ex. 18*, (ECF No. 136-16), given the Commission's disclosure policies, the fact that the Commission already provided CES and Dr. Silkman copies of all documents the Commission relied upon for their preliminary conclusions, and that the Commission had already provided CES and Dr. Silkman all potentially exculpatory material consistent with longstanding Commission practice. DSMF ¶ 44; PRDSMF ¶ 44. Additionally, in a letter sent to Respondents' counsel on May 9, 2011, Enforcement staff provided a detailed explanation of its calculation of the proposed penalties against CES and Dr. Silkman that formed the basis of its settlement proposal.[41] *Id.* Enforcement determines whether to provide information in the possession of Enforcement staff to the subject of an investigation based on the law, the Commission's regulations, policy statements, and statutes governing the confidentiality of information gathered during

---

[41] The Petitioner interposes a qualified response to the Respondents' paragraph 44, detailing additional reasons it stated in its response to the Respondents' request for additional material to assist them in settlement calculations. PRDSMF ¶ 44. To ensure that the Respondents' paragraph 44 is placed within context, the Court amended the statement to include the Petitioner's qualifications.

investigations.[42]  DSMF ¶ 45; PRDSMF ¶ 45.

On April 26, 2011, the Respondents submitted an eight-page response to FERC's oral settlement proposal.  DSMF ¶ 46; PRDSMF ¶ 46.  On May 9, 2011, Enforcement rejected the Respondents' settlement proposal, did not make a counter-proposal, and initially gave the Respondents two days to submit a revised settlement proposal.  DSMF ¶ 47; PRDSMF ¶ 47.  On May 9, 2011, Enforcement staff sent an email and attached letter to Respondents' counsel, which stated "[w]e carefully considered your response, but disagree with your analysis," and provided an explanation of the Commission's Penalty Guidelines and Enforcement's calculations of the proposed penalties articulated during the February 2011 settlement conference.[43]  *Id.*  The Respondents' counsel stated in an email to Enforcement staff on May 9, 2011 that he would be meeting with his clients on May 11, and that he anticipated getting back to Enforcement staff on May 12.  *Id.*  Enforcement staff responded by email and agreed to delay any further action until after the close of business on May 12, 2011.  *Id.*  On May 12, 2011, the Respondents responded to Enforcement's settlement letter but did not make a revised settlement proposal or

---

[42]  The Respondents' paragraph 45 states "In determining whether to provide information in the possession of FERC Enforcement that the subject of an investigation claims to need, it is up to FERC Enforcement whether or not to turn over that information, subject to any FERC regulation or other statute that prohibits disclosure."  DSMF ¶ 45.  The Petitioner interposes a qualified response, clarifying that FERC Enforcement's decision to disclose "is based on the law, the Commission's regulations and Policy Statement on Disclosure of Exculpatory Materials, 129 FERC ¶ 61,248 (2009), and statutes governing the confidentiality of information gathered during investigations."  PRDSMF ¶ 45.  The Court amended the Respondents' paragraph 45 to include the additional sources FERC Enforcement uses to determine whether to disclose information.

[43]  In its response to Respondents' paragraph 47, the Petitioner clarified the circumstances under which it rejected the Respondents' counteroffer and under which the deadline for a further response from the Petitioner was due.  PRDSMF ¶ 47.  The Court included these additional details to provide context.

accept Enforcement's prior unchanged settlement demand.  DSMF ¶ 48; PRDSMF ¶ 48.  On May 13, 2011, Enforcement responded to the Respondents' settlement letter, stating: "[i]t appears at this time that we will be unable to reach a settlement regarding this matter."[44]  DSMF ¶ 49; PRDSMF ¶ 49.  In the same letter, Enforcement informed the Respondents that their "preliminary conclusions have not materially changed" and it intended to recommend that FERC issue Orders to Show Cause but allowed the Respondents to submit a response to Enforcement.  DSMF ¶ 51; PRDSMF ¶ 51.

On June 27, 2011, CES and Dr. Silkman submitted a joint seventy-nine-page response to Enforcement's 1b.19 Letters.  DSMF ¶ 52; PRDSMF ¶ 52.  As required by 18 C.F.R. § 1b.19, Enforcement submitted the Respondents' response to the Commission together with Enforcement staff's report and recommendation that the Commission initiate adversarial on-the-record order-to-show-cause proceedings against the Respondents.  In their 1b.19 response, which Enforcement staff provided to the Commission, the Respondents restated the settlement positions they asserted in the April 26, 2011 letter.[45]  DSMF ¶ 50; PRDSMF ¶ 50.

---

[44]    The Petitioner interposes a qualified response to Respondents' paragraph, stating several other statements contained in FERC's response letter.  The Court does not find that these statements are proper qualifications, but instead are an attempt to reframe the Respondents' statement with more detail than is necessary under Local Rule 56(b).  *See supra* note 30.

[45]    The Respondents' paragraph 50 states: "There is no entry on FERC's privilege log that indicates that FERC Enforcement ever conveyed the Defendants' settlement proposal, or Defendants' communications concerning settlement, to the FERC Commissioners or their staff.  DSMF ¶ 50, citing *FERC Dep.*; DSMF, Attach. 4, *Dep. Test, Tr. of Richard Silkman, February 27, 2009* (ECF No. 136-4) (*Silkman Dep.*).  The Petitioner denies the Respondents' paragraph 50 as unsupported by the cited record material.

The Court finds that the record citation does not support the Respondents' paragraph 50 and affirms the Petitioner's denial.  In denying the Respondents' paragraph 50, the Petitioner notes that the Respondents' 79-page response to FERC Enforcement's May 13, 2011 letters, which restated the Respondents' settlement positions asserted in the April 26, 2011 letter, were shared with the

### e. Orders to Show Cause

On February 16, 2012, Enforcement submitted drafts of FERC's Orders to Show Cause and Enforcement's Reports concerning the Respondents to FERC Chairman Wellinghoff's Chief of Staff, which have been withheld in this litigation on the grounds of attorney-client privilege, among other reasons.[46] DSMF ¶ 53; PRDSMF ¶ 53. Enforcement did not provide its reports to the Respondents when Enforcement submitted them to the FERC Commissioners and did not disclose what specific evidence it provided the FERC Commissioners. DSMF ¶ 54; PRDSMF ¶ 54. There is no entry on FERC's privilege log that indicates that when Enforcement submitted the draft Orders to Show Cause and Enforcement's Reports concerning the Respondents to the FERC Commissioners and their staff, but Enforcement conveyed to the FERC Commissioners or their staff the Respondents' seventy-nine-page response concerning Enforcement's intention to recommend that FERC issue Orders to Show Cause.[47] DSMF ¶ 55; PRDSMF ¶ 55.

Between February 16, 2012, when Enforcement submitted drafts of FERC's

---

Commission as required by 18 C.F.R. §1b.19. PRDSMF ¶ 50. The Court included this statement for context.

[46] The Petitioner interposes a qualified response to the Respondents' paragraph 53, noting that "draft orders to show cause and Enforcement's Staff Reports were submitted by Enforcement staff to Chairman Wellinghoff's Chief of Staff, not to the Commission." PRDSMF ¶ 53 (citing *Silkman Dep.* at 16). The Court accepts the qualification and amended the Respondents' paragraph 53.

[47] The Respondents' paragraph 55 states "[t]here is no entry on FERC's privilege log that indicates that when FERC Enforcement submitted the draft Orders to Show Cause and FERC Enforcement's Reports concerning the Respondents to the FERC Commissioners and their staff, it also conveyed to the FERC Commissioners or their staff Defendants' 79-page response concerning FERC Enforcement's intention to 'recommend' that FERC issue Orders to Show Cause." DSMF ¶ 55. The Petitioner admits the Respondents' statement but denies "the implication that the absence of an entry on a log of email communications means that Enforcement did not provide Respondents' 1b.19 response to the commission." PRDSMF ¶ 55. The Court included this fact offered by the Petitioner to provide further context to the Respondents' paragraph 55.

Orders to Show Cause and Enforcement's Reports concerning the Respondents to the Chairman Wellinghoff's Chief of Staff, and July 17, 2012, when FERC issued the Orders to Show Cause and Reports, there were written communications between Enforcement and the Commission and the FERC Office of the Secretary outside the presence of the Respondents and their counsel that have been withheld in this litigation on the grounds of attorney-client privilege, among other reasons.[48] DSMF ¶ 56; PRDSMF ¶ 56. The FERC corporate designee was instructed not to answer whether he knew if the FERC Commissioners made any changes to the draft Orders or Reports submitted by Enforcement to them.[49] DSMF ¶ 57; PRDSMF ¶ 57.

On July 17, 2012, FERC issued a four-page Order to Show Cause against Dr. Silkman, which attached Enforcement's thirty-one-page report that "describes the background of [Enforcement's] investigation, findings and analysis, and proposed sanctions." DSMF ¶ 58; PRDSMF ¶ 58. FERC initially gave the Respondents thirty days to respond to the Order to Show Cause, and to "elect (a) administrative hearing before an ALJ at the Commission ['Option 1'] or (b) if the Commission finds a violation, an immediate penalty assessment by the Commission which a United States district court is authorized to review de novo ['Option 2']." *Id.* On the same

[48] The Petitioner denies the Respondents' paragraph 56 on two bases: (1) That the reports were submitted to Chairman Wellinghoff's Chief of Staff, not to the Commission, and (2) that the record does not support that there were eighteen written communications between FERC Enforcement and the Commission. PRDSMF ¶ 56. The Court affirms the Petitioner's denial and amended the Respondents' paragraph 56 to reflect the content of the cited record.

[49] The Respondents' paragraph 57 states: "The FERC Corporate Designee was instructed not to answer whether the FERC Commissioners made any changes to the draft Orders or Reports submitted by FERC Enforcement to them." DSMF ¶ 57. The Petitioner denies the Respondents' statement as unsupported by the cited record, stating that the FERC designee was asked "Do you know if the commission made any changes to the draft that was submitted by enforcement staff?" PRDSMF ¶57. The Court affirms the denial and amends the Respondents' paragraph 57 accordingly.

day, FERC issued a four-page Order to Show Cause against CES, which attached Enforcement's thirty-one-page Report that "describes the background of [Enforcement's] investigation, findings and analysis, and proposed sanctions." DSMF ¶ 59; PRDSMF ¶ 59.

FERC initially gave the Respondents thirty days to respond to the Orders to Show Cause, and to "elect (a) administrative hearing before an ALJ at the Commission ['Option 1'] or (b) if the Commission finds a violation, an immediate penalty assessment by the Commission which a United States district court is authorized to review de novo ['Option 2']. DSMF ¶ 59; PRDSMF ¶ 59. Neither FERC nor Enforcement ever made statements to the Respondents concerning the two options other than what was contained in the Orders to Show Cause. DSMF ¶ 60; PRDSMF ¶ 60. In other words, neither FERC nor Enforcement ever stated to the Respondents that they could only get discovery or a hearing if they selected Option 1, or that Option 2 was an "informal adjudication," an "administrative penalty assessment process," or a "show cause proceeding" being conducted by FERC. *Id.*

At the same time, the statutes and regulations applying to contested on-the-record show cause proceedings are publicly available and were available to the Respondents. *Id.* The Proposed Penalty Orders expressly stated that Respondents could "elect (a) an administrative hearing before an ALJ at the Commission or (b) if the Commission finds a violation, an immediate penalty assessment by the Commission which a United States district court is authorized to review *de novo*." *Id.* That a proceeding before the Commission would be different than a proceeding before

28

an ALJ is apparent both from the language of the Proposed Penalty Orders issued to Respondents on July 17, 2012 ("if the Commission finds a violation, an immediate penalty assessment" by a Commission "order assessing a penalty") and the governing statute, which provides for a "prompt assessment" by Commission "order" if a violation is found without mention of discovery or a live hearing.[50]  *Id.*

On July 27, 2012, Enforcement provided the Respondents with additional information "specifically referenced" in Enforcement's Report and Recommendation to FERC that had not been previously provided to the Respondents.  DSMF ¶ 61; PRDSMF ¶ 61.  That same day, the Respondents filed a written election of option two—to have an immediate penalty assessment by FERC if it found a violation— which a district court could then review de novo.  DSMF ¶ 62; PRDSMF ¶ 62.

On September 14, 2012, the Respondents submitted their written response to the Orders to Show Cause.[51]   DSMF ¶ 63; PRDSMF ¶ 63.  On November 13, 2012, Enforcement filed a reply with FERC to the Respondents' response to the Orders to Show Cause, the last filing before FERC issued the Orders Assessing Penalties.[52]

---

[50]     The Petitioner denies the Respondents' paragraph 60, arguing that the statement is unsupported by admissible record evidence and is contradicted by other admissible record evidence. PRDSMF ¶ 60.  The Court finds that the Respondents' citation to the Brann Declaration supports its statement.  *See supra* note 9.   The Court includes the relevant supplemental information offered by the Petitioner, because the dispute is factual in nature, and the Court must view the facts in the light most favorable to the non-movant.

[51]     The Petitioner admits the Respondents' paragraph 63 but denies that Exhibit 40, the record citation offered by the Respondents, supports the statement, and instead points to Exhibit 39 for support.  PRDSMF ¶ 63 (citing *Order Assessing Civil Penalty Against CES*; *Order Assessing Civil Penalty Against Richard Silkman*).   The Court, after reviewing the two exhibits as well as the testimony of the FERC designee, finds that the Respondents' statement is supported by Exhibit 39, not Exhibit 40.

[52]     The Petitioner admits the Respondents' paragraph 64 but denies that Exhibit 41, the record citation offered by the Respondents, supports the statement, and instead points to Exhibit 40 for support.  PRDSMF ¶ 64.  The Court, after reviewing the two exhibits as well as the testimony of the FERC designee, finds that the Respondents' statement is supported by Exhibit 40.

DSMF ¶ 64; PRDSMF ¶ 64.  On November 14, 2012, Enforcement provided the Respondents with additional information "specifically referenced" in Enforcement's Reply that had not been previously provided to the Respondents.  DSMF ¶ 65; PRDSMF ¶ 65.

Other than these written submissions, there were no communications to or from FERC and the Respondents after FERC issued the Orders to Show Cause until FERC issued its Orders Assessing Penalties.  DSMF ¶ 66; PRDSMF ¶ 66.  Other than making its written declaration of Option 2 and submitting a written response to the Orders to Show Cause, the Respondents did not participate in any proceeding after FERC issued the Orders to Show Cause.[53]  DSMF ¶ 67; PRDSMF ¶ 67.  After FERC issued Orders to Show Cause, the Respondents were not automatically entitled to obtain or conduct discovery; however, the Respondents could have made a request for discovery to the Commission via motion, pursuant to the Commission's Rules of Practice and Procedure, 18. C.F.R. Part 385.[54]  DSMF ¶ 68; PRDSMF ¶ 68.  During the investigation and the Order to Show Cause Proceedings, the Respondents did not take any depositions, although defense counsel was permitted to ask questions of Dr.

[53]    The Petitioner admits the Respondents paragraph 67 but "denies that the Commission's proceedings are "alleged" proceedings because, under the Commission's regulations, issuance of a Proposed Penalty Order commences a 'contested on-the-record proceeding' known as a "show cause proceeding," subject to the Commission's Rules of Practice and Procedure." PRDSMF ¶ 67.  The Court affirms the Petitioner's denial and removes the word "alleged" from the Respondents' paragraph 67, as it is not supported by the record, and is argument, not fact.

[54]    The Petitioner denies the Respondents' paragraph 68, stating: "[u]nder the Commission's regulations, the Respondents could have made a request for discovery to the Commission via motion." PRDSMF ¶ 68.  The Petitioner "further specifically denies that Respondents 'were not permitted' to obtain or conduct any discovery after the Proposed Penalty Issues were issued because Respondents did not make any request via motion. . .." *Id*.  This is a factual dispute between the parties, and the Court must view the evidence in the light most favorable to the non-movant.  The Court, therefore, amended the Respondents' paragraph 68 to conform to its obligation to view contested facts in the light most favorable to the Petitioner.

Silkman when Enforcement took his deposition.[55]  DSMF ¶ 84; PRDSMF ¶ 84.  FERC

and Enforcement did not conduct additional fact-finding after FERC issued the

Orders to Show Cause.[56]  DSMF ¶ 69; PRDSMF ¶ 69.  Subsequently, the Commission

conducted additional fact-finding after FERC issued Orders to Show Cause cited by

FERC in the Orders Assessing Penalties.[57]  *Id.*  There was no live hearing, as opposed

to a paper hearing, conducted before the FERC Commissioners or a decisionmaker

who in the Respondents' view was neutral and impartial either before or after FERC

issued Orders to Show Cause concerning the merits of the allegations against the

Respondents.[58]  DSMF ¶ 70; PRDSMF ¶ 70.  The Respondents were not permitted to

---

[55]     The Petitioner admits that the Respondents did not take any depositions during the investigation or the order-to-show-cause proceedings but denies that the Respondents did not take any depositions during this litigation, and states that defense counsel "deposed multiple witnesses during discovery in this litigation."  PRDSMF ¶ 84 (citing *FERC Dep*; DSMF, Attach. 25, *Alley Dep.* (ECF No. 136-25); DSMF, Attach. 26, *Butte Dep.* (ECF No. 136-26); DSMF, Attach. 27, *Fuller Dep.* (ECF No. 136-27)).  The Court amended the Respondents' paragraph 84 to clarify the period during which the Respondents did not take depositions.

