UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 1:16-cv-00205-JAW |
| RICHARD SILKMAN, et al., | ) ) ) | |
| Respondents. | ) | |

**ORDER ON MOTION TO EXCLUDE WITNESS**

The Court denies a petitioner's motion to exclude an expert witness designated by the respondents because the Court concludes that the expert is qualified to give the opinions he has rendered, that his opinions are likely to be helpful to the jury, and that the petitioner's other objections do not justify exclusion. Instead, the petitioner is free to test the expert's qualifications, his knowledge of the facts in the case, and his opinions at the crucible of cross-examination, by the introduction of contrary evidence, and through careful attention to proper jury instructions.

**I. BACKGROUND**

   **A. Procedural Background**

With jury selection set for April 7, 2020 and trial scheduled from April 27 through May 1, 2020, on August 27, 2019, the Federal Energy Regulatory Commission (FERC) filed a motion to exclude one of the Respondents' expert

witnesses, Thomas L. Welch.[1] *Pet'r's Mot. to Exclude Thomas L. Welch* (ECF No. 174) (*Pet'r's Mot.*). On September 17, 2019, Richard Silkman and Competitive Energy Service, LLC (CES) responded, objecting to the FERC motion. *Defs.' Opp'n to FERC Mot. to Exclude Expert* (ECF No. 179) (*Resp'ts' Opp'n*).[2] On October 1, 2019, FERC filed its reply. *Pet'r's Reply in Support of Its Mot. to Exclude Thomas L. Welch* (ECF No. 180) (*Pet'r's Reply*).

## B. Factual Overview

### 1. FERC's Allegations

In its Order on Motions for Summary Judgment dated January 4, 2019, the Court described in detail the complex factual and legal underpinnings of this case. *Summ. J. Order* at 2-69. FERC claims that the Respondents "engag[ed] in a fraudulent scheme to manipulate the ISO New England, Inc. (ISO-NE) Day-Ahead Load Response Program from July 2007 to February 2008." *Pet. for an Order*

---

[1] Before issuing this order, I notified counsel for both the Petitioner and Respondents that I know Mr. Welch and explained the nature of our relationship. Counsel for both the Petitioner and Respondents indicated no objection to my continuing to preside over the case. In my notice, I observed that the case is set for jury trial and therefore I would not be called on to make any credibility assessments of Mr. Welch. Counsel for the Respondents notified me that they were considering waiving the right to trial by jury but conceded that the Petitioner could maintain its jury trial demand. Based on my relationship with Mr. Welch, I would not find it necessary to recuse even if the parties waived the right to trial by jury and I acted as fact-finder.

[2] A word on nomenclature. FERC refers to itself as Petitioner and Dr. Silkman and Competitive Energy Service, LLC as Respondents. Dr. Silkman and Competitive Energy refer to themselves as Defendants and FERC as the Plaintiff. Dr. Silkman and Competition Energy may be making the reference to Plaintiff and Defendants out of force of litigation habit. Yet it is the Court's experience that their counsel rarely, if ever, act without thinking things through.

Without resolving this issue (if it is an issue), the Court suspects that FERC is correct in using petitioner and respondents since it is petitioning the Court under 16 U.S.C. § 823b to affirm its order affirming the Commission's orders assessing civil penalties. For purposes of this motion, the Court will continue to use the petitioner-respondents nomenclature. *See Order on Obj. to Order Re: Disc. Disputes* (ECF No. 130); *Order on Mots. for Summ. J.* (ECF No. 155) (*Summ. J. Order*); *Order Denying Mot. for Leave to File Interlocutory Appeal* (ECF No. 162). If the correct way to refer to the parties is an area of disagreement, the parties may bring this issue to the Court before trial in April.

2

*Affirming the Fed. Energy Regulatory Comm'n's Aug. 29, 2013 Orders Assessing Civil Penalties Against Richard Silkman and Competitive Energy Servs. LLC* ¶ 1 (ECF No. 1). ISO-NE is "an independent, non-profit, Regional Transmission Organization serving Massachusetts, Connecticut, Maine, New Hampshire, Rhode Island, and Vermont." *Id.* ¶ 2. It "ensures the day-to-day reliable operation of New England's bulk electric energy generation and transmission system by overseeing and ensuring the fair administration of the region's wholesale electricity markets." *Id.* ISO-NE "administers load response programs that encourage large electricity users to reduce their electricity consumption or 'load' during periods of high or peak demand on the bulk electric system." *Id.* ¶ 3. Under a program administered by ISO-NE known as the Day Ahead Load Response Program (DALRP), participants were allowed to offer "electricity reductions for hours in the next day when New England experienced high electricity prices" and were required to actually reduce their consumption of electricity. *Id.* ¶ 4. When a business reduced its electrical needs for a peak period, the DALRP "would pay [the user] for the electricity savings resulting from its" reduction. *Id.* ¶ 5.