[56]     The Respondents' paragraph 69 states in part that "[t]he Defendants are not aware of any additional fact-finding conducted by FERC Enforcement or FERC after FERC issued the Orders to Show Cause."  DSMF ¶ 69.  The Petitioner admitted this assertion, PRDSMF ¶ 69, so the Court amended it from one of the Respondents' belief to one of fact.

[57]      In Respondents' paragraph 69, the Respondents also stated that "Defendants are not aware of any additional fact-finding conducted by them (namely Enforcement or FERC) after FERC issued Orders to Show Cause that was cited by FERC in the Orders Assessing Penalties."  DSMF ¶ 69.  The Petitioner denies, however, that the Respondents were not aware that "the Commission engaged in fact finding after the Commission issued the Proposed Penalty Orders because the Commission's August 29, 2013 Assessment Orders reflect that the Commission made findings of fact based on the record evidence presented to it by the parties in their written submissions during the on-the-record adjudicatory show cause proceedings."  *Id.*  The Court views the dispute as factual in nature and is required to view the evidence in the light most favorable to the Respondents.  The Petitioner's denial of the Respondents' paragraph 69 is affirmed and the statement is amended accordingly.  The Court altered the statement from one that describes what the Respondents knew or did not know to one of fact.

[58]     The Petitioner "admits that the Respondents did not receive a live hearing (as opposed to a paper hearing) during the adjudicative order-to show-cause proceedings" but denies "that there was no hearing before a 'neutral impartial decision-maker'" as unsupported by the cited record.  PRDSMF ¶ 70.  The Court altered the Respondents' paragraph 70 to include the reference to paper hearing because it is required to view contested facts in the light most favorable to the nonmovant.  The Court amended the Respondents' paragraph 70 to acknowledge that whether the decisionmaker was neutral and impartial is a contested conclusion, and the Court altered paragraph 70 to confirm that the Respondents' position is that the decisionmaker was neither neutral nor impartial.

meet ex parte with the FERC Commissioners and their staff concerning the merits of the claims asserted against Respondents after the commencement of the order-to-show-cause proceedings as the Commission's regulations prohibit any party to a contested on-the-record proceeding, including an order-to-show-cause proceeding, from engaging in ex parte contacts with the Commission.[59]  DSMF ¶ 71; PRDSMF ¶ 71.

In their written submissions, the Respondents could only cite evidence from the investigation that had been developed by Enforcement to prosecute the case against the Respondents and that had been disclosed by Enforcement, and could only cite answers to deposition questions asked by Enforcement outside the presence of the Respondents or their counsel or witnesses who had incentive to deflect responsibility from themselves to the Respondents.[60]  DSMF ¶ 72; PRDSMF ¶ 72.[61]

### f.    Orders Assessing Penalties

[59]    The Petitioner denies that the Respondents were not permitted to meet with the FERC Commissioners and their staff at any time, "because no regulation prohibited Respondents from making a written request during the Enforcement investigation . . .." PRDSMF ¶ 71.  The Petitioner also denies the statement "as to the time period covered by the adjudicatory order-to-show-cause proceedings" but does not offer specific record support for this denial.  *Id.*  The Petitioner further states that FERC regulations "prohibit any party to a contested on-the-record proceeding . . . from engaging in *ex parte* contacts with the commission", and that FERC regulations allow "a party to a contested-on-the-record proceeding . . . to file a motion for relief to toe Commission at any time during the proceeding."  *Id.*   The Court views the dispute over the Respondents' paragraph 71 as factual and must view the facts in the light most favorable to the Respondents.  The Petitioner's denial is affirmed, and the Respondents' statement is accordingly amended.

[60]    The Petitioner denies the Respondents' paragraph 72 "because no rules of evidence governed the order-to-show-cause proceedings" and "because the Commission's Rules of Practice and Procedure governing adjudicatory proceedings before the Commission . . . specifically provide that a Respondents' answer must include 'documents that support the facts in the answer in possession of, or otherwise attainable by Respondents, including, but not limited to, contracts and affidavits."  PRDSMF ¶ 72 (citing 18 C.F.R. § 385.215(c)(4)(2012)).  The Petitioner further notes that the Respondents never made a request via motion for discovery during the proceedings.  PRDSMF ¶ 72.   The Court views the Petitioner's denial as not directly responsive to the Respondents' statement.  The denial is overruled.

[61]    The Respondents' paragraph 73 states "Defendants perceived that they received less process after FERC issued its Orders to Show Cause than they received before that time." DSMF ¶ 73.  The

On August 29, 2013, FERC issued Orders Assessing Penalties against the Respondents. DSMF ¶ 74; PRDSMF ¶ 74. FERC had control over its docket and could decide how long to take to issue a decision, and thus it was within its control whether to take over a year from July 17, 2012, when FERC issued the Orders to Show Cause, until August 29, 2013, when FERC issued the Orders Assessing Penalties. DSMF ¶ 75; PRDSMF ¶ 75. During that period, the Respondents and Enforcement each moved for an enlargement of time of approximately thirty days, and each extension was granted by the Commission.[62] *Id.* Other than requesting and receiving additional time to respond to Enforcement's Preliminary Findings and Proposed Penalty Orders, the Respondents did not have any control or input over when FERC issued its Orders Assessing Penalties, or when FERC issued its earlier Orders to Show Cause, or when Enforcement issued its earlier preliminary findings and conclusions, or when Enforcement recommended to FERC that it issue its Orders to Show Cause.[63] DSMF ¶ 76; PRDSMF ¶ 76.

Petitioner denies the Respondents' paragraph 73 "because Petitioner has no way to know what Respondents' 'perceived' . . ." and because defense counsel states in his declaration what he perceived, not what the Respondents perceived. PRDSMF ¶ 73. What the Defendants or their lawyer perceived about the extent of due process afforded them at varying times is neither material nor relevant to the legal issues before the Court. Although due process is flexible, it cannot turn on the perceptions of the litigants or their attorneys, but on what is legally required. Whether the Respondents in fact received more or less due process during various phases is a question of fact, not of perception. The Court declines to include the Respondents' paragraph 73.

[62] The Petitioner interposes a qualified response to the Respondents' paragraph 75, noting that both FERC Enforcement and the Respondents filed motions for enlargement of time during this period. To ensure that the Respondents' statement is not misleading, the Court amended it to include the Petitioner's qualification in part. The Petitioner also details other considerations of the Commission's workload in its qualification, which the Court views as not directly responsive to the Respondents' paragraph 75 and the Court declines to include.

[63] In response to the Respondents' paragraph 76, the Petitioner interposes a qualification, stating that the Respondents "requested and received additional time to respond to Enforcement's Preliminary Findings and requested and received additional time to respond to the Commission's Proposed Penalty Orders . . ." PRDSMF ¶ 76. The Court amended the Respondents' paragraph 76 to include the qualification.

Enforcement did not provide the Respondents with all the information it obtained as part of its investigation of the Respondents before FERC issued the Orders Assessing Penalties.[64] DSMF ¶ 77; PRDSMF ¶ 77. Although the Respondents could have requested discovery, the Respondents did not have the right to conduct discovery at any point prior to the time FERC issued the Orders Assessing Penalties.[65] DSMF ¶ 78; PRDSMF ¶ 78. Although the Respondents could have requested discovery, the Respondents also did not have the right to serve document requests on FERC or to compel Enforcement to disclose what it had obtained as part of its investigation at any time before FERC issued the Orders Assessing Penalties.[66] DSMF ¶ 79; PRDSMF ¶ 79. Both before and after FERC issued its Orders to Show Cause, the Respondents did not serve any interrogatories on FERC.[67] DSMF ¶ 80; PRDSMF ¶ 80. Although the Respondents could have requested discovery, the Respondents did not have the right to serve interrogatories on FERC at any time

---

[64] The Petitioner admits the Respondents' paragraph 77 "but denies the suggestion that Petitioner did not provide relevant or material information to Respondents at all relevant times." PRDSMF ¶ 77. The Petitioner's qualification is not factual but argument about proper inferences from the facts. The Court declines to include it.

[65] The Petitioner admits the Respondents' paragraph 78 in part but "denies the suggestion that Respondents could not have requested such discovery, as the Commission's Rules of Practice and Procedure permit parties to contested . . . proceedings . . . to file motions for relief to the Commission at any time during the proceedings. . ." PRDSMF ¶ 78. To make the record accurate, the Court included the Petitioner's statement that the Respondents could have requested discovery, even though the Respondents correctly state that they did not have the right to discovery.

[66] In response to the Respondents' paragraph 79, the Petitioner "denies the suggestion that the Respondents' could not have requested such discovery." PRDSMF ¶ 79. As with paragraph 78, to make the record accurate, the Court amended the Respondents' paragraph 79 to reflect that they could have requested discovery, even though they did not have the right to discovery.

[67] In response to the Respondents' paragraph 80, the Petitioner "denies the suggestion" that the Respondents' could not have requested such discovery. PRDSMF ¶ 80. The Court just clarified that the Respondents could have requested discovery. DSMF ¶¶ 78-79; PRDSMF ¶¶ 78-79. The only asserted fact here is that the Respondents did not actually serve any interrogatories on Petitioner. The Court overrules the Petitioner's qualified response.

before FERC issued the Orders Assessing Penalties.[68]  DSMF ¶ 81; PRDSMF ¶ 81.

Although the Respondents could have requested discovery, they did not have the right

to serve third party subpoenas at any time before FERC issued the Orders Assessing

Penalties.[69]  DSMF ¶ 82; PRDSMF ¶ 82.  Although the Respondents could have

requested discovery, the Respondents did not have the right to compel the production

or preservation of any documents from any third parties at any time before FERC

issued the Orders Assessing Penalties.[70]  DSMF ¶ 83; PRDSMF ¶ 83.  The

Respondents did not have the right to notice testimony of any third-party witness at

any time before FERC issued the Orders Assessing Penalties.[71]  DSMF ¶ 85;

PRDSMF ¶ 85.  Although the Respondents could have requested discovery, the

Respondents did not have the right to compel testimony or an interview with any

third-party witness before FERC issued the Orders Assessing Penalties.[72]  DSMF ¶

---

[68]     The Petitioner puts forth the same response to the Respondents' paragraph 81 as it does to the Respondents' paragraphs 78 and 79.  For the reasons stated above, the Court amends the Respondents' paragraph 81 to reflect the fact that they could have requested discovery but did not have a right to discovery.  *See supra* note 66-67.

[69]     *See supra* note 66-67.

[70]     *See supra* note 66-67.

[71]     The Petitioner denies the Respondents' paragraph 85 as unsupported by the cited record materials, because it argues that the Brann Declaration is inadmissible, and that Petitioner's response to RFA ¶ 51, cited in support of the Respondents' statement, states that the Respondents "did not have the right to notice or take testimony of any witness during Enforcement's investigation under Part 1b of the Commission's regulations, and that the Commission's regulations do not provide discovery as a matter of right during order-to-show-cause proceedings."  PRDSMF ¶ 85 (citing DSMF, Attach. 2, *FERC FRA Resp.* (ECF No. 136-2)).

     The Court finds the Respondents' paragraph 85 adequately supported by the cited record and overrules the Petitioner's denial.  *See supra* note 9.  Unlike the Petitioner's other responses, here the Petitioner does not claim that the Respondents could have requested permission to notice the testimony of third party witnesses.  PRDSMF ¶ 85.  Instead it states that the Respondents do not cite any statutes or regulations that would have prohibited them from doing so.  The Court overrules the Petitioner's denial because Respondents' paragraph 85 is adequately supported by the record and the Petitioner's denial is not.

[72]     The Petitioner admits that "the Commission's regulations do not provide discovery as a matter of right during order-to-show-cause proceedings . . . but denies the suggestion that Respondents could not have requested such discovery . . . as the Commission's Rules of Practice and Procedure permit

86; PRDSMF ¶ 86.

In or around February 2009, Enforcement staff requested the testimony of Dr. Richard Silkman in its investigations of certain DALRP participants. PSAMF ¶ 2; DRPSAMF ¶ 2. Enforcement staff could have compelled Dr. Silkman's testimony only after (a) receiving the Commission's authorization to convert its investigation to formal status under 18 C.F.R. § 1b.5, (b) issuing a subpoena for Dr. Silkman's testimony, and (c) if Dr. Silkman refused to comply with the subpoena, successfully seeking to have the subpoena enforced by a federal judge, 18 C.F.R. § 1b.15, none of which FERC Enforcement staff did in this instance. *Id.* The Commission was neither asked to pay, nor paid, Dr. Silkman's travel expenses in appearing to testify. *Id.* FERC Enforcement set the location for the deposition in Washington, D.C., rather than Maine, and then informed Dr. Silkman's counsel on several occasions that the Defendants' "cooperation" would be taken into account in determining how to proceed.[73] *Id.*

The Respondents produced in discovery in this litigation a joint defense agreement entered into between CES and Rumford effective March 19, 2009, concerning FERC's investigation of Rumford's participation in the ISO-NE DALRP. PSAMF ¶ 3; DRPSAMF ¶ 3.

Dr. Silkman provided draft answers to Rumford or its counsel to data requests

---

parties . . . to file motions for relief . . ." PRDSMF ¶ 86. Consistent with its prior rulings, the Court amends the Respondents' paragraph 86. *See supra* note 66-67.

[73] The Respondents interpose a qualified response to the Petitioner's paragraph 2, providing further details surrounding Dr. Silkman's deposition. The Court amended the Petitioner's statement to include this additional context.

served on Rumford by Enforcement staff during Enforcement's investigation of Rumford's participation in the DALRP.[74] PSAMF ¶ 4; DRPSAMF ¶ 4.

Although the Respondents question whether the so-called preliminary findings were in fact preliminary, Enforcement staff sent a Preliminary Findings Letter to CES on November 23, 2009, explaining Enforcement's preliminary conclusion that CES had committed fraud in violation of the Commission's Anti-Manipulation Rule, as well as the factual and legal bases for this conclusion.[75] PSAMF ¶ 5; DRPSAMF ¶ 5. In the letter, Enforcement staff initially asked for a response within three weeks from the date of the letter. *Id.* Enforcement staff subsequently provided CES additional time, until January 8, 2012, to respond to the November 23, 2009 Preliminary Findings Letter to CES. *Id.*

Again, although the Respondents question whether the so-called preliminary findings were in fact preliminary, Enforcement staff sent a Preliminary Findings Letter to Dr. Silkman on April 19, 2010, explaining Enforcement's preliminary conclusion that Dr. Silkman had committed fraud in violation of the Commission's Anti-Manipulation Rule, as well as the factual and legal bases for this conclusion. PSAMF ¶ 6; DRPSAMF ¶ 6. In the letter, Enforcement staff initially asked for a response by May 3, 2010. Enforcement staff subsequently provided Dr. Silkman with additional time, until May 20, 2010, to respond to the April 19, 2010 Preliminary

---

[74] The Respondents pose a qualification to the Petitioner's statement, stating that Dr. Silkman responded to some, but not all, of the data requests, but they fail to provide a record citation. The Court declines to include the qualification.

[75] The Respondents admit that Petitioner labeled the letter a Preliminary Findings Letter, but they deny that the findings were in fact preliminary. PSAMF ¶ 5; DRPSAMF ¶ 5. The Court qualified the Petitioner's additional paragraph 5 to reflect the Respondents' skepticism.

Findings Letter to Dr. Silkman. *Id.*

As stated in the May 2008 Policy Statement on Enforcement, the purpose of preliminary findings issued by Enforcement staff is to allow the subject of an investigation to understand Enforcement staff's position and to provide an opportunity for the subject to respond with argument or evidence if it believes Enforcement staff's position is incorrect, thereby allowing Enforcement staff to change its position before reaching its final conclusions should they be persuaded by the subject's response.[76]  PSAMF ¶ 7; DRPSAMF ¶ 7.

On April 29, 2010, Enforcement staff sent Respondents' counsel a letter that was later countersigned by the Respondents and their counsel, which, in part, stated: (a) "Staff believes that disclosure of certain documents will facilitate CES's understating of the investigation and Constellation NewEnergy, Inc.'s (CNE) purported knowledge of Rumford's baseline period generation curtailment," (b) "However, all of the information was obtained as part of a non-public investigation and the information is confidential in nature under section 1b.9 of the Commission's regulations.  18 C.F.R. § 1b.9 (2009)," (c), "CNE also believes that the information includes non-public and confidential commercial information," (d) "Nevertheless, Enforcement has obtained permission from CNE and counsel to Ms. Amy Richard, Mr. Peter Kelly-Detwiler, and Mr. Bruce McLeish to release relevant portions of all

---

[76]    The Respondents interpose a qualification, reciting verbatim the entire Revised Policy Statement on Enforcement (ECF No. 137-6).  DRPSAMF ¶ 7.  The Petitioner's statement provides an accurate summary of the Policy Statement, and the Respondents have not explained why any word differences between Petitioner's additional paragraph 7 and the quoted Policy Statement matter.  The Court declines to accept the Respondents' qualification and deems Petitioner's additional paragraph 7 admitted.

deposition transcripts and affidavits of CNE employees as well as other narrative data request responses from CNE involving CNE's knowledge of Rumford's operations, subject to the restrictions in this letter," and (e),

> In order to maintain the non-public nature of this investigation and the materials obtained as part of the investigation, we will require CES to agree that these documents, and this letter, will be used only by the CES attorneys working on this matter, and, for purposes of review, shown only to fellow signatories to the attachment.