In this case, FERC alleges that Dr. Silkman and CES helped a CES client create a false baseline to foster "the illusion that the client was reducing consumption of electricity." *Id.* ¶ 10. As a consequence, FERC maintains, the client was paid "for demand response that they neither intended to provide nor actually provided." *Id.* FERC concluded that Dr. Silkman's and CES's "scheme to extract payments for phantom load reductions was a violation of the FPA's prohibition of electricity market

3

manipulation, 16 U.S.C. § 824v(a) (2012), and the corresponding prohibition in the Commission's regulations, 18 C.F.R. § 1c.2 (2013)." *Id.* FERC brought this lawsuit to enforce its civil penalty of $1,250,000 against Dr. Silkman and of $7,500,000 against CES and to disgorge $166,841.13 in unjust profits. *Id.* ¶ 12.

### 2. Thomas L. Welch: Defense Expert

Dr. Silkman and CES deny FERC's allegations and have vigorously defended themselves against FERC's allegations. During discovery, on January 26, 2018, Dr. Silkman and CES listed Thomas L. Welch as an expert and produced his expert report and resume. Mr. Welch is a former member and the former Chair of the Maine Public Utilities Commission. *Pet'r's Mot.* Attach. 4, *Thomas L. Welch Statement of Ops. and Basis* at 17 (*Welch Report*). He was graduated from Stanford University in 1972 and from Harvard Law School in 1975. *Id.* He has worked as an attorney in two law firms, as in-house counsel for Bell Atlantic, as the Chief Deputy Attorney General for Antitrust in Pennsylvania, as the Director of Market Strategy for PJM Interconnection, a regional transmission organization, and since 2015 as a consultant. *Id.* According to his report, Dr. Silkman and CES designated Mr. Welch as an expert to testify that the DALRP in place in New England was flawed in several crucial respects. *Id.* at 2-13.

The Respondents also designated Mr. Welch to rebut the proposed testimony of one of FERC's experts, Dr. Samuel A. Newell. *Id.* Attach. 2, *Statement of Thomas L. Welch in Resp. to Dr. Newell Report* at 1-12 (ECF No. 174) (*Welch Rebuttal*). Dr. Newell expressed the view that Dr. Silkman's interpretation of DALRP did not

4

"present[] a baseline-measuring concept that conforms to industry norms or guidance from ISO-NE or the intent of the program, or even one that makes logical sense." *Id.* Attach. 7, *Expert Report of Samuel A. Newell* at 56 (*Dr. Newell Report*). Mr. Welch issued a rebuttal in which he disagreed with Dr. Newell that there has been a consensus about how to calculate the baseline for DALRP. *Welch Rebuttal* at 1-12.

## II. POSITIONS OF THE PARTIES

### A. FERC's Motion

Citing Federal Rule of Evidence 702 and the series of judicial decisions commencing with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), FERC contends: (1) Mr. Welch does not have enough expertise in "wholesale demand response," *Pet'r's Mot.* at 3-6; (2) Mr. Welch does not reliably apply his opinions to the facts in this case, *id.* at 7-10; and (3) specific opinions are unreliable and irrelevant, including his view that the DALRP was flawed, that his rebuttal opinions do not effectively rebut Dr. Newell's opinions, that Mr. Welch's opinions about simulating future conditions are self-contradictory, confusing and unsupported, and that his views regarding the propriety of conduct are unsupported and invade the province of the court. *Id.* at 11-15.

### B. The Respondents' Response

Listing Mr. Welch's background and experience, the Respondents dismiss FERC's attack on his expertise as "breathtaking." *Resp'ts' Opp'n* at 1. Regarding FERC's position that Mr. Welch failed to consider the underlying facts, the Respondents maintain that FERC "largely ignores Welch's opinions about the design

5

flaws and the lack of guidance provided by [ISO-NE] concerning the [DALRP], and thus the reasonableness of the advice that Dr. Silkman provided to Rumford Paper Company in light of ISO-NE's silence and the design flaws." *Id.* Finally, the Respondents dismiss FERC's contentions about Mr. Welch's knowledge of what Rumford Paper Company did, stressing that "Rumford . . . is not on trial." *Id.* In short, in Respondents' view, "[b]ecause FERC asks the wrong question, it gets the wrong answer." *Id.*

### C. FERC's Reply

In its reply, FERC says that it "established in its Motion to Exclude that the jury should not hear Thomas Welch's opinions in this case because he offers nothing more than unreliable supposition." *Pet'rs' Reply* at 1. FERC reasserts that Mr. Welch "does not have experience with wholesale demand response and knows virtually nothing of the facts of this case." *Id.* Rejecting the Respondents' contention that cross-examination, not exclusion, is the better remedy, FERC observes that "cross-examination is not the solution when it is necessary to protect a jury from exposure to wholly unreliable opinions." *Id.*

## III. LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

6

> has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. *Id.* at 597. A judge exercising the gatekeeper role must "ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert* to technical and other specialized expert testimony). The inquiry under Rule 702 is a "flexible one." *Vargas*, 471 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594).