PSAMF ¶ 8; DRPSAMF ¶ 8. The letter contained signature lines for Dr. Silkman, Mark Isaacson, Attorney Brann, and any Brann & Isaacson attorneys or employees working on the matter. *Id.* Respondents' counsel could have asked that other signatories be added to the letter. *Id.* The letter stated that both the documents and the letter "will be used only by the CES attorneys working on this matter," and that "[a]t no time shall CES or the other signatories to the attachment permit further dissemination of these documents, including to any other subject of the investigation. *Id.* The letter only came after the Respondents specifically requested that principals of CES and co-counsel be permitted to see the materials FERC had initially forbidden them to see.[77] *Id.*

On November 15, 2010, Enforcement staff served a second set of data requests on CES via counsel for CES. The second set of data requests consisted of five request items and asked for a response by November 29, 2010. PSAMF ¶ 9; DRPSAMF ¶ 9. CES, through counsel, provided a four-page written response to the second set of data request on November 29, 2010. *Id.* In addition, certain attachments to the response

---

[77] The Respondents interpose a qualified response to the Petitioner's statement of additional material fact ¶ 8, which the Court included to supply additional context to the April 29, 2010 letter.

were sent on disk and received by Enforcement staff on December 1, 2010. *Id.*

The Commission issued an Order to Show Cause and Notice of Proposed Penalty to Rumford on July 17, 2012 and commenced a proceeding against Rumford.[78] PSAMF ¶ 10; DRPSAMF ¶ 10. In accordance with the Commission's Separation of Function Rule, 18 C.F.R. § 385.2202, and the Commission's ex parte rule, 18 C.F.R. § 385.2201, following issuance of the Order to Show Cause and Notice of Proposed Penalty to Rumford, the Commission issued a notice in the docketed proceeding on July 26, 2012 identifying decisional and non-decisional staff. PSAMF ¶ 11; DRPSAMF ¶ 11.

On September 6, 2012, Enforcement staff who participated in the investigation of Rumford and received a settlement offer from Rumford obtained a written waiver from Rumford of the provisions of 18 C.F.R. § 385.2202 and 18 C.F.R. § 385.2201 to consult with the Commission and Commission decisional staff for purposes of exploring potential settlement with Rumford.[79] PSAMF ¶ 12; DRPSAMF ¶ 12. Enforcement staff neither asked for or received waivers from Respondents to engage in what Respondents view as ex parte discussions with the FERC Commissioners regarding Rumford's DALRP participation, an issue that the Respondents view as being at the heart of the pending claims against them. *Id.*

---

[78] In response to the Petitioner's statement of additional material fact ¶ 10, the Respondents interpose a qualification, noting that "[t]he referenced exhibit does not refer to a 'docketed show cause proceeding' or even a 'show cause proceeding." DRPSAMF ¶ 10. The Court agrees that the phrase is not included in the record citation and omits it from the Petitioner's statement.

[79] The Respondents interpose a qualified response to the Petitioner's statement of additional material fact ¶ 12, noting that "[w]hether or not FERC Enforcement received a waiver from Rumford, it neither asked for nor received any such waiver from CES or Silkman to continue to engage in ex parte discussions with the FERC Commissioner's regarding Rumford's DALRP participation." DRPSAMF ¶ 12. The Court amended Petitioner's additional paragraph 12 to reflect this fact.

Although Respondents believe otherwise, consistent with the Commission's Policy Statement on Disclosure of Exculpatory Materials, 129 FERC ¶ 61,248 (2009), Enforcement staff provides subjects of Enforcement investigations under Part 1b of the Commission's regulations with all potentially exculpatory materials obtained during Enforcement's investigation.[80]  PSAMF ¶ 13; DRPSAMF ¶ 13.

Enforcement staff submitted to the Commission in paper form Enforcement's Staff Report and Recommendations together with Respondents' joint seventy-nine-page written response provided by Respondents to Enforcement staff pursuant to 18 C.F.R. § 1b.19.[81]  PSAMF ¶ 14; DRPSAMF ¶ 14.

## B. Statement of Facts: FERC's Partial Motion for Summary Judgment

### 1. Organization, Powers, and Rulemaking Authority

The Commission is an administrative agency of the United States, organized and existing as an independent, bipartisan Commission.  PSMF ¶ 1; DRPSMF ¶ 1. A majority of the Commission determines its actions, with three members of the Commission constituting a quorum for the transaction of business.[82]  PSMF ¶ 2;

---

[80]    The Respondents deny the Petitioner's statement of additional material fact paragraph 13, citing other statements of material fact.  The Court noted the Respondents' skepticism but is required to view contested facts in the light most favorable to the nonmovant.

[81]    The Respondents request to strike the Petitioner's additional statement of material fact because its only cited record support is Attorney Anas' declaration.  The Court resolved this dispute and will not strike the affidavit or the Petitioner's statement of additional fact ¶ 14.  *See supra* note 9. With regard to the Respondents' qualification, the Court considers the dispute an issue of fact, and must view disputed facts in the light most favorable to the non-moving party.  The Court, therefore, declines to include the Respondents' qualification.

[82]    The Respondents interpose a qualification to the Petitioner's statement, noting that the "characterization that the Commission 'acts through orders' is not supported by the record citations." DRPSMF ¶ 2.  The cited record states that "Actions of the Commission shall be determined by a majority vote of the members present."  *Anas Decl*., Attach. 45, *Exhibit 42 U.S.C. § 7171 (2016)* (ECF No. 137-45).  The Court changed the Petitioner's statement to track the cited statutory language.

DRPSMF ¶ 2.  The Federal Power Act (FPA) §§ 307 *et seq.* authorizes the Commission to conduct investigations.  PSMF ¶ 3; DRPSMF ¶ 3.  Section 307(a) provides that "[t]he Commission may permit any person, electric utility, transmitting utility, or other entity to file with it a statement in writing under oath or otherwise, as it shall determine, as to any or all facts and circumstances concerning a matter which may be the subject of investigation."  PSMF ¶ 4; DRPSMF ¶ 4.  FPA § 307(b) provides that:

> For the purpose of any investigation or any other proceeding under this Act, any member of the Commission, or any officer designated by it, is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records which the Commission finds relevant or material to the inquiry.

PSMF ¶ 5; DRPSMF ¶ 5.  Section 308 authorizes the Commission to conduct hearings but does not require the Commission to do so, and no hearing was conducted in this case.[83]  PSMF ¶ 6; DRPSMF ¶ 6.

> Congress described the Commission's authority:

> In carrying out any of its functions, the Commission shall have the powers authorized by the law under which such function is exercised to hold hearings, sign and issue subpoenas, and receive evidence at any place in the United States it may designate  The Commission may, by one or more of its members or by such agents as it may designate, conduct any hearing or other injury necessary or appropriate to its functions, except that nothing in this subsection shall be deemed to supersede the provisions of section 556 of title 5 relating to hearing examiners.

42 U.S.C. §7171(g) (2012).  PSMF ¶ 7; DRPSMF ¶ 7.

---

[83]    Petitioner's paragraph 6 merely states: "FPA § 308 authorizes the Commission to conduct hearings."  PSMF ¶ 6.  The Respondents interpose a qualified response to the Petitioner's paragraph 6, noting that "[w]hile FPA § 308 authorizes the Commission to conduct hearings, it does not require the Commission to conduct hearings, and no hearing was conducted in this case."  DRPSMF ¶ 6.  The Court included the qualification to provide context for this case.

FPA § 308(b) requires that:

All hearings, investigations, and proceedings under this Act shall be governed by rules of practice and procedure to be adopted by the Commission, and in the conduct thereof the technical rules of evidence need not be applied. No informality in any hearing, investigation, or proceeding or in any manner of taking testimony shall invalidate any order, decision, rule, or regulation issued under the authority of this chapter.[84]

16 U.S.C. § 825g(b) (2012). PSMF ¶ 8; DRPSMF ¶ 8.

FPA § 309 further grants the Commission:

The power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this Act; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information they contain, and the time within which they shall be filed. Unless a different date is specified therein, rules and regulations of the Commission shall be effective thirty days after publication in the manner which the Commission shall prescribe. Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe.[85]

16 U.S.C. § 825h (2012). PSMF ¶ 9; DRPSMF ¶ 9.

Congress provided the Commission with the authority to establish rules and procedures:

The Commission is authorized to establish such procedural and administrative rules as are necessary to the exercise of its functions. Until changed by the Commission, any procedural and administrative rules applicable to particular functions over which the Commission has

---

[84] The Respondents interpose a qualified response to the Petitioner's paragraph 8, noting that the record citation uses the term "chapter" instead of "Act." See *Anas Aff.*, Attach. 47, *Exhibit 17 U.S.C. § 825g* (ECF No. 137-47). The Court amended the Petitioner's paragraph 8 accordingly.

[85] The Respondents interpose the same qualified response to the Petitioner's paragraph 9 as they did to paragraph 8, noting that the record citation uses the term "chapter" instead of "Act." See *Anas Aff.*, Attach. 47, *Exhibit 17 U.S.C. § 825g* (ECF No. 137-47). The Court amended the Petitioner's paragraph 9 accordingly.

jurisdiction shall continue in effect with respect to such particular functions.

42 U.S.C. § 7171. PSMF ¶ 10; DRPSMF ¶ 10. The Commission codified Rules Relating to Investigations at 18 C.F.R. Part 1b and Rules of Practice and Procedure at 18 C.F.R. Part 385. PSMF ¶ 11; DRPSMF ¶ 11.

### 2. Civil Penalty Authority

FPA § 316A authorizes the Commission to levy civil penalties for violations of Part II of the Act—which includes the prohibition of energy market manipulation, § 222, 16 U.S.C. § 824v(a)—or "of any rule or order thereunder." 16 U.S.C. § 825o-1 (2012).[86] PSMF ¶ 12; DRPSMF ¶ 12. The FPA requires that the Commission assess such penalties, after "notice and opportunity for public hearing, in accordance with the same provisions as are applicable under section 823b(d) in the case of civil penalties assessed under section 823b."[87] PSMF ¶ 13; DRPSMF ¶ 13. FPA § 31(d) sets out two applicable provisions, or paths that the proceeding can take at the election of the respondent: (1) the "default" procedure enunciated in § 31(d)(2), under which the Commission shall provide a hearing before an ALJ, or (2) an alternative process under § 31(d)(3), whereby the Commission shall assess a penalty, and then institute an action in the appropriate U.S. district court for an order of affirmance, during which resulting proceeding the district court is able to review de novo the law

---

[86] The Respondents again interpose a qualified response noting that the record citation uses the term "chapter" instead of "Act". Again, the Court made the change.

[87] The Respondents interpose a qualification to the Petitioner's paragraph 13, noting that the record citation references section 823b(d), not section 31. The Court agrees that the Respondents' qualification is correct and amended the statement accordingly.

and facts involved.[88]  16 U.S.C. § 823b(d)(1) (2012).  PSMF ¶ 14; DRPSMF ¶ 14.

Regardless of whether a respondent elects the procedures under § 31(d)(2) or under § 31(d)(3), the Commission is required by statute to assess a penalty "by order." 16 U.S.C. §§ 823b(d)(2)(A) & 823b(d)(3)(A).  PSMF ¶ 15; DRPSMF ¶ 15.

When assessing and imposing penalties, the Commission must consider and apply statutorily-prescribed criteria, namely, "the seriousness of the violation and the efforts of such person to remedy the violation in a timely manner."[89]  PSMF ¶ 16 (quoting 16 U.S.C. § 825o-1(b)(2012)); DRPSMF ¶ 16.  If a civil penalty has not been paid within 60 calendar days after an order assessing the civil penalty has been made under § 31(d)(3)(A), "the Commission shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty.  The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in [p]art such assessment."[90]  PSMF ¶ 17 (quoting 16 U.S.C. § 823b(d)(3)(B)); DRPSMF ¶ 17.  Pursuant to the FPA, this Court has authority to "review de novo the law and the facts involved and . . .

---

[88]    The Respondents interpose a qualified response to the Petitioner's paragraph 14, replacing the phrase "an alternative process under FPA section 31(d)(3) that affirmatively foregoes the ALJ hearing" with a more accurate description of the record citation.  DRPSMF ¶ 14.  The Court finds the language in Petitioner's paragraph 14 to be unsupported by its record citation and amended the statement to include the Respondents' qualification.

[89]    The Respondents interpose a qualification to the Petitioner's paragraph 16, stating that "[a]lthough the cited statute requires FERC to consider such statutorily-prescribed criteria, Defendants dispute that FERC actually did so."  DRPSAMF ¶ 16.  The Respondents offer no record support for this contention, and the Court declines to include the qualification.

[90]    The Respondents offer a qualification to the Petitioner's paragraph 17, providing the remainder of the relevant provision.  DRPSAMF ¶ 17.  The Court declines to include as the Petitioner's paragraph 18 includes the remainder of the provision.

jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in [p]art, such assessment." *Id.* PSMF ¶ 18 (quoting 16 U.S.C. § 823b(d)(3)(B)(2012)); DRPSMF ¶ 18.

### 3. Commission Regulations Regarding Investigations

The Commission's rules relating to investigations are set forth in Part 1b of the Commission's regulations. PSMF ¶ 19; DRPSMF ¶ 19. Enforcement is authorized to initiate and conduct investigations relating to any matter subject to the Commission's jurisdiction. PSMF ¶ 20 (citing 18 C.F.R. § 1b.3 (2008) & 18 C.F.R. § 375.311 (2008)); DRPSMF ¶ 20. Section 1b.7 of the Commission's regulations provides:

> Where it appears that there has been or may be a violation of any of the provisions of the acts administered by the Commission or the rules, opinions or orders thereunder, the Commission may institute administrative proceedings, initiate injunctive proceedings in the courts, refer matters, where appropriate, to the other governmental authorities, or take other appropriate action.

PSMF ¶ 21 (quoting 18 C.F.R. § 1b.7 (2012)); DRPSMF ¶ 21. All information and documents received during an investigation, as well as the existence of an investigation, are treated by regulation as non-public and confidential, "except to the extent that (a) the Commission directs or authorizes the public disclosure of the investigation; (b) the information or documents are made a matter of public record during the course of an adjudicatory proceeding; or (c) disclosure is required by the Freedom of Information Act, 5 U.S.C. 552." PSMF ¶ 22 (quoting 18 C.F.R. § 1b.9 (2008)); DRPSMF ¶ 22.

The Commission's regulations provide: "There are no parties, as that term is

used in adjudicative proceedings, in an investigation under this part and no person may intervene or participate as a matter of right in any investigation under this part." PSMF ¶ 23 (quoting 18 C.F.R. § 1b.11 (2008)); DRPSMF ¶ 23. Section 1b.16 of the Commission's regulations addresses the rights of witnesses during an investigation. *Id.* This section provides that a witness or subject of an investigation may be accompanied, represented, and advised by counsel. *Id.* However, 18 C.F.R. §1b.16(c)(4) states:

> The Investigating Officer shall take all necessary action to regulate the course of the proceeding to avoid delay and prevent or restrain obstructionist or contumacious conduct or contemptuous language. Such officer may report to the Commission any instances where an attorney or representative has refused to comply with his directions, or has engaged in obstructionist or contumacious conduct or has used contemptuous language in the course of the proceeding. The Commission may thereupon take such further action as the circumstances may warrant, including suspension or disbarment of counsel from further appearance or practice before it, in accordance with § 385.2101 of this chapter, or exclusion from further participation in the particular investigation.

18 C.F.R. § 1b.16 also requires the sequestration of witnesses during an investigation. It further states that "[n]o witness or the counsel accompanying any such witness shall be permitted to be present during the examination of any other witness called in such proceeding."[91] PSMF ¶ 24; DRPSMF ¶ 24.