## IV. DISCUSSION

### A. Thomas L. Welch's Expert Qualifications

The Court readily concludes that Mr. Welch possesses sufficient expertise by education and experience to express expert opinions under Federal Rule of Evidence 702 on the issues in this case. FERC's objection is based on the premise that even if Mr. Welch is an expert in retail energy issues, he is not an expert in "wholesale demand response." The Court is skeptical that there are such clear demarcations between expertise in retail and wholesale markets or within the field of energy regulation and government programs. Nor is the Court convinced that the application of the DALRP is so highly specialized and segmented that an acknowledged expert in retail electrical pricing would be unable to "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.

7

In other words, assuming that FERC is correct, namely that an acknowledged expert in retail energy is not an expert in wholesale demand response, it has not made that case in its filings.

Moreover, according to his resume, Mr. Welch not only spent fifteen years serving as the Chair of the Maine Public Utilities Commission, but also two years as Vice President for External Affairs for PJM, "responding to challenges to organized wholesale electricity markets . . . and demand side response." *Welch Report* at 19-21. So, Mr. Welch does have direct expertise in wholesale electricity markets. Mr. Welch's undoubted expertise in the governmental regulation of electrical utilities is best tested not by exclusion but by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ." *Daubert*, 509 U.S. at 596.

Although there are differences, the Court views this issue as analogous to the medical field, where the First Circuit has allowed general practitioners to testify as experts on areas within the purview of medical specialists. In *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*, 345 F.3d 15 (1st Cir. 2003), the First Circuit rejected a challenge to the qualifications of a general practitioner who testified about ectopic pregnancies. *Id.* at 24-25. The First Circuit wrote that a physician "need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline" and noted that the question was "whether the scientific, technical, or other specialized knowledge he offers 'will assist the trier better to understand a fact in issue.'" *Id.* at 24 (quoting *United States v. Alzanki*, 54

F.3d 994, 1005 (1st Cir. 1995)); *see Mitchell v. United States*, 141 F.3d 8, 15-16 (1st Cir. 1998) (allowing internist with specialties in hematology and oncology to testify even though not a gastroenterologist); *Akerson v. Falcon Transp. Co.*, No. 06-cv-36-B-W, 2006 U.S. Dist. LEXIS 84870 (D. Me. Nov. 21, 2006) (emergency room physician and physician's assistant allowed to testify in cervical whiplash case).

Even if the Court accepted FERC's contention that Mr. Welch has less expertise in "wholesale demand response" than in retail energy issues, this would not mean that he has no expertise in the issues that will be presented to the jury in this case or that his testimony would be unhelpful to the jury. Nor does it mean that Mr. Welch is immune from cross-examination by FERC to demonstrate to the jury the limitations of his training, knowledge and experience.

### B. Reliable Application of the Facts

FERC's contention is that the Court should exclude Mr. Welch's testimony because he made "virtually no effort to apply his opinions to the facts of this case." *Pet'r's Mot.* at 11. As the Court understands this part of FERC's argument, FERC asserts that because Mr. Welch did not apply his opinion about the flaws in DALRP to the advice Dr. Silkman gave Rumford or the facts underlying what FERC contends is his fraudulent and manipulative conduct, his views about DALRP should be excluded because he is not "commenting on the facts" of this case and, in fact, he has a "very limited knowledge of the key facts . . . ." *Id.* at 7, 11.

The first argument misses the mark for two reasons. First, an expert is not typically a fact witness. The expert usually accepts a set of facts and then expresses

9

an opinion on them. Thus, for example, Mr. Welch is not in a position to know of his personal knowledge what happened between Dr. Silkman and Rumford. *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) ("[The expert] was not present at the scene of the accident, and is not in a position to say precisely what happened. Her opinion is necessarily dependent upon the Plaintiff's ability to prove at trial the facts upon which her opinion depends"). It will be for the jury to decide based on the evidence whether FERC has proven the underlying facts or whether the Respondents' view of those facts is correct. The Court addressed this issue in *Zuckerman*:

> When the "adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion." *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010). "If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony." *Payton v. Abbott Labs.*, 780 F.2d 147, 156 (1st Cir. 1985); *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (D. Me. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury [that] such testimony [must] be excluded on foundational grounds.") (citations and internal quotation marks omitted)). Furthermore, "absolute certainty is not a prerequisite to admissibility of an expert's testimony." *Small v. GMC*, 2008 U.S. Dist. LEXIS 83717, at *33 (D. Me. Nov. 15, 2006); *see Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (stating that while expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required") (citation omitted)).