The Commission's regulations provide that "[a]ny person may, at any time during the course of an investigation, submit documents, statements of facts or

---

[91] The Respondents interpose a qualified response to the Petitioner's paragraph 24, noting limitations on the right of a witness to have counsel present set forth in the regulation cited by the Petitioners. DRPSMF ¶ 24. The Court included the additional language of the regulation to provide additional detail on FERC's procedures regarding the right to counsel.

memoranda of law for the purpose of explaining said person's position or furnishing evidence which said person considers relevant regarding the matters under investigation." PSMF ¶ 25; DRPSMF ¶ 25. The Commission noted in a May 2008 Policy Statement on Enforcement that the Commission's regulations allow the subject of an investigation to submit, in writing, any information or evidence directly to the Commissioners themselves at any time during the investigation. PSMF ¶ 26; DRPSMF ¶ 26. Neither the policy statement nor the rule regarding investigations places a page limit on such submissions nor requires any rules of evidence to apply. *Id.*

If Enforcement preliminarily concludes that a subject committed a violation, Enforcement's practice pursuant to official Commission policy is to inform the subject of its preliminary conclusions, including both the relevant facts and legal theories, explain the evidence on which it relied, and invite the subject to respond.[92] PSMF ¶ 27; DRPSMF ¶ 27. If Enforcement determines to recommend to the Commission that an entity be made the subject of a proceedings governed by part 385 of this chapter, or that an entity be made a defendant in a civil action to be brought by the Commission, Enforcement shall, unless extraordinary circumstances make prompt Commission review necessary in order to prevent detriment to the public interest or irreparable harm, notify the entity that Enforcement intends to make such a

---

[92] The Respondents interpose a qualification to the Petitioner's paragraph 27, highlighting the following additional language of the Revised Policy Statement on Enforcement, 123 FERC ¶ 61,156 at P 32 (2008): "If staff reaches the conclusion that a violation occurred that warrants sanctions, staff shares with the subject of the investigation its views, including both the relevant facts and legal theories." DRPSMF ¶ 27. The Court amended the Petitioner's paragraph 27 to include the language of the Policy Statement not already paraphrased in the Petitioner's statement.

recommendation.[93]    PSMF ¶ 28; DRPSMF ¶ 28.   As provided by § 1b.19, an enforcement subject may submit its own statement to Enforcement, in the form of a non-public response to the 1b.19 Letter, which "may consist of a statement of fact, argument, and/or memorandum of law, with such supporting documentation as the entity chooses."  PSAMF ¶ 29 (quoting 18 C.F.R. § 1b.19 (2011)); DRPSAMF ¶ 29. Enforcement is required to submit the subject's statement, if timely made, to the Commission together with Enforcement's recommendation.  *Id.*  Such statements from Enforcement subjects have no page limits and are subject to no rules of evidence.[94]  *Id.*

### 4.    Commission Regulations Regarding Proceedings

Sections 201 through 218 of Part 385 apply, inter alia, to any "pleading" or "order to show cause."  18 C.F.R. § 385.201.  PSMF ¶ 30; DRPSMF ¶ 30.  Under the Commission's regulations, issuance of an Order to Show Cause commences a contested on-the-record proceeding, known as a "show cause proceeding," which is

---

[93]    The Petitioner's paragraph 28 states:  "If Enforcement and the subject are unable to reach a settlement, Enforcement will provide the subject, pursuant to 18 C.F.R. § 1b.19, with a notice ("1b.19 Letter") of its intent to recommend to the Commission that the Commission initiate contested on-the-record show cause proceedings pursuant to the Commission's rules for hearings set forth in 18 C.F.R. § Part 385."  PSAMF ¶ 28 (citing 18 C.F.R. § 1b.19 (2011)).

The Respondents deny the Petitioner's paragraph 28, stating that "The referenced citation merely refers to providing notice if the 'investigating officer' intends 'to recommend to the Commission that an entity be made the subject of a proceeding governed by part 385 of this chapter,' which, in turn, is a regulation governing *ex parte* communications when an order to show cause has issued.  The referenced citation does not refer to 'contested on-the-record show cause proceedings.'"

Rather than become enmeshed in the parties' semantic arguments, the Court quoted the exact language of 18 C.F.R. § 1b.19 in place of the parties' disputed paraphrasing.

[94]    The Respondents interpose a qualified response to the Petitioner's paragraph 29, arguing that "[a]lthough Enforcement is required to submit the subject's statement to the Commission, together with Enforcement's recommendation, there is no reference to such submission on FERC's privilege log provided in this litigation."  The Respondents' qualification is not directly responsive to the Petitioner's paragraph 28 and the Court declines to include the qualification.

subject to the Commission's Rules of Practice and Procedure.[95]  PSMF ¶ 31; DRPSMF

¶ 31.  The Commission's regulations provide that the statement of matters set forth

in an order to show cause "is tentative and sets forth issues to be considered by the

Commission."  PSMF ¶ 32 (citing 18 C.F.R. § 385.209(b)(2012)); DRPSMF ¶ 32.

Upon the initiation of a show cause proceeding, the Commission's Separation

of Functions Rule requires that "no officer, employee, or agent assigned to work upon

---

[95]     The Petitioner's paragraph 31 reads: "Under the Commission's regulations, issuance of an Order to Show Cause and Notice of Proposed Penalty ('Proposed Penalty Order') commences a 'contested on-the-record proceeding,' known as a 'show cause proceeding,' which is subject to the Commission's Rules of Practice and Procedure (18 C.F.R. Part 385)."  PSAMF ¶ 31.

In support of this paragraph, the Petitioner cites Attorney Anas' February 28, 2018 sworn declaration at paragraph 12 and the attached exhibit CCC, which in turn attached 18 C.F.R. §§ 385.201-385.218 (2012).  *Id.*  The Petitioner says that § 385.209(a)(2) authorizes the Commission to initiate "a proceeding . . . by issuing an order to show cause."  *Id.*  Citing exhibit DDD, which in turn attached 18 C.F.R. §§ 385.2201, the Petitioner says the regulations define "any proceeding initiated by the Commission on its own motion . . . or any proceeding arising from an investigation under part 1b of this chapter beginning from the time the Commission initiates a proceeding governed by part 385 of this chapter" as a "contested on-the-record proceeding."  *Id.*  DRPSAMF ¶ 29.  Section 385.2201(c)(1)(i) defines "contested on-the-record" proceeding to mean (with an exception), "any proceeding before the Commission to which there is a right to intervene and in which an intervenor disputes any material issue, any proceeding initiated pursuant to rule 206 by the filing of a complaint with the Commission, any proceeding initiated by the Commission on its own motion or in response to a filing, or any proceeding arising from an investigation under part 1b of this chapter beginning from the time the Commission initiates a proceeding governed by part 385 of this chapter."  *Anas Decl.* Attach. 56 (18 C.F.R. § 385.2201).

The Respondents interpose a qualification to the Petitioner's paragraph 31, stating that "[t]he referenced regulations do not use the phrase 'show cause proceeding' or 'proposed penalty order.'  The Respondents go on to say that although Part 385 uses the phrase 'contested on-the-record proceeding,' that is only contained in the section pertaining to 'Rules governing off-the-record communications. . .."  DRPSMF ¶ 31.

The Court understands that the Respondents' qualification is a means to drive home its point about the alleged inadequacy of the FERC process, but in the context of statements of material fact, it is hyper-technical at best.  Section 385.209(a)(2) states that "[t]he Commission may initiate a proceeding against a person by issuing an order to show cause."  It would hardly come as a surprise that such a proceeding would be known as a "show cause proceeding."  Section 385.2201(c)(1)(i)'s definition of a "contested 'on-the record'" proceeding expressly includes "any proceeding arising from an investigation under part 1b of this chapter beginning from the time the Commission initiates a proceeding governed by part 385 of this chapter."  Nor would it come as a surprise that the Commission's order to show cause letter that it issued under part 1b would be known as a proposed penalty order.

The Court overrules the Respondents' objections to Petitioner's paragraph 31.

the proceeding or to assist in the trial thereof, in that or any factually related proceeding, shall participate or advise as to the findings, conclusion or decision, except as a witness or counsel in public proceedings."[96] PSMF ¶ 33 (18 C.F.R. § 3985.2202 (2012)); DRPSMF ¶ 33. Upon the initiation of a show cause proceeding, the Commission's ex parte rule prohibits any off-the-record communications between (i) Commissioners and the staff that may advise them (decisional staff) and (ii) Enforcement prosecutorial staff involved in the investigation or show cause proceeding. PSMF ¶ 34 (citing 18 C.F.R. § 385.2201(c)(1)(i) (2012)); DRPSMF ¶ 34. However, the rule does not on its face preclude Enforcement from communicating with the Commission regarding related matters, which, in this case, included the settlement negotiations with Rumford concerning its participation in the DALRP, which is the subject of this action.[97]  *Id.*  Nor does the rule prohibit ex parte

---

[96]    The Respondents interpose a qualified response to the Petitioner's paragraph 33, noting that the language "order-to-show-cause proceeding" is not in the regulation cited by the Petitioner. DRPSMF ¶ 33. The Petitioner states that the cited regulation applies to "any proceeding arising from an investigation under part 1b of this chapter beginning from the time the Commission initiates a proceeding governed by part 385 of this chapter." *Id.* The Petitioner has also noted that a "show cause proceeding" is subject to the Commission's Rules of Practice and Procedure, 18 C.F.R. Part 385. DRPSMF ¶ 31. The Court overrules the Respondents' qualified response. *See supra* note 95.

[97]    The Respondents interpose the same qualification to the Petitioner's paragraph 34 as they did to the Petitioner's paragraph 33. The Court declines to include the qualification. *See supra* note 95.

The Respondents further argue that the referenced regulation does not "preclude Enforcement from continuing to engage in *ex parte* communications with the Commission concerning any related matters, which, in this case, included the settlement negotiations with the company that Defendants advised, Rumford, concerning its participation in the program that is the very subject of this litigation." DRPSMF ¶ 34. The Respondents' position skirts making a legal, not factual argument about the correct meaning of the regulation. Rather than adopt Respondents' language, the Court has stated the undeniable, namely that the regulation does not on its face restrict Enforcement from communicating the status of such settlement negotiations with the Commission. The regulation does not address whether Commission practice forbids or allows such communication.

The Respondents also contend that the referenced regulation "does not seem to prohibit ex parte communications, as long as they are put 'on the record,' and it does not prohibit FERC from making the record 'non-public.' *Id.* (citing *Fed. Energy Regulatory Comm'n v. Barclays Bank PLC,* 247 F. Supp. 3d 1118, 1137 n.38 (E.D. Cal. 2017)). Despite some misgivings because the issue seems to be more one of law than fact, the Court included this further qualification because the authority for the

communications, so long as they are put "on the record," or prohibit FERC from making the record "non-public." *Id.*

A person who is ordered to show cause is required under the Commission's regulations to submit a formal answer.[98] PSMF ¶ 35; DRPSMF ¶ 35. The Commission's regulations require that an answer "[a]dmit or deny, specifically and in detail, each material allegation" and "[s]et forth every defense relied on" "to the extent practicable."[99] PSMF ¶ 36; DRPSMF ¶ 36. The failure to submit an answer can give rise to a default judgment or summary disposition. PSMF ¶ 37; DRPSMF ¶ 37. An answer must also include "documents that support the facts in the answer in possession of, or otherwise attainable by, the respondent, including, but not limited to, contracts and affidavits." PSMF ¶ 38; DRPSMF ¶ 38. Under the Commission's Rules of Practice and Procedure, a party to a contested on-the-record proceeding may file a motion for relief to the Commission at any time during the proceeding.[100] PSMF ¶ 39; DRPSMF ¶ 39.

---

district court's conclusion is a regulation and the parties have been presenting the meaning of regulations through their statements of fact. *See Barclays Bank*, 247 F. Supp. 3d at 1137 n.38 (citing 18 C.F.R. § 375.205(a)(10)).

[98] The Respondents interpose a qualified response to the Petitioner's paragraph 35, stating that "the referenced regulation does not refer to a 'formal' answer." DRPSMF ¶ 35. Again, the Respondents' quibble is hyper-technical. Section 385.209(c) says that "[a] person who is ordered to show cause must answer in accordance with Rule 213." A fair reading of Rule 213 is that an answer is a responsive pleading. *See* 18 C.F.R. § 385.213(a)(1-4). Like Federal Rule of Civil Procedure 12(a)(1)(A), the apparent objective of § 385.209(c) is to require the responding party to file a formal response and the failure to do so, as Respondents later acknowledge, could subject the responding party to default. *See* PSMF ¶ 37; DRPSMF ¶ 37. The Court rejects the Respondents' qualified response.

[99] The Respondents interpose a qualification to the Petitioner's paragraph 36, noting that the regulation's requirements of the Respondents are "to the extent practicable." DRPSMF ¶ 36. The Court included the qualification.

[100] The Respondents interpose a qualified response to the Petitioner's paragraph 39, noting that the referenced regulation "does not refer to a 'contested-on-the-record proceeding.'" DRPSMF ¶ 39 (citing § 385.201). Section 385.201, however, refers to "any . . . order to show cause." However, as noted earlier, the order to show cause may lead to a "contested-on-the-record" proceeding. *See supra* note 95. The Court rejects the Respondents' qualified response.

## 5.   Enforcement's Investigation of Respondents

Following a referral from ISO-NE's market monitoring unit, in March 2008, Enforcement commenced a non-public investigation pursuant to Part 1b of the Commission's regulations to determine whether certain market participants had engaged in fraudulent conduct in their participation in ISO-NE's DALRP.[101]  PSMF ¶ 40; DRPSMF ¶ 40.  Enforcement notified CES by letter dated August 1, 2009 that it commenced a non-public investigation of CES pursuant to Part 1b of the Commission's regulations concerning CES's conduct related to the DALRP.  PSMF ¶ 41; DRPSMF ¶ 41.  On February 26 and 27, 2009, Enforcement took investigative testimony of Dr. Richard Silkman as a witness in the investigation.  PSMF ¶ 42; DRPSMF ¶ 42.

In November 2009, Enforcement commenced an investigation of Dr. Silkman, individually, pursuant to Part 1b of the Commission's regulations of Dr. Silkman's conduct related to the DALRP, as memorialized in a November 4, 2009 letter sent to Dr. Silkman's counsel.[102]  PSMF ¶ 43; DRPSMF ¶ 43.  After CES and Dr. Silkman were identified as subjects of the investigation, Enforcement served data requests

---

[101]    The Respondents interpose a qualified response to the Petitioner's paragraph 40, citing the Complaint as stating that FERC began its investigation of the Respondents in February 2008. DRPSMF ¶ 40.  The Respondents also state that "the referenced referral did not refer to Defendants." *Id.*   The Petitioner's record citation supports its statement, which references "certain market participants," not the Respondents.  PRSMF ¶ 40 (citing *FERC Test.* 67:22-68:9, 77:6-9.  The Court rejects the Respondents' qualified response.

[102]    In response to the Petitioner's paragraph 43, the Respondents offer a qualification, noting that the Complaint states that FERC began its investigation of the Respondents in February 2008. DRPSMF ¶ 43.  The testimony cited by the Petitioner indicates that FERC first commenced an investigation of CES, and then later, in November of 2009, "commence[d] an investigation or include[d] Dr. Silkman in its DALRP investigations."  *FERC Test.* 158:7-13.  The Court, therefore, rejects the Respondents' qualified response.

(the equivalent of interrogatories, requests for admission, and requests for production of documents) on CES and Dr. Silkman. PSMF ¶ 44; DRPSMF ¶ 44.

On November 23, 2009, Enforcement staff sent CES a Preliminary Findings Letter explaining Enforcement's preliminary conclusion that CES had committed fraud in violation of the Commission's Anti-Manipulation Rule, 16 U.S.C. § 824v and 18 C.F.R. § 1c.2 (Anti-Manipulation Rule), as well as the factual and legal bases for this conclusion.[103] PSMF ¶ 45; DRPSMF ¶ 45. On December 1, 2009, Enforcement staff sent CES copies of the documents cited in the Preliminary Findings Letter to CES except publicly-available information and information already in the possession of CES.[104] PSMF ¶ 46; DRPSMF ¶ 46.

On January 8, 2010, CES submitted a response to the Preliminary Findings Letter to CES. PSMF ¶ 47; DPRSMF ¶ 47. CES was not required to comply with any page limit nor any rules of evidence in drafting this response. *Id.* The response was thirty pages, single-spaced. *Id.*

---

[103] The Respondents admit the conclusion of Enforcement but deny the accuracy of the conclusion. DRPSMF ¶ 45. The Court does not accept Petitioner's paragraph 45 for its truth, and it overrules the Respondents' denial.

[104] The Respondents interpose a qualified response to the Petitioner's paragraph 46:

Enforcement staff sent CES copies of the documents bates stamped as CNE0023813, ISO-NE generated load profiles and five-minute data for Rumford Paper Company; the document bates stamped as RUM0000926-946; and Rumford Data Responses 35, 36, 36(d), and 36(e). Additionally, Enforcement contacted ACE-Federal Reporters, Inc. and authorized it to release the transcript of the deposition of Bruce McLeish to CES upon its request.

PSMF ¶ 46. The exhibit cited by the Petitioners, a letter to Attorney Brann from Nicole Brisker, states "OE has provided, via electronic mail, the documents referenced in those letters . . ." and lists the documents provided. The Court omitted the word "all" from the Petitioner's statement, as that word is not used in the record citation. The Court finds, however, that it is not necessary to list the documents provided because sufficient detail is provided in the Petitioner's paragraph 46.

On April 19, 2012, Enforcement staff sent Dr. Silkman a Preliminary Findings Letter explaining Enforcement's preliminary conclusion that Dr. Silkman had committed fraud in violation of the Anti-Manipulation Rule, as well as the factual and legal bases for this conclusion.[105] PSMF ¶ 48; DRPSMF ¶ 48. At the time Enforcement staff sent Dr. Silkman the Preliminary Findings Letter, Dr. Silkman's counsel possessed all non-public materials cited in the Preliminary Findings Letter, the same materials as those cited in the Preliminary Findings Letter to CES and provided to Dr. Silkman's counsel on December 1, 2009, with the exception of the testimony transcript of witness Amy Richard; the Richard transcript was provided eleven days later along with other investigatory documentation. PSMF ¶ 49; DRPSMF ¶ 49.