*Id.* at 28-29.

There is a second reason in this case that the foundational argument is unavailing. On occasion an expert will also be a fact witness. For example, when a

physician performs an independent medical examination or a scientist a laboratory test, the expert testimony will rely in part on facts within the expert's personal knowledge. Here, however, the Respondents proffered Mr. Welch to opine on issues not dependent upon the supposed accuracy of the facts in the underlying dispute. The Respondents designated Mr. Welch to express his views about flaws in DALRP and to rebut Dr. Newell's opinions about a normative standard for baseline calculations. Neither of Mr. Welch's opinions depends on the accuracy of the underlying facts in this case and therefore his knowledge or ignorance of the underlying facts does not affect the admissibility of his expert opinions.

### C. Obvious and Irrelevant

FERC's next objection to Mr. Welch's opinion concerning the flaws in DALRP is that it is too obvious to require expert testimony. *Pet'r's Mot.* at 11. The Court simply disagrees with FERC on this point. If Mr. Welch is able to explain DALRP and its conceded flaws to a jury, it would enhance the jury's understanding of this complex regulatory area. Nor would the Court wish to order the Respondents to comply with FERC's view of how they should try the defense of this case.

FERC's second relevancy point is another way of arguing the "fit" requirement for the admission of expert testimony. As the First Circuit explained in *Samaan v. St. Joseph Hospital*, 670 F.3d 21 (1st Cir. 2012), the "fit" requirement comes into play when "an expert's methods, though impeccable, yield results that bear a dubious relationship to the questions on which he proposes to opine." *Id.* at 32. FERC argues that Mr. Welch "makes no effort to address the impact of this 'opinion' on the facts of

this case." *Pet'r's Mot.* at 11. The Court has explained, however, why it concludes that Mr. Welch's opinions are relevant to the issues before the jury and therefore rejects FERC's "fit" argument.

**D.  Improper Rebuttal**

FERC argues that Mr. Welch's opinion is not proper rebuttal because it does not rebut Dr. Newell's opinion. *Pet'r's Mot.* at 11-12. Mr. Welch's and Dr. Newell's reports were nearly contemporaneous, Mr. Welch having authored his report on January 26, 2018 and Dr. Newell on January 29, 2018. *Dr. Newell Report* at 2; *Welch Report* at 13. Among Mr. Welch's opinions was that ISO-NE "offered no substantive guidance to participants in the program with respect to establishing the customer's baseline load against which DSLRP load would be measured . . . ." *Welch Report* at 1. By contrast, Dr. Newell opined:

> Contrary to standard industry practice and ISO-NE guidance for demand response . . . Dr. Silkman and CES, in conjunction with Rumford, implemented a strategy to inflate Rumford's baseline and form the basis for phantom demand response.

*Dr. Newell Report* at 4. In rebuttal, Mr. Welch rejected Dr. Newell's view that there has been a "standard industry practice" and that the "ISO-NE guidance" has been clear. *Welch Rebuttal* at 2. This point-counterpoint between the expert views of Mr. Welch and Dr. Newell is the stuff of jury trials, and contrary to FERC's position, the Court will not exclude Mr. Welch's testimony because FERC is not convinced by it.

**E.  Exclusion due to Self-Contradiction, Confusion, and Lack of Support**

12

FERC is clearly not impressed with Mr. Welch's opinions. *Pet'r's Mot.* at 12-13. An opponent's skepticism does not justify an expert's exclusion. Reviewing Mr. Welch's opinions, the Court is not convinced that his opinions are as defective as FERC believes them to be. However, if Mr. Welch's opinions are in fact rife with self-contradiction, confusion, and lack of support, it should be easy for FERC to demonstrate these flaws to a jury. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### F. Unsupported Opinions that Invade Province of Court

Finally, FERC is worried that Mr. Welch's opinions "impermissibly invade the province of the Court by reaching a legal conclusion on whether Respondents violated the law here." *Pet'r's Mot.* at 14. But, as FERC itself previously pointed out, Mr. Welch's opinions do not directly address Dr. Silkman's and CES's specific advice, and in fact Mr. Welch does not know the details of the interactions between the Respondents and Rumford. Instead, the Respondents designated Mr. Welch to explain the regulatory framework of DALRP. It will be for Dr. Silkman and CES to describe what they actually did, leaving the jury to determine whether what they did complied with the law.

### V. CONCLUSION

The Court DENIES the Petitioner's Motion to Exclude Thomas L. Welch (ECF No. 174).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2019