On April 30, 2010, Enforcement staff provided counsel for the Respondents, Peter Brann, with the testimony transcript of Amy Richard and additional, non-public information related to Enforcement's investigation of the activities of CES and Dr. Silkman in the DALRP.[106] PSMF ¶ 50; DRPSMF ¶ 50. On May 20, 2010, Dr. Silkman submitted a response to the Preliminary Findings Letter to Silkman. PSMF ¶ 51; DRPSMF ¶ 51. Dr. Silkman was not required to comply with any page limit nor any rules of evidence in drafting this response. *Id.* The response was thirty-four

---

[105]   The Respondents admit the conclusion of Enforcement but deny the accuracy of the conclusion. DRPSMF ¶ 48. The Court does not accept paragraph 48 for its truth, and it overrules the denial.

[106]   The Respondents interpose a qualified response to the Petitioner's paragraph 50, stating that Enforcement staff provided "certain non-public materials related to" Enforcement's investigation of CES and Dr. Silkman. DRPSMF ¶ 50. The Court agrees that the Petitioner's assertion that Enforcement provided "information that Staff believed might assist his understanding of the matter, as well as documents that may be relevant to CES and Silkman's defenses" is not supported by the record. PRSMF ¶ 50. The Court adjusted the statement to reflect the language in the cited record.

pages, single-spaced. *Id.*

After Enforcement obtained authority to initiate settlement discussions, the Commission issued Notices of Alleged Violation to the Respondents on January 25, 2011. PSMF ¶ 52; DRPSMF ¶ 52. The Notices of Alleged Violation were issued pursuant to Commission practice memorialized in an Order Authorizing Secretary to Issue Staff's Preliminary Notice of Violation.[107] *Id.*

As provided by the Commission's procedures, Enforcement Staff engaged in settlement discussions with CES and Dr. Silkman in 2011. PSMF ¶ 53; DRPSMF ¶ 53. In February, Enforcement made an oral settlement proposal to CES and Dr. Silkman at a meeting in Washington D.C. *Id.* CES and Dr. Silkman requested additional, previously undisclosed information to evaluate the proposal, but the request was denied, and they provided a response in April. *Id.* In May, FERC rejected the Respondents' responsive proposal, and asked the Respondents to submit a revised proposal. *Id.* The Defendants responded but declined to submit a revised proposal.[108] *Id.*

On May 13, 2011, Enforcement staff sent 1b.19 Letters to CES and Dr.

---

[107] The Respondents put forth a qualification to the Petitioner's paragraph 52, arguing that "although the Notices were issued pursuant to the cited Order, the Order announced a change in policy, it is not accurate to refer to it as memorializing "Commission practice." DRPSAMF ¶ 52. The Court finds that the Order Authorizing Secretary to Issue Staff's Preliminary Notice of Violations did memorialize Commission practice in announcing a change of policy, and the Court declines to include the qualification. *Anas Decl.,* Attach 7., *Ex. Order Authorizing Secretary to Issue Staff's Preliminary Not. of Violations* (ECF No. 137-7).

[108] Petitioner's paragraph 53 refers generally to Enforcement engaging in settlement discussions with CES and Dr. Silkman until May 2011. PSMF ¶ 54.

The Respondents interpose a qualified response to the Petitioner's paragraph 53, detailing the settlement negotiations. DRPSMF ¶ 53. The Court amended the Petitioner's statement to include these details.

Silkman.  PSMF ¶ 54; DRPSMF ¶ 54.    Enforcement explained in the 1b.19 Letters

that its final conclusions after considering the Respondents' responses to the

Preliminary Findings Letters were not materially different than its preliminary

conclusions, that it intended to recommend that the Commission issue an Order to

Show Cause why Dr. Silkman "should not be made the subject of a public proceeding

for enforcement of 18 C.F.R. § 1c.2 (2011) and pay a civil penalty," and that it invited

each Respondent to "submit a non-public response to this notice" by a date specified

therein.[109]  *Id.*  On June 27, 2011, CES and Dr. Silkman submitted a joint seventy-

nine-page response to Enforcement's 1b.19 Letters.  CES and Dr. Silkman were not

required to comply with any page limit nor any rules of evidence in drafting this

response.  PSMF ¶ 55; DRPSMF ¶ 55.

Having concluded that CES and Dr. Silkman engaged in fraudulent behavior

in violation of the Anti-Manipulation Rule, Enforcement prepared reports and

recommendations (OE Staff Reports) to the Commission recommending that the

Commission initiate proceedings under 18 C.F.R. § 385.209 by issuing Proposed

Penalty Orders to each Respondent.  As required by 18 C.F.R § 1b.19, Enforcement

submitted the OE Staff Reports to the Commission along with the Respondents' joint

seventy-nine-page response to the 1b.19 Letters.[110]    PSMF ¶ 56; DRPSMF ¶ 56.

---

[109]     The Respondents interpose a qualification to the Petitioner's paragraph 54, noting that the
Letters stated that Enforcement would "recommend that the Commission 'issue an Order to Show
Cause why [CES/Silkman] should not be made the subject of a public proceeding for enforcement of 18
C.F.R. §1c.2(2011) and pay a civil penalty."  DRPSMF ¶ 54.  The Court agrees that the 1b.19 Letters
reflect the language the Respondents quoted and amended the Petitioner's statement accordingly.
[110]     In response to the Petitioner's paragraph 56, the Respondents interpose a qualification, noting
that the phrase "adversarial on-the-record proceedings" does not appear in the cited material.
DRPSMF ¶ 56.  The Court disagrees.  In support of paragraph 56, Petitioner cited 18 C.F.R. § 385.209.
Section 385.209 authorizes the Commission to "initiate a proceeding against a person by issuing an

### 6. Show Cause Proceedings Before the Commission

On July 17, 2012, the Commission initiated adversarial on-the-record proceedings under 18 C.F.R § 385.209 by issuing Proposed Penalty Orders under Docket Nos. IN12-12-000 (CES) and IN12-13-000 (Dr. Silkman).[111] PSMF ¶ 57; DRPSMF ¶ 57. On July 17, 2012, CES and Dr. Silkman were provided copies of information specifically referenced in the OE Staff Reports attached to the Proposed Penalty Orders. PSMF ¶ 58; DRPSMF ¶ 58. CES and Dr. Silkman were not provided with documents already in their possession or publicly available.[112] *Id.*

In accordance with the Commission's Separation of Function Rule, 18 C.F.R. § 385.2202, and the Commission's ex parte rule, 18 C.F.R. § 385.2201, following issuance of the Proposed Penalty Orders, the Commission issued a notice in each

---

order to show cause." In the Court's view, a proceeding against a person is an adversarial proceeding. Also, the Court previously discussed its conclusion that the Commission proceeding on an order to show cause is a contested on-the-record proceeding. *See supra* fn 95 (citing 385.2201(c)(1)(i)'s definition of a "contested on-the record proceeding"). If there is a difference between a contested on-the-record proceeding and an adversarial on-the-record proceeding, it is too subtle to be meaningful in the context of this dispositive motion. The Court overrules the Respondents' qualified response.

The Respondents also note that "there is no indication on the privilege log that Enforcement submitted the Defendants' 79-page response to the 1b.19 Letters to FERC. *Id.* The record material cited by the Petitioner, namely the sworn declaration of Attorney Anas, provides a sufficient basis for the Petitioner's statement. The Court rejects the second part of the Respondents' qualification.

[111] The Respondents interpose a qualification to the Petitioner's paragraph 57, stating that "[n]either the Commission's Rules of Practice and Procedure nor the referenced orders refer to "proposed penalty orders." DRPSMF ¶ 57. The orders are titled "Orders to Show Cause and Notice of Proposed Penalty Orders." PSMF ¶ 57 (citing *Anas Aff.*, Attach. 24, *Proposed Penalty Order issued to CES* (ECF No. 137-24) (*CES Proposed Penalty Order*); *id.,* Attach. 25, *Proposed Penalty Order Issued to Silkman*, ECF No. 137-45) (*Silkman Proposed Penalty Order*). The Court declines to include the Respondents' qualification. In addition, the Petitioner is using the abbreviation the Respondents themselves use in DSMF ¶ 5. The Court will not address this qualification again as it is repeated in several of the Respondents' responses.

[112] The Respondents interpose a qualified response to the Petitioner's paragraph 58, noting that the cited letters state that "Enforcement provided Respondents with what it claimed was 'information specifically referenced' in the OE Staff Reports." DRPSMF ¶ 58 (citing *Anas Aff., Attach. 20, Ex. Letter from Gabriel Sterling to Mr. Brann*, July 17, 2012 (ECF No. 137-20); *id.,* Attach. 21, *Ex. Letter from Gabriel Sterling to Mr. Brann, July 17, 2012* (ECF No. 137-21). The Court agrees that the Petitioner's statement "all documents cited in the OE Staff Reports" is not supported by the record, and the Court amended the statement to include the language in the letters referenced.

proceeding on July 26, 2012 identifying decisional and non-decisional staff.[113] [114]
PSMF ¶ 59; DRPSMF ¶ 59. The Proposed Penalty Orders provided a summary of
Enforcement's allegations against CES and Dr. Silkman and attached the OE Staff
Reports. PSMF ¶ 61; DRPSMF ¶ 61. The OE Staff Reports attached to the Proposed
Penalty Orders alleged that the fraudulent conduct by CES and Dr. Silkman occurred
from July 2007 through early February 2008.[115] PSMF ¶ 62; DRPSMF ¶ 62.

Pursuant to the Commission's Rules of Practice and Procedure, the Proposed
Penalty Orders directed CES/Dr. Silkman each to file an answer with the
Commission showing cause (i) why it/he should not be found to have violated the Anti-
Manipulation Rule and (ii) why it/he should not be assessed the proposed penalties.
PSMF ¶ 63; DRPSMF ¶ 63. In accordance with the Commission's Rules of Practice
and Procedure, the Proposed Penalty Orders directed that the answers provide "a
clear and concise statement regarding any disputed factual issues and any law upon
which [it/he] relies. PSMF ¶ 64; DRPSMF ¶ 64. The Commission further ordered
that, "[i]n any answer, Respondent should address any matter, legal, factual or

---

[113]   The Respondents offer a qualified response to the Petitioner's paragraph 59, stating that the
cited materials do not refer to "proposed penalty orders." DRPSMF ¶ 59 (citing *Anas Aff.*, Attach. 26,
*Ex. Notice of Designation of Commission Staff as Non-Decisional issued in Docket No. IN12-12000*,
July 26, 2012 (ECF No. 137-26); *id.,* Attach. 27, *Ex. Notice of Designation of Commission Staff as Non-
Decisional issued in Docket No. IN12-13-000 (Richard Silkman), July 26, 2012* (ECF No. 137-27). The
Court declines to include the qualification. *See supra* note 111.

[114]   The Petitioner's paragraph 60 states, "The Proposed Penalty Orders provided the statutorily-
required notice of proposed penalties under FPA §§31(d)(1), 16 U.S.C. § 823b(d)(1), and 316A(b), 16
U.S.C.§ 825o-1." PSMF ¶ 60. The Respondents interpose a qualified response, arguing that "[w]hether
the notices complied with the referenced statutes is a legal and not factual question." DRPSMF ¶ 60.
The Court agrees with the Respondents and has not included the Petitioner's paragraph 60 in this
statement of facts.

[115]   The Respondents admit "that the OE staff reports make those allegations" but "den[y] that the
allegations were correct." DRPSMF ¶ 62. The Petitioner's paragraph 61 is clearly framed as an
allegation, not a fact. The Court overrules the denial.

procedural, that [it/he] would urge in the Commission's consideration of this matter." PSMF ¶ 65; DRPSMF ¶ 65. As required by the Commission's Rules of Practice and Procedure, the Proposed Penalty Orders directed that each answer, "to the extent practicable, admit or deny, specifically and in detail, each material allegation contained in the OE Staff Report and "set forth every defense relied upon."[116] PSMF ¶ 66; DRPSMF ¶ 66.

The Proposed Penalty Orders provided notice to the Respondents, as required by FPA § 31(d)(1), 16 U.S.C. § 823b(d)(1), that they had the option under the FPA to choose between either (a) an administrative hearing before an ALJ at the Commission prior to the assessment of a penalty under § 31(d)(2), § 823b(d)(2) or (b), an assessment by the Commission under § 31(d)(3), § 823b(d)(3) "if the Commission finds a violation."[117] PSMF ¶ 67; DRPSMF ¶ 67.

On July 27, 2012, CES and Dr. Silkman filed an unopposed motion for an enlargement of time seeking an extension under September 14, 2012, to respond to the Orders to Show Cause, in which each Respondent also elected the procedures of § 31(d)(3)."[118] PSMF ¶ 68; DRPSMF ¶ 68. On August 13, 2012, the Commission

---

[116] The Respondents interpose a qualification to the Petitioner's paragraph 66, noting that the Proposed Penalty Orders include the phrase "to the extent practicable." DRPSMF ¶ 66 (citing *CES Proposed Penalty Order*; *Silkman Proposed Penalty Order*). The Court included the phrase in the Petitioner's paragraph 65 to ensure the statement is complete and not misleading.

[117] The Respondents interpose a qualified response to the Petitioner's paragraph 67, reciting a longer passage from the Proposed Penalty Order. The Court does not find that the Petitioner's statement would benefit from the inclusion of such details, as the Respondents have not stated what they find Petitioner's paragraph 67 to be misleading or lacking context. The Court declines to include the qualification.

[118] The Petitioner's paragraph 68 states that the motion for an enlargement of time was filed by CES and Dr. Silkman "to respond to the allegations in the OE Staff Reports attached to the Proposed Penalty Orders. . ." PSAMF ¶ 68. The Respondents interpose a qualification, stating that the request for enlargement of time "was sought to respond to the Orders to Show Cause." DRPSAMF ¶ 68 (citing *Anas Aff.,* Attach. 28, *Ex. CES and Silkman's Notice of Extension of Time issued in Docket No. IN12-*

issued a Notice of Extension of Time in each proceeding, allowing CES and Dr. Silkman until September 14, 2012, to respond to the allegations in the OE Staff Reports. PSMF ¶ 69; DRPSMF ¶ 69. On September 14, 2012, CES and Dr. Silkman filed a joint ninety-eight-page answer, including attachments, in opposition to Enforcement's allegations and the proposed penalties, arguing that the evidence gathered during Enforcement's investigation did not support a finding that they committed fraud. PSMF ¶ 70; DRPSMF ¶ 70. This filing was not subject to any page limit or any rules of evidence.[119] *Id.*

The CES/Dr. Silkman Answer did not assert a defense based on the statute of limitations.[120] PSMF ¶ 71; DRPSMF ¶ 71. Neither during the investigation nor during either show cause proceeding, did CES or Dr. Silkman assert a statute of limitations defense in a filing submitted to the Commission. PSMF ¶ 72; DRPSMF ¶ 72. CES and Dr. Silkman did not file any amended pleading or motion pursuant to 18 C.F.R. § 385.212 at any time during the pendency of the show cause proceedings

*12-000 (CES) and IN12-13-000 (Richard Silkman),* ECF No. 137-28. Although the Court is unclear why the difference is significant, the Court agrees that the record citation references an enlargement of time to respond to the Orders to Show Cause and amended the Petitioner's statement accordingly.

[119] The Respondents interpose a qualification to the Petitioner's paragraph 70, stating that the answer, inclusive of attachments, totaled 98 pages. DRPSMF ¶ 70. The Court included the qualification.

[120] The Respondents respond to the Petitioner's paragraph 71 with a two-part qualification, noting that the Answer is only required to assert legal defenses "to the extent practicable." DRPSMF ¶ 71 (citing 18 C.F.R. § 385.213(c)(2)(ii)). As the Court incorporated this qualification into the Petitioner's paragraph 66, it declines to repeat it here.

The Respondents also argue that "[t]he statute of limitations had not expired at the time the Answer was filed. The statute of limitations applies only to "an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, 28 U.S.C.§ 2462, none of which applies to FERC's procedures in this matter." DRPSMF ¶ 71. The Court considers this part of the qualification as not directly responsive to the Petitioner's statement and combining legal argument and fact, as evidenced by the lack of record support put forth by the Respondents. The Court declines to include the second portion of the Respondents' qualification to paragraph 71 and declines to include the same qualification in response to subsequent statements.

seeking relief based on the statute of limitations.  PSMF ¶ 73; DRPSMF ¶ 73.

On September 21, 2012, pursuant to the Commission's Rules of Practice and Procedure, Enforcement litigation staff filed an unopposed motion for extension of time requesting that it be granted an additional thirty days, until November 13, 2012, to file its reply to the CES/Dr. Silkman Answer in each proceeding.  PSMF ¶ 74; DRPSMF ¶ 74.  On September 26, 2012, the Commission issued a Notice of Extension of Time in each proceeding allowing Enforcement litigation staff until November 13, 2012 to file its reply in each proceeding.  PSMF ¶ 75; DRPSMF ¶ 75.  On November 13, 2012, Enforcement litigation staff filed a reply in each proceeding explaining why Respondents' evidence and arguments did not rebut Enforcement's evidence.  PSMF ¶ 76; DRPSMF ¶ 76.

On August 29, 2013, the Commission issued separate Orders Assessing Civil Penalties (Assessment Orders) Against CES and Silkman.  PSMF ¶ 77; DRPSMF ¶ 77.  The Assessment Orders are each more than forty pages in length, and contain sections setting forth the Commission's "Findings of Fact," "Determination of Violation," and "Civil Penalty Determination."  PSMF ¶ 78; DRPSMF ¶ 78.  The Assessment Orders set forth the Commission's evaluation of the legal and factual defenses raised by CES and Dr. Silkman in the Answer, the allegations in the OE Staff Reports, and other evidence in the record, such as Dr. Silkman's investigative testimony and Dr. Silkman's data responses.[121]  PSMF ¶ 79; DRPSMF ¶ 79.

Among other things, the Assessment Orders show that the Commission found

---

[121]    The Respondents interpose a qualified response to the Petitioner's paragraph 78, stating "[i]t is unclear what "record" is intended by this statement.  The Court rejects the qualification.

that Dr. Silkman, as a representative of CES, devised and implemented a scheme to inflate Rumford paper mill's baseline during initial baseline measurement for participation in the DALRP and thereby obtain payment for electricity load reductions that were not actually provided and were never intended to be provided. PSMF ¶ 80; DRPSMF ¶ 80.[122] The Assessment Orders reflect the Commission's further finding that CES and Dr. Silkman's scheme constituted a fraudulent scheme or artifice in violation of the Anti-Manipulation Rule. *Id.* The Assessment Orders reflect the Commission's further finding that CES and Dr. Silkman's scheme constituted a fraudulent scheme or artifice in violation of the Anti-Manipulation Rule. PSMF ¶ 81; DRPSMF ¶ 81. The Assessment Orders also reflect the Commission's finding that CES and Dr. Silkman acted with scienter. PSMF ¶ 82; DRPSMF ¶ 82. The Assessment Orders imposed a $7,500,000 civil penalty against CES and a $1,250,000 civil penalty against Dr. Silkman. *Id.* The Assessment against CES also ordered CES to pay disgorgement of $166,841.13, plus interest. PSMF ¶ 83; DRPSMF ¶ 83.

In assessing and imposing civil penalties for the violations, the FPA required the Commission to consider and apply the following statutory criteria: "the seriousness of the violation and the efforts of such person to remedy the violation in a timely manner." PSMF ¶ 84 (quoting 16 U.S.C. § 825o-1(b)); DRPSMF ¶ 84. With respect to CES, the Assessment Order states that the Commission considered and

---

[122] The Respondents admit that the Commission found such facts but deny the accuracy of the statement. The Court overrules the denial and overrules subsequent denials to the extent they are not based on a record citation.

applied these statutory criteria and Penalty Guidelines applicable to organizations that it has adopted to shape its application of the statutorily-prescribed criteria. PSMF ¶ 85; DRPSMF ¶ 85. With respect to Dr. Silkman, who, as a natural person, is not subject to the Commission's Penalty Guidelines, the Assessment Order states that the Commission considered and applied the statutory criteria, and evaluated five factors it had previously articulated and applied in assessing penalties against individuals to shape the statutorily-required criteria: (1) the seriousness of the offense; (2) commitment to compliance; (3) self-reporting; (4) cooperation; and (5) reliance on Enforcement staff guidance. PSMF ¶ 86; DRPSMF ¶ 86.

The Commission's Assessment Orders reflect that the Commission found the civil penalties to be statutorily authorized under the FPA and appropriate in these cases. PSMF ¶ 87; DRPSMF ¶ 87. With respect to CES, the Commission concluded, "[b]ased on the foregoing factors, the pleadings in this case and the OE Staff Report, the Commission finds that a civil penalty of $7,500,000 and disgorgement of $166,841, plus interest, is fair and reasonable under the circumstances." PSMF ¶ 88; DRPSMF ¶ 88. With respect to Dr. Silkman, the Commission concluded, "[b]ased on the foregoing factors, the pleadings in this case and the OE Staff Report, the Commission finds that there is a need to deter the fraudulent conduct at issue and that a civil penalty of $1,250,000 is fair and reasonable under the circumstances." PSMF ¶ 89; DRPSMF ¶ 89.

On March 22, 2013, the Commission entered an Order Approving Stipulation and Consent Agreement, which approved a stipulation and consent agreement

between Enforcement and Rumford that resolved Enforcement's investigation into whether Rumford engaged in fraudulent conduct in violation of the Anti-Manipulation Rule in its participation in the DALRP. PSMF ¶ 90; DRPSMF ¶ 90. The Order reflects that Rumford agreed to a disgorgement of $2,836,419.08 and a $10,000,000 civil penalty. PSMF ¶ 91; DRPSMF ¶ 91. The Order reflects that Rumford agreed to satisfy the disgorgement and civil penalty obligations by a payment of $3,036,419.08, and, given the fact that Rumford was in bankruptcy, Enforcement agreed that this payment was acceptable satisfaction of Rumford's disgorgement and civil penalty obligations. PSMF ¶ 92; DRPSMF ¶ 92. The Commission's Order directed Rumford to pay an amount of $2,836,419.08 (the amount of the disgorgement) from the settlement payment to ISO-NE within ten business days of the effective date of the agreement, and further directed ISO-NE "to allocate the $2,836,419.08 pro rata to network load [rate payers] during the applicable period."[123] PSMF ¶ 93; DRPSMF ¶ 93.

Section 307(n) does not provide any reciprocal right or ability for the subjects of a Commission investigation to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records." DSAMF ¶ 1 (quoting 16 U.S.C. § 825(b)); PRDSAMF ¶ 1. However, under the Commission's Rules of Practice and Procedure, a party to a show cause proceeding may file a motion for relief with the

---

[123]    The Respondents interpose the following qualification to the Petitioner's paragraph 93: "[t]he effective date of the Agreement was subject to, inter alia, approval of the Agreement and authorization of the Bankruptcy Court." DRPSMF ¶ 93. The Court finds the qualification non-responsive to the Petitioner's statement and declines to include it.

Commission at any time during the proceeding."[124]   DSAMF ¶ 1; PRDSAMF ¶ 1.

Section 1b.16, concerning the rights of witnesses, does not prohibit witnesses or

counsel from speaking with other persons or counsel outside the examination, but

requires the sequestration of witnesses during testimony taken in an investigation.

DSAMF ¶ 2; PRDSAMF ¶ 2.   Other Commission regulations provide that all

information and documents received during an investigation and the existence of the

investigation are treated as confidential, non-public information.  *Id.*  Disclosure of

information during an investigation is permitted only at the Commission's direction

or authorization, or as is otherwise required to be disclosed.[125]  *Id.*

Following his deposition, Dr. Silkman was instructed by FERC Enforcement

not to communicate with his business partner, Mark Isaacson, with Rumford

personnel, or anyone else regarding the questions or answers from his deposition nor

to share a copy of his deposition transcript.  DSAMF ¶ 3; PRDSAMF ¶ 3.  Enforcement

staff informed Dr. Silkman that if he felt the need to share information regarding the

contents of the deposition to anyone else, he should contact Enforcement staff and

---

[124]   The Petitioner admits the contents of DSAMF ¶ 1, but "otherwise denies" the statement "because respondents to an order-to-show-cause proceeding who were the subjects of an enforcement investigation have the ability to request discovery via motion under the . . . FPA."  Even though Petitioner's denial would be properly framed as a qualification, the Court has interpreted the denial as a qualification, and incorporated its contents into the Respondents' additional material fact paragraph 1.

[125]   Respondents' additional statement of material fact paragraph 2 stated: "Section 1b16, concerning the 'Rights of witnesses,' does not prohibit witnesses or counsel from speaking with other persons or counsel outside the examination."  DSAMF ¶ 2.

The Petitioner interposes a qualification, noting additional regulations regarding sequestration of witnesses and confidentiality of information and documents during an investigation.  PRDSAMF ¶ 2.  The Court included the qualification to provide additional context to the Respondents' statement and to make sure the paragraph is complete and not misleading.

they would discuss it.[126]  *Id.*

FERC Enforcement also instructed other deponents in the investigation not to share copies of their deposition transcripts with the Respondents or their counsel.[127] DSAMF ¶ 4; PRDSAMF ¶ 4.  Under the Commission's regulations, Respondents were not entitled to attend the taking of testimony from third party witnesses when Enforcement was engaged in investigative fact-finding or to receive copies of their testimony.  *Id.*  The Commission's regulations require the sequestration of witnesses during testimony taken in an investigation, and all information and documents received during an investigation, as well as the existence of an investigation, is treated as confidential, non-public information.  *Id.*  Disclosure of information during an investigation is permitted only at the Commission's direction or authorization, or as is otherwise required to be disclosed.  *Id.*  Deponents and their counsel in the investigation were instructed regarding the testimony of witnesses in accordance with the requirements of §§ 1b.12 and 1b.16 of the Commission's regulations, requiring sequestration of witnesses during testimony, and in accordance with the Commission's regulations regarding confidentiality of investigations.  *Id.*

---

[126]  Respondents' additional statement of material fact paragraph 3 is reflected verbatim in the preceding sentence.

In response, the Petitioner interposes a qualified response, stating the Commission's regulations regarding sequestration of witnesses.  DSAMF ¶ 3.  The Court declines to include this portion of the qualification as it has already included similar facts regarding regulations in DSAMF paragraph 2.  However, the Petitioners also put forth the qualification that if Dr. Silkman felt the need to share the deposition with anyone else, he should contact Enforcement staff for discussion. PRDSAMF ¶ 3.  The Court included this qualification to ensure the Respondents' additional material fact paragraph 3 is complete and not misleading.

[127]  The Petitioner interposes a qualified response to the Respondents' additional material fact paragraph 4, setting forth the regulations and Commission practice behind the Respondents' statement.  PRDSAMF ¶ 4.  The Court included these Commission regulations and practices regarding other deponents to be complete and to avoid being misleading.

Although the Commission's Revised Policy Statement on Enforcement allows written submissions, the Commission's Revised Policy Statement on Enforcement prohibits any oral communications to the Commissioners or their assistants from any person concerning an ongoing staff investigation as to which such person is the subject.[128] DSAMF ¶ 5; PRDSAMF ¶ 5. The Commission's Revised Policy Statement on Enforcement does not prohibit oral communications to the Commissioners or their assistants from a staff member concerning an ongoing staff investigation. DSAMF ¶ 6; PRDSAMF ¶ 6. The Commission's Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties does not require a hearing or discovery for entities that choose Option 2 under 16 U.S.C. § 823b(d)(3)(A), but rather only the "immediate assessment" of the civil penalty." DSMAF ¶ 7; PRDSAMF ¶ 7. Although the 2006 Policy Statement does not require discovery, respondents to a show cause proceeding have the ability to request discovery via motion under the procedural rules promulgated by the Commission pursuant to its express delegation of authority by Congress under the FPA.[129] *Id.*

---

[128] The Petitioner interposes a qualification to the Respondents' additional material fact paragraph 5, reciting the entire paragraph of the Commission's Revised Policy Statement on Enforcement cited by the Respondents. PRDSAMF ¶ 5. The Court declines to place in the statement of material facts the entire statement, but it has summarized the fact that the Revised Policy Statement allows for written communication in order to be complete and not misleading.

[129] The Petitioner sets forth the following qualification to the Respondents' statement of additional material fact paragraph 7:

The FPA and the Commission's regulations promulgated pursuant to its statutory authority under the FPA set forth the statutory requirements and procedures for assessing civil penalties by order. See, e.g., SUMF (ECF No. 135) ¶¶ 7-10, 12-17, 30-39. The Commission's Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61,317 (2006) (hereinafter, "2006 Policy Statement") does not, itself, require anything, and does not supersede any statutory requirements; rather, the Statement "outlines the basic procedures to be followed" while "retain[ing] the right to modify these procedures to fit the

circumstances presented by specific cases, while still providing process that meets the applicable statutory criteria." See Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61,317 at P 2 (2006). Even though the 2006 Policy Statement refers to an "immediate penalty assessment" by the Commission, the FPA does not use such language and requires that the Commission "promptly" assess such penalty "by order" after "notice and opportunity for public hearing, in accordance with the same provisions as are applicable under section 823b(d)" after taking into consideration mandatory statutory factors, namely, "the seriousness of the violation and the efforts of such person to remedy the violation in a timely manner." *See* SUMF (ECF No. 135) ¶¶ 13-16; *D. Anas Decl.* (ECF No. 137) ¶ 11, Exs. WW (16 U.S.C. § 825o-1(b) (2012)) & XX (16 U.S.C. § 823b(d) (2012)). Moreover, the 2006 Policy Statement articulates that an "immediate penalty assessment by the Commission" (as opposed to an Initial Decision by an ALJ that will then be considered by the Commission together with any exceptions filed) involves a procedure by which the Commission will first determine whether a violation or violations occurred and then issue an order setting forth its factual findings and assessment of any penalty determined to be appropriate. See Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61,317 at P 5 at 1.b.i (2006) ("Immediate Penalty Assessment. If the Commission finds a violation, the Commission will issue an order setting forth the material facts that constitute the violations and assess any appropriate penalty.") (bold text in original). Further, although the 2006 Policy Statement does not "require" a hearing, the 2006 Policy Statement notes the Commission's use of paper hearings in various circumstances, including the procedure by which civil penalties are to be assessed under the Natural Gas Act which "draws on existing processes for the FPA and [Natural Gas Policy Act of 1978] for the administrative process the Commission generally will follow in assessing civil penalties under the NGA." See Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61,317 at PP 6-7 (2006). Finally, although the 2006 Policy Statement does not "require" discovery, respondents to a show cause proceeding have the ability to request discovery via motion under the procedural rules promulgated by the Commission pursuant to its express delegation of authority by Congress under the FPA. 12 Under the Commission's Rules of Practice and Procedure codified at 18 C.F.R. Part 385, which apply to show cause proceedings (see SUMF (ECF No. 135) ¶¶ 11, 30-31; D. Anas Decl. (ECF No. 137) ¶ 12, Ex. CCC (18 C.F.R. § 385.201 (2012) (Applicability); id. (18 C.F.R. § 385.209(a)(2) (2012) (authorizing the Commission to initiate "a proceeding . . . by issuing an order to show cause")), a party to a show cause proceeding may file a motion for relief with the Commission at any time during the proceeding. See SUMF (ECF No. 135) ¶ 39; D. Anas Decl. (ECF No. 137) ¶ 12, Ex. CCC (18 C.F.R. § 385.212 (2012)). The Commission's regulations regarding discovery, moreover, expressly state that the provisions apply "to discovery in proceedings set for hearing under subpart E of this part [i.e., ALJ hearing], and to such other proceedings as the Commission may order." See D. Anas Opp. Decl. (ECF No. 142) ¶ 11, Ex. CC (18 C.F.R. § 385.401 (2012) (Applicability) (emphasis added)).

PRDSAMF ¶ 7. The Court finds that, in large part, the Petitioner's qualification adds unnecessary detail to the Respondents' statement. However, the Court does find that the statement "although the 2006 Policy Statement does not 'require' discovery, respondents to the show cause proceeding have the ability to request discovery via motion under the procedural rules . . ." should be included as it ensures the Respondents' statement is not misleading. The Court declines to incorporate the remainder of the qualification.

### III.   POSITIONS OF THE PARTIES

#### A.   The Respondents' Motion for Summary Judgment

##### 1.   The Respondents' Motion

The Respondents contend that the statute of limitations that governs this suit, 28 U.S.C. § 2462, prohibits government action concerning alleged wrongdoing that occurred more than five years before the government filed suit. *Resp'ts' Mot.* at 1-2. According to the Respondents, "[b]ecause FERC filed suit in federal court more than five years after the alleged wrongdoing ended," the instant action is time-barred. *Id.* In support, the Respondents rely on *Gabelli v. SEC*, 568 U.S. 442 (2013) and *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). They further argue that FERC is incorrect in its argument that the First Circuit Court of Appeals decision in *United States v. Meyer*, 808 F.2d 912 (1st Cir. 1987), controls here, because the Respondents did not receive an "adjudicatory administrative proceeding" in light of the lack of due process that FERC afforded them, which the Respondents describe in detail. *Resp'ts' Mot.* at 2-7. To the extent this argument relies on facts, the Respondents submitted those facts in their accompanying Statement of Material Facts. (ECF No. 136).

According to the Respondents, because Congress did not delegate administrative authority to a specific agent to administer the general federal statute of limitations, 28 U.S.C. § 2462, the Court owes no *Chevron*[130] deference to FERC, and the Supreme Court's interpretation of the statute controls. *Id.* at 8. As such, in

---

[130]   *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations").

the Respondents' view, the Supreme Court's decision that the statute of limitations in § 2462 began to run when the alleged fraud was committed, not when it was discovered by the SEC, controls here. Similarly, the Respondents contend that the Supreme Court ruled in *Kokesh* that the SEC "could only seek disgorgement under Section 2462 for alleged fraud that occurred within five years of the date the claim accrued." *Id.* (citing *Kokesh*, 137 S. Ct. at 1635). The Respondents note that the Supreme Court's rulings in *Gabelli* and *Kokesh* are particularly applicable to the case at bar because "FERC's market manipulation statute and . . . anti-manipulation rule were specifically patterned on Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC's Rule 10b–5, 17 C.F.R. § 240.10b–5." *Id.* at 9.

The Respondents argue that *Gabelli* and *Kokesh* overruled *Meyer,* which the Respondents' characterize as holding that "the government had five years under Section 2462 to commence an 'adjudicative administrative proceeding' . . . and then after that proceeding ended, the government had another five years under Section 2462 to file suit in federal court to enforce the judgment awarded in the proceeding." *Id.* at 9-10. The Respondents ask that the Court "agree with the *Barclays* court and conclude that *Meyer* is no longer good law in light of *Gabelli*." *Id.* (citing *FERC v. Barclays Bank PLC*, 105 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015) (*Barclays I*)).

The Respondents further contend that even if *Meyer* has not been overruled, *Meyer* does not apply to this case because the "Defendants did not receive any of the hallmarks of an adjudicatory administrative proceeding, and FERC's long wind-up should be considered as nothing more than a decision to bring suit against

Defendants." *Id.* at 10-11. The Respondents distinguish *Meyer*, noting that unlike in the instant case, the defendant in *Meyer* was afforded the protections of the Administrative Procedure Act, and the charges were heard by an administrative law judge, who issued a decision subject to appeal. *Id.* (citing *Meyer*, 808 F.2d at 913, 919). The Respondents argue that "courts have repeatedly held" that defendants who select Option 2 under 16 U.S.C. 823b(d)(3) "do not receive any meaningful process from FERC." *Id.* at 12-13 (citing *Powhatan*, 2017 WL 6629093, at *12; *FERC v. Barclays Bank PLC*, 247 F. Supp. 3d 1118, 1121 n.7, 1129 (E.D. Cal. 2017) (*Barclays II*).

According to the Respondents, several facts demonstrate the inadequate due process provided by FERC. First, what is characterized by FERC as the "administrative record" did not contain the entire investigative file, but it did contain documents that had not been disclosed previously to the Respondents. *Id.* at 14. Second, the Respondents contend that FERC Enforcement engaged in ex parte communications concerning the Respondents with FERC Commissioners and their staff. *Id.* Third, the Respondents claim that "it does not appear that FERC Enforcement even read Defendants' response to its allegations." *Id.* at 15.

The Respondents also allege that no additional factfinding must occur once a party elects to proceed under FERC's Option 2, and that the decision to charge a party with a proposed penalty is conducted without a neutral arbiter. *Id.* at 16. The Respondents claim that they "did not receive any additional process after FERC issued the Orders to Show Cause." *Id.* at 17. According to the Respondents, ". . . once

a party elects Option 2, there is no requirement for FERC to conduct any proceeding, only for FERC to "promptly assess such penalty." *Id.* (citing § 823b(3)(A)). The Respondents contend that they were not afforded "an adversarial adjudication before a neutral decision-maker", which they state is "the very hallmark of our system of prosecution of criminal and civil offenses." *Id.* at 17-18 (citing *FERC v. Barclays Bank PLC*, No. 2:13-CV-02093-TLN-DB, 2017 WL 4340258 at *11, 2017 U.S. Dist. LEXIS 161414, at *33 (E.D. Cal. Sept. 29, 2017) (*Barclays III*)). The Respondents conclude that the process provided by FERC amounted to a prosecutorial determination, not a proceeding. *Id.* at 19.

### 2. FERC's Opposition

FERC responds and asks the Court to deny the Respondents' motion, arguing that under the First Circuit's decision in *Meyer*, which controls, "the dispositive factor for determining whether an administrative assessment proceeding meets the requirements of 18 U.S.C. § 2462 is whether 'assessment of administrative penalty is a statutory prerequisite to the bringing of an action judicially to enforce such penalty.'" *Pl.'s Opp'n* at 1 (citing *Meyer*, 808 F.2d at 922). According to FERC, it could only bring an action in district court seeking an order affirming the assessment of the civil penalty against the Respondents when they failed to pay; therefore, the case "falls squarely within *Meyer* and the requirements of § 2462." *Id.* Finally, FERC argues that the Commission's adjudication constituted a proceeding that met the first statute of limitations under *Meyer*. *Id.*

FERC avers that *Meyer* "was not silently overruled" as the Respondents state,

by *Gabelli* and *Kokesh*, and that *Meyer* remains "longstanding precedent in the First Circuit that represents the view of a majority of courts; only the Fifth Circuit has adopted a different approach." *Id.* at 3-4 (citing *SEC v. Mohn,* 465 F.3d 647 (6th Cir. 2006); *United States v. Godbout-Bandal*, 232 F.3d 637 (8th Cir. 2000*); 3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994); *U. S. Dep't of Labor v. Old Ben Coal Co., 676 F.2d 259* (7th Cir. 1982); *United States v. Worldwide Indus. Enters., Inc.,* 220 F. Supp. 3d 335, 340 (E.D.N.Y. 2016)); *United States v. Sacks,* Case No. C10- 534RAJ, 2011 WL 6883740 (W.D. Wash. Dec. 28, 2011); *United States v. Great Am. Veal, Inc.*, 998 F. Supp. 416 (D.N.J. 1998); *Atl. States Legal Found. v. Al Tech Specialty Steel Corp.*, 635 F. Supp. 284 (N.D.N.Y. 1986); *In re Donohoo*, 243 B.R. 139 (Bankr. M.D. Fla. 1999).  FERC agrees that in *Gabelli*, the Supreme Court held that "the statute of limitations in Section 2462 began to run when the alleged fraud was committed, not when the Securities and Exchange Commission (SEC) discovered the fraud." *Id.* at 4 (citing *Resp't's Mot.* at 8-9).  But FERC distinguishes *Gabelli* from *Meyer* because *Gabelli* "does not consider a statute requiring an agency to assess a penalty through an administrative process as a prerequisite to filing in district court . . . and fails to address *Meyer* at all." *Id.* at 4.  FERC also notes that "Judge Woodlock considered and squarely rejected their reliance on *Gabelli* . . . [because] the fraud discovery rule does not extend to SEC actions for civil penalties." *Id.* (citing *Silkman I*, 177 F. Supp. 3d at 699 (citing *Gabelli*, 568 U.S. 442 at 1219)).  FERC similarly rejects the contention that *Kokesh* supports the Respondents' position, arguing that "[b]ecause there were no prior administrative proceedings at issue in *Kokesh*, the Court had no

occasion to address the issue presented here and in *Meyer* regarding the applicability of the statute of limitations where an administrative proceeding is a condition precedent to filing suit in district court." *Id.* (citing *Kokesh*, 137 S. Ct. at 1635).

FERC disputes the Respondents' argument that "the details of a particular adversarial agency proceeding" is "the key factor under *Meyer* and its progeny . . ." *Id.* at 7-8, instead contending that " it is beyond dispute under the plain language of § 2462, FPA § 31(d), and the weight of case law, that the process leading to the assessment of such an order is a 'proceeding' under *Meyer*." *Id.* at 8. FERC cites *Worldwide Industrial Enterprises, Incorporated,* 220 F. Supp. 3d 335, 344 (E.D.N.Y. 2016) as "rejecting [the] claim that the nature of the administrative proceeding determines if § 2462 has been met" under *Meyer*. *Id.* at 9.

FERC maintains that, under the Administrative Procedure Act — which defines "'adjudication' as 'agency process for the formulation of an order" — the show cause proceeding "was an agency adjudication and not a mere decision to prosecute," and does not violate due process principles, as the Respondents contend. *Id.* at 11-12 (citing 5 U.S.C. §§ 551(12); 551(7)). According to FERC, "[u]nder enduring administrative law principles, agency processes ending in an 'order' are both 'adjudications' and 'proceedings.'" *Id.* Moreover, FERC contends that the "Respondents do not cite any case law in support of the proposition that these arguments are relevant to the statute of limitations issue." *Id.* at 12 (citing *Resp'ts' Mot.* at 13-15).

With respect to the contention that FERC did not provide due process, FERC

states that the Respondents were provided notice and an opportunity to be heard, as required by the FPA and its regulations. *Id.* at 12-14. FERC further avers that "due process does not require that Respondents receive a live hearing" and notes that the "Respondents would have received a live hearing before an ALJ had they allowed the show cause proceeding to proceed on the default path; they, however, affirmatively chose to waive that hearing in favor of a penalty assessment by the Commission." *Id.* at 14.

Finally, FERC argues that the Court should not follow *FERC v. Barclays Bank PLC* because:

> *Barclays* was not governed by *Meyer*, is inconsistent with the weight of case law, misstates the nature of the Commission's penalty assessment proceedings, does not mention respondents' right to challenge Enforcement staff's allegations during such proceedings, misconstrues the cases on which it relies, denies the Commissioner's role as neutral decision-makers, and was based on an incomplete record."

*Id.* at 15-16 (citing *Barclays III*).

### 3. Respondents' Reply

In reply, the Respondents argue that FERC's reliance on *Meyer* is "misplaced", reiterating its position that *Meyer* was founded in the fact that the defendant in that case received an adjudicatory administrative proceeding. *Resp'ts' Reply* at 1. The Respondents also highlight that "the *Meyer* court distinguished the prosecutorial determinations made by the FTC and CPSC, which were subject to the five-year limitation of 28 U.S.C. § 2462." *Id.* at 2. The Respondents also dispute FERC's contention that the SEC proceedings in *Gabelli* differ from the procedures in this case. *Id.*

### B. FERC's Motion for Partial Summary Judgment

#### 1. FERC's Motion

FERC filed a separate motion for partial summary judgment on the statute of limitations issue. Although in different form, FERC advances several of the same arguments it did in response to the Respondents' motion for summary judgment. *See Pl.'s Mot* at 1-3*; Resp'ts' Mot.* In addition, FERC asks that its summary judgment be granted on two bases. FERC first contends that because the portion of the penalty assessed against the Respondents is based on disgorgement under its remedial authority, it is not subject to the statute of limitations under § 2462. *Pl.'s Mot.* at 17-18, n.90. Second, it argues that if the Court accepts the Respondents' position on the statute of limitations, "then Respondents waived this defense by not raising it during the Commission's adjudication." *Id*. at 2-3. According to FERC, "Respondents' statute of limitations defense . . . ripened . . . during the Commission's show cause proceeding, but Respondents failed to raise it at that time as they were required to by (a) the Commission's regulations, (b) the Proposed Penalty Orders, and (c) case law." *Id*. at 19-20. FERC further contends that "statutes of limitations, when sought to be applied against the government, are to be strictly construed in favor of the government." *Id*. at 10 (citing *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 391 (1984); *U.S. v. Commonwealth Energy Sys. and Subsidiary Cos.*, 235 F.3d 11, 13-14 (1st Cir. 2000)).

#### 2. Respondents' Opposition

The Respondents oppose FERC's motion. *Resp'ts' Opp'n* at 1. First, the

Respondents disagree with the Petitioner's contention that the statute of limitations does not apply in disgorgement actions. *Id.* They reiterate the arguments set forth in their motion for summary judgment, as well as the supporting case law. *See Resp'ts' Mot.* The Respondents contend that "none of the cited regulations purported to provide Defendants with adjudicatory, show cause, administrative, contested, on-the-record, or adversarial proceedings. . .. Calling something an adjudicatory, show cause administrative, contested, on-the-record, or adversarial proceeding does not make it so." *Id.* at 13-14. Finally, the Respondents argue that the Court does not have jurisdiction to order disgorgement, because FERC cites only dicta in support of their position. *Id.* at 16. Additionally, according to the Respondents, "FERC does not cite any authority that this Court has subject matter jurisdiction to order disgorgement. In its petition, FERC does not cite 16 U.S.C. § 823h at all, and only claims subject matter jurisdiction under 16 U.S.C. § 823b(d)(3)(B)," which does not reference disgorgement. *Id.* (citing *FERC Pet.* ¶ 16).

### 3. FERC's Reply

FERC filed a reply to the Respondents' opposition, reiterating its previous argument that *Meyer* controls, and refuting the Respondents' claim that its administrative action violated due process. *See generally Pl's Reply* at 1-7.

## IV. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "has the potential to

change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)). A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

Once this evidence is supplied by the moving party, the nonmovant must "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994)). In other words, the nonmoving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011). However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

Where, as here, the parties have filed cross-motions for summary judgment, the court must evaluate each motion independently and "determine whether either

of the parties deserves judgment as a matter of law on facts that are not disputed."

*Matusevich v. Middlesex Mut. Assurance Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (citing

*Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)). As such, for cross-

motions for summary judgment, the standard of review is applied to each motion

separately. *Gardner*, 759 F. Supp. 2d at 221. The presence of cross-motions for

summary judgment "neither dilutes nor distorts" the summary judgment standard.

*Mandel v. Bos. Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

## V.   DISCUSSION

There are two threshold issues.   First, FERC asserts that the Respondents

waived their statute of limitations defense, contending that the Respondents should

have raised this defense by February 2013, six months before the Commission issued

its August 29, 2013 Assessment Orders. *Pl.'s Mot.* at 19-20; *Pl.'s Reply* at 6.   Judge

Woodlock squarely addressed this issue in his April 11, 2016 order on the motion to

dismiss. *Silkman I*, 177 F. Supp. 3d at 697.   Judge Woodlock wrote:

> FERC's theory produces an absurd result; it would require that a statute
> of limitations defense be raised before it had ripened.   Fortunately,
> FERC's procedural rules avoid such an absurdity by requiring only that
> a Respondent set forth the defenses relied upon "to the extent
> practicable."   18 C.F.R. § 385.213(c)(2).   Requiring a Respondent to
> anticipate and raise defenses that might only have merit at some future
> date and which are dependent upon various contingencies — some of
> which are controlled by the agency itself — is not "practicable."
> Respondents were not required to raise their statute of limitations
> defense during the administrative proceeding, in advance of the
> expiration of the statute of limitations, in order to now raise the issue.

*Id.*   The Court agrees with Judge Woodlock and concludes that the Respondents did

not waive their statute of limitations defense by failing to raise it during the FERC

proceeding.

Second, in response to FERC's contention that the portion of the penalty assessed against the Respondents based on disgorgement falls under its remedial authority, and therefore is not subject to the statute of limitations under § 2462, *Pl.'s Mot.* at 17-18, n.90, the Respondents contend that "FERC does not cite any authority that this Court has subject matter jurisdiction to order disgorgement." *Resp'ts' Mot.* at 16. The Supreme Court in *Kokesh* held that "SEC disgorgement constitutes a penalty within the meaning of § 2462," based on the fact that "SEC disgorgement is imposed by the courts as a consequence for violating public laws" and "for punitive purposes" and is "often not compensatory." 137 S. Ct. 1635, 1643 (2017). The Court concludes that the *Kokesh* holding with regard to SEC penalties applies with equal force to FERC penalties. As such, the entire penalties assessed by FERC, including disgorgement, are subject to the statute of limitations under § 2462.

The myriad factual and legal disputes among the parties boil down to one issue: whether the five-year statute of limitations for the enforcement of civil penalties, 28 U.S.C. § 2462, as applied to the civil penalties FERC assessed against the Respondents, accrued at the time the Respondents committed the alleged violation or at the time FERC assessed the penalty. This issue hinges upon whether the First Circuit's decision in *Meyer* is superseded or, in the alternative, distinguishable, as the Respondents contend.

### A. Preliminary Discussion

#### 1. Statutory Language of 16 U.S.C. § 823b(d)

FERC is authorized to assess civil penalties for violations of the FPA "after notice and an opportunity for public hearing." 16 U.S.C. § 823b(c).  Before FERC may issue "an order assessing a civil penalty against any person," the FPA requires the Commission to "inform such person of his opportunity to elect" one of two procedural paths. *Id.* § 823b(d)(1).  The default option (Option 1) is set forth in § 823b(d)(2). Under Option 1, an adjudication is required before FERC assesses a penalty:

> [The Commission] shall assess the penalty, by order, after a determination of violation has been made on the record after an opportunity for an agency hearing ... before an administrative law judge . . .. Such assessment order shall include the administrative law judge's findings and the basis for such assessment. Any person against whom a penalty is assessed under this paragraph may ... institute an action in the United States court of appeals for the appropriate judicial circuit for judicial review of such order . . ..  The court shall have jurisdiction to enter a judgment affirming, modifying, or setting aside in whole or in [p]art, the order of [the Commission], or the court may remand the proceeding to [the Commission] for such further action as the court may direct.

*Id.* § 823b(d)(2)(A)–(B).

Here, the Respondents chose to proceed under § 823b(d)(3) (Option 2).  Under Option 2:

> [The Commission] shall promptly assess such penalty, by order[.] . . . If the civil penalty has not been paid within 60 calendar days . . . [the Commission] shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in [p]art such assessment.

*Id.* § 823b(d)(3)(A)–(B).  As noted by the Court in its Order Regarding Procedures Applicable to Petition for Order Affirming Assessment of Civil Penalties (ECF No.

95), § 823b(d)(3) "does not dictate the procedures the Commission should use to assess the civil penalties." *Silkman*, 233 F. Supp. 3d at 219. "The only statutory directive is promptness." *Id.* "There is nothing in the language of the statute that requires the Commission to provide the targeted parties any procedural protections, such as access to discovery, a hearing, or the ability to confront evidence." *Id.*

### 2. The Statutory Period under 28 U.S.C. § 2462

The parties agree that as FERC has not prescribed a time limit within which an administrative claim to impose a civil penalty or an action to enforce such a penalty; therefore, the general statute of limitations under § 2462 applies. Section 2462 states that "an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." The correct interpretation of the phrase "when the claim first accrued" is disputed by the parties. The Court turns to relevant caselaw.

### 3. *United States v. Meyer*

In *Meyer*, the First Circuit addressed when the statute of limitations under § 2462 accrues. *Meyer* arose under circumstances similar to the instant case: the United States Department of Commerce charged Robert Meyer with "furnishing boycott information to Saudi Arabia on three separate occasions . . . and failing to report receipt of a request for boycott-related information to the United States Department of Commerce. . .." in violation of regulations under the Export Administration Act (EAA). 808 F.2d at 913. On July 21, 1981, the Department of

Commerce "initiated administrative enforcement proceedings against Meyer by issuing a 'charging letter' pursuant to 15 C.F.R. § 388.4(a)." *Id.* On July 22, the administrative law judge assigned to the matter issued an initial decision, finding that Mr. Meyer violated the regulations and imposing a civil penalty of $5,000. *Id.* When Mr. Meyer refused to pay the sanctions, "on December 31, 1985—more than five years after the infractions themselves occurred, but within five years of the assessment of the penalty—the Department brought an enforcement suit in the United States District Court for the District of Massachusetts. *Id.* The district court relied on the Fifth Circuit's opinion in *United States v. Core Laboratories, Inc.,* 759 F.2d 480 (5th Cir. 1985), in dismissing the action as time-barred under 28 U.S.C. § 2462. *Id.* The First Circuit reversed, holding that "§ 2462 affords an additional five-year period following final administrative assessment of a civil penalty during which the government may sue to enforce the action." *Id.* at 914.

In reaching its decision, the First Circuit first analyzed the plain language of the statute. It stated that "the standard definition of the concept of accrual is to the effect that '[a] cause of action "accrues" when a suit may be maintained thereon.'" *Id.* According the *Meyer* Court, the language of the statute requires that the government "refrain from initiating a civil suit until the appropriate administrative authority has imposed a sanction which the respondent has thereafter refused to satisfy." *Id.* In other words, the claim for the enforcement of a civil penalty cannot accrue until the civil penalty has assessed. *Id.* ("In the case at bar, it is abundantly clear that no suit to recover a civil penalty can be mounted under the EAA unless

and until the penalty has first been assessed administratively"). The First Circuit disagreed with the Fifth Circuit's approach, which relied heavily on interpretation of the Legislature's intent behind the statute. *Id.* at 915 ("Where, as here, the language of a statute seems clear and unambiguous, courts should be extremely hesitant to search for ways to interpose their own notions of Congress's intent") (citing *Yates v. United States*, 354 U.S. 298, 305 (1957), *Browder v. United States*, 312 U.S. 335, 338 (1941)).

The *Meyer* Court also reviewed caselaw "which produces abundant support for such a commonsense construction of 28 U.S.C. § 2462," noting:

> Outside of the Fifth Circuit, no court has ever held that, in a case where an antecedent administrative judgment is a statutory prerequisite to the maintenance of a civil enforcement action, the limitations period on a recovery suit runs from the date of the underlying violation as opposed to the date on which the penalty was administratively imposed.

*Id.* at 916. The First Circuit quoted *Lins v. United States*, 688 F.2d 784, 786 (Ct. Cl. 1982) as stating that "if disputes are subject to mandatory administrative proceedings [before judicial action may be taken], then the claim does not accrue until their conclusion." *Id.* The First Circuit also examined *Crown Coat Front Company v. United States,* 386 U.S. 503 (1967), in which the Supreme Court held that the right to resort to the courts in a similar statutory scheme occurred "only upon the making of that administrative determination." *Id.* at 916-17 (discussing *Crown Coat Front*, 386 U.S. at 511-12). Under this rationale, the First Circuit observed that the Supreme Court held that the plaintiff's action in the courts was not time-barred under the relevant statute of limitations despite that the action was brought "more

than six years after the occurrence of the events underlying his contract claim, but less than six years from the issuance of a final administrative decision on that claim." *Id.* at 917.

The *Meyer* Court also considered the "golden rule of statutory interpretation that 'legislation should be interpreted to avoid . . . unreasonable results whenever possible'" to support its holding. *Id.* at 919 (citing *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 71 (1982)). "The concern that 28 U.S.C § 2462 could pluck an enforcement suit from the vine before it had even ripened enough to be brought is by no means theoretical." *Id.* The First Circuit observed that following the Department's issuance of a charging letter, "the timing of the case is largely beyond the Department's control" due to the requirements of the Administrative Procedure Act and its regulations "designed to ensure procedural fairness," as well as the respondents' right to appeal. *Id.*

The First Circuit distinguished other cases relied on by the Fifth Circuit in light of fundamental procedural differences. Most of the cases the Fifth Circuit cited did not involve "the necessity for allowing an administrative proceeding to run its course as a precondition to the commencement of the suit." *Id.* at 920. Another group of cases the Fifth Circuit cited in *Core* "involved situations where prosecutorial determinations, rather than adjudicatory administrative proceedings, constituted the precondition to the suit." *Id.* (citing *United States v. Athlone Induss., Inc.*, 746 F.2d 977 (3d Cir. 1984); *United States v. Advance Mach. Co.*, 547 F. Supp. 1085 (D. Minn. 1982); *F.T.C. v. Lukens Steel Co.,* 454 F. Supp. 1182 (D. D. C. 1978)). The *Meyer* Court

distinguished these cases that concerned decisions to bring suit, reasoning that because they fall entirely within the control of the government, if the statute of limitations were to run, the government agency "would only have its own indecision to blame." *Id.*

### 4. *Gabelli v. SEC* and *Kokesh v. SEC*

The Respondents contend that the United States Supreme Court's decisions in *Gabelli* and *Kokesh* overruled *Meyer*. In Respondents' view, under the *Gabelli* interpretation of § 2462, the claims accrued at the time of the violation. *Resp't's Mot.* at 8. The statute of limitations governing the action in *Gabelli*, as in this case, is the general statute of limitations that governs many penalty provisions throughout the U.S. Code, 28 U.S.C. § 2462. 568 U.S. at 444. The SEC sought civil penalties against the petitioners in an action in district court, and the petitioners moved to dismiss, arguing that the action was time-barred under § 2462. *Id.* at 446. The district court dismissed the claim. *Id.* at 446-47. The Second Circuit reversed under the SEC's argument that "because the underlying violations sounded in fraud, the 'discovery rule' applied, meaning that the statute of limitations did not begin to run until the SEC discovered or reasonably could have discovered the fraud." *Id.* at 447. The Supreme Court granted certiorari and reversed the Second Circuit, holding that "the fraud discovery rule has not been extended to Government enforcement actions for civil penalties." *Id.* In *Kokesh*, the Supreme Court cited *Gabelli* as support for the proposition that "the 5-year statute of limitations set forth in 28 U.S.C. § 2462 applies when the [S.E.C.] seeks monetary penalties." 137 S. Ct. at 1640. The *Kokesh* Court

held that § 2462 applies to claims for disgorgement in an SEC enforcement action, and "any claim for disgorgement . . . must be commenced within five years of the date the claim accrued." *Id.* at 1645.

## B.    Analysis

The Respondents first contend that *Meyer* is no longer good law following the Supreme Court's decisions in *Gabelli* and *Kokesh*.  The Court disagrees.

"As a general proposition, an argument that the Supreme Court has implicitly overruled one of its earlier decisions is suspect." *United States v. Symonevich,* 688 F.3d 12, 20 (1st Cir. 2012) (citing *Agostini v. Felton,* 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. . . .")).  Furthermore, "[u]ntil a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.,* 386 F.3d 344, 349 (1st Cir. 2004) (citing *Sarzen v. Gaughan,* 489 F.2d 1076, 1082 (1st Cir. 1973) ("When a . . . federal court has spoken, stability and stare decisis require that litigants and other courts take its pronouncement at face value until formally altered")).

The issue in *Meyer* — whether the claim accrues at the time of the violation, or at the time a claim is brought to enforce a penalty order — was not at issue in *Gabelli* or *Kokesh*.  As stated by Judge Woodlock in his order on the Respondents' motion to dismiss, "*Gabelli* did not concern a case in which administrative

proceedings preceded an action in federal court; there, the SEC sued directly in court." *Silkman I*, 177 F. Supp. 3d at 699. The issue in *Gabelli*—whether the discovery rule in fraud actions extends to government enforcement proceedings—is also unrelated to the issue decided in *Meyer*. Furthermore, "*Meyer* sits on one side of a circuit split, yet the *Gabelli* court did not purport to address or resolve that split. Nothing in *Gabelli* suggests that it is inconsistent or incompatible with *Meyer*." *Id.* at 700 n.9 (internal citation omitted).

For a district court faced with prior circuit authority to change course, the law requires that circuit court precedent be "formally altered", *Eulitt,* 386 F.3d at 349, or "unmistakably . . . cast into disrepute by supervening authority." *Sarzen,* 489 F.2d at 1082. As the Supreme Court's decisions in *Gabelli* and *Kokesh* address different issues regarding the application of § 2462 and the First Circuit has not formally altered *Meyer*, the Court disagrees with the Respondents' contention that either *Gabelli* and *Kokesh* superseded *Meyer*. *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 32-33 (1st Cir. 2016) ("When a . . . federal court has spoken, stability and stare decisis require that litigants and other courts take its pronouncement at face value until formally altered") (quoting *Sarzen*, 489 F.2d at 1082).

The second argument the Respondents have championed is that even if *Meyer* is still good law, it is distinguishable because the process FERC afforded amounted to a decision to prosecute, in contrast to the adjudicatory administrative proceeding the FEC afforded the defendants in *Meyer*, and therefore the FERC process fell outside the scope of *Meyer*'s holding regarding § 2462. *Meyer* states that "where

prosecutorial determinations, rather than adjudicatory administrative proceedings, constituted the precondition to suit . . . the limitations period . . . runs from the time of the underlying violation rather than from the government's decision to prosecute the charge." 808 F.2d at 920. The First Circuit notes that for the EAA administrative proceedings at issue in *Meyer*, a prosecutorial determination would be more akin to "the Department's initial issuance of a charging letter" than to "the imposition of a statutory penalty by an ALJ after notice, discovery, and hearing." *Id.*

In support of their contention that FERC provided only a prosecutorial determination, the Respondents rely on *Barclays III* from the District Court for the Eastern District of California, which commented in an order for judgment on the pleadings that the same FERC process constituted a prosecutorial determination rather than an adjudicatory administrative proceeding. *Barclays III*, 2017 WL 4340258, at *15. On this basis, the *Barclays III* Court concluded that FERC's action to enforce six years after the violation occurred was time-barred. *Id.* at *13. The *Barclays III* Court, in determining whether § 2462 applied to an administrative proceeding, looked to caselaw to assess whether FERC held a proceeding, within the meaning of § 2462. *Id.* at 10-12. Relying on *3M Co. (Minnesota Min. & Mfg.) v. Browner,* 17 F.3d 1453 (D.C. Cir. 1994) and *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), the district court considered factors such as whether a neutral adjudicator was provided and whether the proceeding was adversarial in nature in its determination that FERC's Administrative Penalty Assessment Process did not constitute a proceeding, but rather a decision to prosecute. *Barclays III*, 2017 WL

4340258, at *11-14.

As a district court within the Ninth Circuit, the *Barclays III* Court was not bound, as this Court is, by First Circuit precedent. Nor did the *Barclays III* Court rely upon caselaw binding in this circuit in making its determination.[131] By contrast, this Court must rely on the First Circuit's teaching in *Meyer* to decide this issue. Although *Meyer* concerned the enforcement of the Department of Commerce's administrative action aimed at imposing a civil penalty under the EAA, as opposed to FERC's enforcement action for an administrative penalty at issue here, its analysis of the applicability of § 2462 governs.

The *Meyer* Court's holding that "§ 2462 affords an additional five year period following final administrative assessment of a civil penalty during which the government may sue to enforce the action", 808 F. 2d at 914, is based on four key factors: (1) the clear and unambiguous language of the statute, (2) the balance of the caselaw, (3) the goal of avoiding a "self-abnegating result," and (4), the primary legislative purpose of enacting statutes of limitations: to ensure fairness to defendants. *See generally Meyer*, 808 F.2d at 912. The First Circuit's comparison of the "mandatory administrative adjudication" at issue in *Meyer* with the "prosecutorial decisionmaking" in *Athlone Industries*, 746 F.2d 997, *Advance*

---

[131] The *Barclays III* Court relies on the Supreme Court's statement in *Marshall v. Jerrico* that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases," 446 U.S. at 242, in support of its conclusion that a neutral decision-maker is required for the Administrative Penalty Assessment Process to constitute a proceeding. *Marshall* does not involve the definition of "proceeding" as applied to § 2462 but addressed "whether the statutory provision requiring that penalties be paid to the agency 'violates the Due Process Clause of the Fifth Amendment by creating an impermissible risk of bias in the Act's enforcement and administration.,'" *Id.* (quoting *Marshall*, 446 U.S. at 239).

*Machine*, 547 F. Supp. 1085, *Ancorp*, 516 F.2d 198, and *Lukens Steel*, 454 F. Supp. 1182, was not meant to carve out an exclusion to its holding, but to distinguish *Meyer* from several of the cases the Fifth Circuit had relied upon in *Core*, based on the differences in the types of proceeding they govern. *Meyer* 808 F.2d at 920. As noted in *Worldwide*, "[b]ecause such administrative decisions 'are not in any sense adjudicative . . . [but] comprise nothing more or less than decisions to bring suit,' they differ[] markedly from the EAA's process for imposing a sanction and thus [are] of little value on the statute of limitations question." 220 F. Supp. 3d at 342 (quoting *Meyer*, 808 F.2d at 920). Under this interpretation of *Meyer*, the Court finds unpersuasive the Respondents' effort to distinguish *Meyer* from this case based on the alleged procedural inadequacies they suffered.

However, even taking as true the Respondents' view that the dispositive issue in *Meyer* was the nature of the proceeding afforded to the defendants and viewing the facts in the light most favorable to the Respondents, the Court finds FERC's proceeding closer to the adjudication in *Meyer* than to a prosecutorial determination or charging letter.[132] The Respondents stress that the procedural safeguards the

---

[132] The Respondents repeatedly compare the FERC procedure leading to an order assessing penalties to a prosecutor's decision leading to a criminal charge, a position the *Barclay* Court may accept. *See Barclay III*, 2017 U.S. Dist. LEXIS 161414, at *35 ("The Administrative Penalty Assessment Process is tantamount to a decision to prosecute rather than a 'prosecution'"). From the Court's perspective, whether to criminally charge or indict someone is markedly dissimilar to the FERC process. For example, a grand jury proceeding, unlike a FERC proceeding, is secret, *see United States v. Johnson*, 319 U.S. 503, 513 (1943), and individuals who violate the secrecy of a grand jury may be subject to criminal prosecution under 18 U.S.C. § 1503. *See In re Grand Jury Proceedings*, 814 F.2d 61, 70 (1st Cir. 1987). Whatever limitations the FERC procedure imposes on individuals like Dr. Silkman and entities like CES, the FERC process is a different order of magnitude from the process leading to a grand jury indictment or prosecutorial complaint. Leaving the substantive merits of the Respondents' claims aside about the level of due process FERC should have accorded them, the Court found the Respondents' analogy to criminal prosecution distracting and unhelpful. As with many

FERC proceeding offered them did not include full discovery or a live hearing before an administrative law judge.[133] But this does not transform the FERC proceeding into a discretionary decision to prosecute. In *Silkman I*, Judge Woodlock addressed this same issue and observed that "[e]ven if the FERC proceeding contained "less formal and . . . fewer of the procedural protections than some adjudications under the APA — or even the adjudication in *Meyer* — . . . it was significantly more than a prosecutorial determination." *Silkman I*, 177 F. Supp. 3d at 700. Judge Woodlock concluded the following in an earlier order in this case, and the Respondents presented no facts to the contrary on summary judgment:

> The Commission made extensive findings of facts and applied the law to those facts. It did not merely suggest penalties to be sought later; it ordered Respondents to pay those penalties to the United States Treasury. . . FERC did more than decide to bring suit. It conducted an adjudication.

*Id.* In sum, the Court concludes that pursuant to the First Circuit's holding in *Meyer*, the claim in this case accrued when FERC brought an action in court to enforce the penalties it assessed against the Respondents; therefore, FERC's enforcement action is not time-barred.

## VI.   CONCLUSION

The Court DENIES Respondents' Motion for Summary Judgment (ECF No.

---

analogies, the legitimacy of the point is lost in significant differences between the case at hand and the purported example.

[133]   The Respondents themselves have written that "irony is no stranger to the law." DRSAMF ¶ 2. Here, the fewer procedural protections, in part, were by choice of the Respondents, who opted out of FERC's default procedure for the assessment of penalties, which provides "an opportunity for an agency hearing before an administrative law judge," in favor of a prompt assessment of penalty with the opportunity for de novo review of the law and facts involved in FERC's assessment by the district court. 16 U.S.C. §§ 823b(d)(2)(A)–(B), 823b(d)(3).

133) and GRANTS the Defendants' Partial Motion for Summary Judgment (ECF No. 134).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of January, 2019